1  COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   JOHN K. GRANT (169813)
3  100 Pine Street, Suite 2600
   San Francisco, CA 94111
4  Telephone: 415/288-4545
   415/288-4534 (fax)
5  shawnw@csgrr.com
   johng@csgrr.com
6       – and –
   DARREN J. ROBBINS (168593)
7  RAMZI ABADOU (222567)                        LABATON SUCHAROW LLP
   655 West Broadway, Suite 1900                CHRISTOPHER J. KELLER
8  San Diego, CA 92101-3301                     ANDREI V. RADO
   Telephone: 619/231-1058                      ALLEN I. ELLMAN
9  619/231-7423 (fax)                            140 Broadway, 34th Floor
   darrenr@csgrr.com                            New York, NY 10005
10 ramzia@csgrr.com                             Telephone: 212/907-0700
                                                212/818-0477 (fax)
11                                              arado@labaton.com

12 [Proposed] Lead Counsel for Plaintiff

13                    UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15

16 CITY OF WESTLAND POLICE AND FIRE        )  No. 3:07-cv-05111-MJJ
   RETIREMENT SYSTEM, On Behalf of Itself  )
   and All Others Similarly Situated,      )  CLASS ACTION
17                                         )
                           Plaintiff,      )  MEMORANDUM OF POINTS AND
18                                         )  AUTHORITIES IN SUPPORT OF THE
        vs.                                )  RETIREMENT FUNDS' MOTION FOR
19                                         )  APPOINTMENT AS LEAD PLAINTIFF
   SONIC SOLUTIONS, et al.,                )  AND APPROVAL OF THEIR SELECTION
20                                         )  OF LEAD COUNSEL
                           Defendants.     )
21 _____ )  DATE:   January 15, 2007
                                              TIME:   9:30 a.m.
22                                            CTRM:   11, 19 Floor
                                                      The Honorable Martin J. Jenkins

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ....................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................................ 1

III. ARGUMENT ..................................................................................................................... 3

    A. The Retirement Funds Are the "Most Adequate Plaintiff" ................................... 3

        1. Legal Standard ........................................................................................... 3

        2. The Retirement Funds Satisfy the PSLRA's "Lead Plaintiff"
           Requirements ............................................................................................. 4

    B. The Retirement Funds' Selection of Lead Counsel Should be Approved ............... 6

IV. CONCLUSION ................................................................................................................. 7

## I.   PRELIMINARY STATEMENT

Presently pending before this Court is a putative securities class action lawsuit (the "Action") brought on behalf of all those who purchased or otherwise acquired Sonic Solutions ("Sonic Solutions" or the "Company") securities between October 4, 2002 and May 17, 2007, inclusive (the "Class Period") that alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

City of Westland Police and Fire Retirement System ("City of Westland") and Plymouth County Retirement Systems (the "Retirement Funds") hereby move this Court for an order: (1) appointing them as Lead Plaintiff in the Action under §21D(a)(3)(B) of the Exchange Act; and (2) approving their selection of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and Labaton Sucharow LLP as Lead Counsel. This Motion is made on the grounds that the Retirement Funds are the "most adequate plaintiff," as defined by the PSLRA. *See* Abadou Decl., Ex. B;[1] *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).

## II.   FACTUAL BACKGROUND

This action arises out of defendants' false statements about Sonic's earnings and their concealment of the backdating of stock option grants to and for the benefit of Sonic's directors and top executive officers, including its President and Chief Executive Officer, David C. Habiger, Chairman, Robert J. Doris, Chief Financial Officer and Executive Vice President, A. Clay Leighton, director and Secretary, Mary C. Sauer, and Executive Vice President, Mark Ely. Sonic develops and markets computer software related to digital media, such as data, photographs, audio and video in digital formats. Prior to the Class Period, Sonic had manipulated its stock option accounting which caused its Securities and Exchange Commission ("SEC") filings made during the Class Period to be

---

[1] References to the "Abadou Decl., Ex. ___" are to the exhibits attached to the accompanying Declaration of Ramzi Abadou in Support of the Retirement Funds' Motion for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel dated December 3, 2007 and submitted herewith.

false. Also during the Class Period, defendants made false statements about Sonic's business and prospects.

Stock option grants give recipients a right to buy company stock at a set price, called the exercise price or strike price. The right usually does not vest for a year or more, but then it continues for several years. The exercise price is usually the stock's closing price on the date of grant. Obviously, the lower the exercise price, the more money the recipient can potentially make some day by exercising the options.

Defendants' conduct has unjustly enriched Sonic's top executives and misled its public shareholders. This conduct also caused Sonic to falsely report its financial results prior to and during the Class Period. A key purpose of stock options is to give recipients an incentive to improve their employer's performance, including its stock price. Backdating them so they carry a lower price runs counter to this goal, giving the recipient a paper gain right from the start. Additionally, due to defendants' conduct, Sonic has been exposed to a costly investigation by the SEC, as well as costly internal investigations into Sonic's compliance with the federal securities laws and accounting rules applicable to public companies. As *The Wall Street Journal* explained:

> Companies have a right to give executives lavish compensation if they choose to, but they can't mislead shareholders about it. Granting an option at a price below the current market value, while not illegal in itself, could result in false disclosure. That's because companies grant their options under a shareholder-approved "option plan" on file with the SEC. The plans typically say options will carry the stock price of the day the company awards them or the day before. ***If it turns out they carry some other price, the company could be in violation of its options plan, and potentially vulnerable to an allegation of securities fraud***.
>
> It could even face accounting issues. Options priced below the stock's fair value when they're awarded bring the recipient an instant paper gain. Under accounting rules, that's equivalent to extra pay and thus is a cost to the company. ***A company that failed to include such a cost in its books may have overstated its profits, and might need to restate past financial results***.

During the Class Period, Sonic and its top officers made false and misleading statements about its business and prospects, all while concealing its false option practices, causing its stock to trade at artificially inflated levels. On February 1, 2007, Sonic issued a press release entitled "Sonic Announces Voluntary Review of Stock Option Accounting." Then, on May 17, 2007, after the

market closed, Sonic issued selected financial results for its fourth quarter 2007, in a press release stating in part:

> Options Review
>
> The Company's selected preliminary results and guidance may be adjusted as a result of the expected restatement of historical results. As previously announced on February 1, 2007, Sonic has commenced a voluntary review of its historical and current stock option grant practices and related accounting. Based on the review, the audit committee and Sonic management have concluded that, under applicable accounting guidance, Sonic lacks sufficient documentation for certain historical option grants and that the measurement dates associated with these option grants will need to be adjusted. Further, as previously announced, the audit committee, after consultation with management and the Company's board of directors, has determined that the Company's annual and interim financial statements may no longer be relied upon.
>
> Sonic believes it will have to record additional cash and non-cash charges for stock-based compensation expense and restate previous financial statements, and that such charges will be material. Sonic is not yet able to determine the amount of such charges or the resulting tax and accounting impact of these actions. Sonic intends to file its restated financial results and related periodic reports as quickly as possible.

On this news, Sonic's stock collapsed from $13.37 per share to as low as $11.76 per share on volume of 1.8 million shares. This drop continued a decline from $18 per share which began in February 2007, when Sonic first disclosed its options problems. In fact, during the Class Period, Sonic's public representations were materially false and misleading due to defendants' concealment of the following adverse facts: (a) the Company for years had been manipulating stock option grant dates to benefit insiders, which caused the Company's proxy statements and Forms 10-Q and Forms 10-K to be materially false and misleading; and (b) defendants' stock option practices would lead to government investigations, potential IRS penalties and earnings restatements.

**III.    ARGUMENT**

    **A.    The Retirement Funds Are the "Most Adequate Plaintiff"**

        **1.    Legal Standard**

The PSLRA governs the appointment of lead plaintiffs in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i). First, the plaintiff who files the initial action must publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). The City of Westland caused the first

notice regarding the pendency of these actions to be published on *Business Wire*, a national, business-oriented newswire service, on October 4, 2007. *See* Abadou Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff. 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406, at *7-*8 (N.D. Cal. 2007) (Whyte, J.). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice. . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 729-32.

### 2. The Retirement Funds Satisfy the PSLRA's "Lead Plaintiff" Requirements

#### a. The Retirement Funds Timely Filed Their Motion

Pursuant to the PSLRA, the Retirement Funds timely move this Court to be appointed lead plaintiff on behalf of all members of the class. The Retirement Funds have duly signed and filed certifications stating that they are willing to serve as representative parties on behalf of the class. *See* Abadou Decl., Ex. C. Accordingly, the Retirement Funds have satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and are entitled to have their application for appointment as lead plaintiff considered and approved by the Court.

### b. The Retirement Funds Have the Largest Financial Interest in the Relief Sought by the Class

As evidenced by the accompanying signed certifications, the Retirement Funds incurred a loss of over $120,000 on their transactions in Sonic Solutions securities during the Class Period. *See Cavanaugh*, 306 F.3d at 732; Abadou Decl., Ex. C.

### c. The Retirement Funds Satisfy Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. *See Richardson*, 2007 U.S. Dist. LEXIS 28406, at *15. Consequently, in deciding a motion to serve as lead plaintiff, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See id*. The Retirement Funds satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as lead plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Richardson*, 2007 U.S. Dist. LEXIS 28406, at *16. Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See id*.

The Retirement Funds satisfy this requirement because, just like all other class members, they: (1) purchased Sonic Solutions shares during the Class Period; (2) purchased Sonic Solutions

1  shares in reliance upon the allegedly materially false and misleading statements issued by
2  defendants; and (3) suffered damages thereby.  Thus, the Retirement Funds' claims are typical of
3  those of other class members since their claims and the claims of other class members arise out of
4  the same course of events.

5  Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the
6  interests of the class."  The PSLRA directs this Court to limit its inquiry regarding the Retirement
7  Funds' adequacy to represent the class to the existence of any conflicts between the interests of the
8  Retirement Funds and the members of the class.  The standard for adequacy of representation under
9  Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the
10 class members; and (2) the class representatives' choice of counsel who is qualified, experienced and
11 able to vigorously conduct the proposed litigation.  *See Richardson*, 2007 U.S. Dist. LEXIS 28406,
12 at *16.

13 Here, the Retirement Funds are adequate representatives of the class.  As evidenced by their
14 losses, the Retirement Funds' interests are clearly aligned with the members of the class and there is
15 no evidence of any antagonism between the Retirement Funds' interests and those of the other
16 members of the class.  Further, the Retirement Funds have retained competent and experienced
17 counsel to prosecute these claims.  Abadou Decl., Exs. D, E.  Thus, the Retirement Funds *prima*
18 *facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this Motion.

19 **B.    The Retirement Funds' Selection of Lead Counsel Should be Approved**
20
21 The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the
22 class, subject to court approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  The court should not disturb
23 lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C.
24 §78u-4(a)(3)(B)(iii)(II)(aa); *see Cavanaugh*, 306 F.3d at 733 n.11 ("the district court must approve
25 the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, and not the court, the
26 power to select a lawyer for the class").  The Retirement Funds have selected Coughlin Stoia and
27 Labaton Sucharow LLP as Lead Counsel for the class.
28

1    Thus, the Court may be assured that in the event this Motion is granted, the members of the
2 class will receive the highest caliber of legal representation available from Coughlin Stoia and
3 Labaton Sucharow LLP, both firms of which have had leading roles in numerous actions on behalf
4 of defrauded investors. *See Teamsters Local 617 Pension & Welfare Funds v. Apollo Group*, 2007
5 U.S. Dist. LEXIS 67354, at *22 (D. Ariz. 2007) ("A careful review of the resume[] for [Coughlin
6 Stoia] persuades the court that [it] possess[es] the requisite degree of experience and qualifications to
7 adequately represent the interests of the putative class."); *In re Waste Management Inc. Secs. Litig.*,
8 128 F. Supp. 2d 401, 432 (S.D. Tex. 2008) (stating that Labaton Sucharow "ha[s] been shown to be
9 knowledgeable about and experienced in federal securities class actions."); Abadou Decl., Exs. D, E.

## IV.    CONCLUSION

For all the foregoing reasons, the Retirement Funds respectfully requests that the Court:
(i) appoint the Retirement Funds as Lead Plaintiff; (ii) appoint Coughlin Stoia and Labaton
Sucharow LLP as Lead Counsel; and (iii) grant such other relief as the court may deem just and
proper.

DATED:  December 3, 2007                    Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
RAMZI ABADOU


                                            s/ Ramzi Abadou
                                            RAMZI ABADOU

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
JOHN K. GRANT
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

LABATON SUCHAROW LLP
CHRISTOPHER J. KELLER
ANDREI V. RADO
ALLEN I. ELLMAN
140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)

[Proposed] Lead Counsel for Plaintiff

S:\CasesSD\Sonic Solutions Secs\BRF00047578-LP.doc

MEM OF PTS AND AUTHS IN SUPPORT OF THE RETIREMENT FUNDS' MOT FOR APPT
AS LEAD PLTF & APPROVAL OF ITS SELECTION OF LEAD COUNSEL - 3:07-cv-05111-MJJ     - 8 -

CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following designated Internet site at: http://securities.csgrr.com/.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 3, 2007.

    s/ Ramzi Abadou
RAMZI ABADOU

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: RamziA@csgrr.com

# Mailing Information for a Case 3:07-cv-05111-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **John K. Grant**
  johnkg@csgrr.com,JDecena@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.c

- **Monica Patel**
  monica.patel@hellerehrman.com,amy.barth@hellerehrman.com,elsa.pulido@hellerehrman.com,ga

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Shawn A. Williams**
  shawnw@csgrr.com,travisd@csgrr.com,moniquew@csgrr.com,e_file_sf@csgrr.com,cwood@csgr

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine J Kowalewski
Lerach Coughlin et al LLP
655 W Broadway #1900
San Diego, CA 92101

David C. Walton
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101-3301
```