SARA B. BRODY (Bar No. 130222)
CAROL LYNN THOMPSON (Bar No. 148079)
CECILIA Y. CHAN (Bar No. 240971)
MATTHEW D. THURLOW (Bar No. 243470)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
Sara.Brody@hellerehrman.com
CarolLynn.Thompson@hellerehrman.com
Cecilia.Chan@hellerehrman.com
Matthew.Thurlow@hellerehrman.com

Attorneys for Defendants
SONIC SOLUTIONS, DAVID C. HABIGER,
ROBERT J. DORIS, A. CLAY LEIGHTON,
MARY C. SAUER, MARK ELY, ROBERT M. GREBER,
PETER J. MARGUGLIO and R. WARREN LANGLEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF WESTLAND POLICE AND FIRE RETIREMENT SYSTEM AND PLYMOUTH COUNTY RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SONIC SOLUTIONS, DAVID C. HABIGER, ROBERT J. DORIS, A. CLAY LEIGHTON, MARY C. SAUER, MARK ELY, ROBERT M. GREBER, PETER J. MARGUGLIO and R. WARREN LANGLEY,<br><br>Defendants. | Case No.: C 07-5111(JSW)<br><br>CLASS ACTION<br><br>DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date:          September 5, 2008<br>Time:          9:00 a.m.<br>Trial Date:   None Set<br><br>The Honorable Jeffrey S. White |

# TABLE OF CONTENTS

                                                                                    **Page**

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 2

      A.    Description of the Defendants........................................................ 2

      B.    Sonic's Stock Option Program, Historical Review and
            Restatement ................................................................................... 3

      C.    Plaintiffs and Their Complaints. ................................................... 5

III.  SUMMARY OF ARGUMENT ................................................................. 7

IV.   FRAUD PLEADING STANDARDS UNDER RULE 9(b) AND
      THE PRIVATE SECURITIES LITIGATION REFORM ACT OF
      1995 ......................................................................................................... 9

V.    PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM
      AGAINST ALL DEFENDANTS ............................................................ 10

      A.    Plaintiffs' Complaint Fails to Plead a Strong Inference of
            Scienter as to All Defendants...................................................... 10

            1.    The Complaint Fails to Plead Scienter and Fraud with
                  Particularity as to the Individual Defendants ................... 11

                  a.    Sonic's Restatement Does Not Give Rise to a
                        Strong Inference of Scienter. ................................ 13

                  b.    Plaintiffs Do Not Allege Facts Demonstrating that
                        Defendants Knowingly or Recklessly Backdated
                        Options or Knowingly or Recklessly Violated
                        Accounting Rules. ................................................ 14

                  c.    Defendants' Corporate Positions and Roles in
                        Preparing Routine SEC Filings and Press Releases
                        Cannot Give Rise to a Strong Inference of
                        Scienter. ............................................................... 16

                  d.    Signing Forms 10-K, Forms 10-Q, and SOX
                        Certifications Does Not Give Rise to a Strong
                        Inference of Scienter. ........................................... 17

                  e.    Defendants Stock Sales Do Not Create a Strong
                        Inference of Scienter. ........................................... 18

i

f.    Defendants' Receipt of Allegedly Backdated Options Does Not Create a Strong Inference of Scienter. ............................................................... 19

2.    Plaintiffs' Failure to Plead Scienter as to the Individual Defendants Precludes an Inference of Scienter as to the Company. ........................................... 20

B.    The Complaint Fails to Attribute Any Misstatements to Ely or the Outside Directors. ........................................................ 21

C.    The Court Should Dismiss Any Claim Plaintiffs Purport to State for "Scheme" Liability. ................................................... 23

VI.    PLAINTIFFS FAIL TO PLEAD A SECTION 20(a) "CONTROL PERSON" LIABILITY CLAIM AGAINST ALL DEFENDANTS .................... 25

VII.    THE COMPLAINT FAILS TO STATE SECTION 20A INSIDER TRADING CLAIMS ...................................................................... 27

VIII.    CONCLUSION ................................................................... 28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alfus v. Pyramid Tech. Corp.*,
745 F. Supp. 1511 (N.D. Cal. 1990) ........................................................................ 28

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
--- F.3d ---, Nos. 05-5132-cv, 05-2593-cv, 2007 WL 1989336 (2d Cir. July 11,
2007) ........................................................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
--- U.S. ---, 127 S. Ct. 1955, 1974 (2007) ........................................................... 9, 10

*Buban v. O'Brien*,
No. C 94-0331 FMS, 1994 WL 324093 (N.D. Cal. June 22, 1994) ................... 9, 28

*Conley v. Gibson*,
355 U.S. 41 (1957) ..................................................................................................... 9

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ................................................................................... 10

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................... 7

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ............................................................................... 7, 11

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ................................................................................. 25

*Howard v. Hui*,
No. C-92-3742-CRB, 2001 WL 1159780 (N.D. Cal. September 24, 2001) ....... 25, 27

*In re Apple Computer, Inc. Sec. Litig.*,
243 F. Supp. 2d 1012 (N.D. Cal. 2002) ................................................................... 20

*In re AST Research Sec. Litig.*,
887 F. Supp. 231 (C.D. Cal. 1995) .......................................................................... 28

*In re Autodesk, Inc. Sec. Litig.*,
132 F. Supp.2d 833 (N.D. Cal. 2000) ...................................................................... 17

*In re CNET Networks, Inc.*,
483 F. Supp. 2d 947 (N.D. Cal. 2007) ................................................................ 13, 14

*In re Copper Mountain Sec. Litig.*,
311 F. Supp.2d 857 (N.D. Cal. 2004) ...................................................................... 19

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005) ................................................................................. 10

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 106 (9th Cir. 2005) ................................................................. 15

*In re Digital Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002), *aff'd* 357 F.3d 322 (3d Cir. 2004) ..................... 27

*In re Ditech Comms. Corp. Sec. Litig.*,
No. C 05-02406, 2006 WL 2319784 (N.D. Cal. August 10, 2006)................. 11, 18, 19

*In re ESS Tech., Inc. Sec. Litig.*,
No C-02-04497, 2004 WL 3030058 (N.D. Cal. December 1, 2004) ........................... 21

*In re GlenFed, Inc.*,
60 F.3d 591 (9th Cir. 1995) ................................................................ 17

*In re Gupta Corp. Sec. Litig.*,
900 F. Supp. 1217 (N.D. Cal. 1994) ...................................................... 22

*In re Hansen Nat. Corp. Sec. Litig*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007).................................. 14, 15, 16, 27

*In re Netopia, Inc. Sec. Litig.*,
No. C-04-03364, 2005 WL 3445631 (N.D. Cal. December 15, 2005) ....................... 21

*In re NextCard, Inc. Sec. Litig.*,
No. C 01-21029, 2006 WL 7086663 (N.D. Cal. Mar. 20, 2006) ........................ 18, 21

*In re Oak Tech. Sec. Litig.*,
1997 WL 448168 (N.D. Cal. Aug. 1, 1997) .............................................. 17

*In re Pixar Sec. Litig.*,
450 F. Supp. 2d 1096 (N.D. Cal. 2006) ................................................... 18

*In re Ramp Networks, Inc. Sec. Litig.*,
201 F. Supp. 2d 1051 (N.D. Cal. 2002) ................................................... 25

*In re Read-Rite Corp.*,
335 F.3d 843 (9th Cir. 2003) ............................................................. 11

*In re Recoton Corp. Sec. Litig.*,
358 F. Supp. 2d 1130 n. 4 (M.D. Fla. 2005) ............................................. 24

*In re Redback Networks, Inc. Sec. Litig.*,
No. C03-5642 JF (HRL), 2006 WL 1805579 (N.D. Cal. Mar. 20, 2006) .................... 23

*In re Ross Sys. Sec. Litig.*,
No. C-94-0017, 1994 WL 583114 (N.D. Cal. July 21, 1994)................................ 22

*In re Royal Dutch/Shell Transport Sec. Litig.*,
No. 04-374, 2006 WL 2355402 (D.N.J. Aug. 14, 2006) ............................... 8, 24

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) (en banc)............................................... 10, 11

iv

*In re Silicon Graphics*,
    183 F.3d at 986 ........................................................................................... 18

*In re Silicon Storage Tech.*,
    No. C 05-0295, 2006 WL 648683 (N.D. Cal. March 10, 2006)....................... 11, 20, 21

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109, 2000 WL 1727405
    (N.D. Cal. Sept. 29, 2000) ................................................................... 21, 22, 27

*In re Syntex Corp. Sec. Litig.*,
    855 F. Supp. 1086 (N.D. Cal. 1994) ...................................................................... 22

*In re Tibco Software, Inc.*,
    No. 05-2146, 2006 WL 1469654 (N.D. Cal. May 25, 2006) ..................................... 22

*In re U.S. Aggregates, Inc. Sec. Litig.*,
    235 F. Supp. 2d 1063 (N.D. Cal. 2002) ........................................................ 8, 15, 26

*In re Verifone Securities Lit.*,
    784 F. Supp. 1471 (N.D. Cal. 1992) ................................................................. 27, 28

*JHW Greentree Capital, L.P. v. Whittier Trust Co.*,
    No. 05 Civ. 2985 HB, 2005 WL 3008452 (S.D.N.Y. Nov. 10, 2005) .................... 8, 24

*Johnson v. Aljian*,
    490 F.3d 778 (9th Cir. 2007) ...................................................................... 9, 27, 28

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ................................................................................ 24

*Medimatch, Inc. v. Lucent Tech., Inc.*,
    120 F. Supp. 2d 842 (N.D. Cal. 2000) .................................................................. 22

*Morgan v. AXT, Inc.*,
    No. 04-4362, 2005 WL 2347125 (N.D. Cal. Sept. 23, 2005) ...................................... 15

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ............................................................................... 9, 28

*Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ............................................................................ 9, 26

*Pugh v. Tribune Co.*,
    2008 WL 867739 (7th Cir. Apr. 2, 2008)................................................................ 21

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ...................................................... 7, 10, 18, 19

*Rudolph v. UTStarcom*,
    No. C 07-04578, 2008 WL 1734763 (N.D. Cal. April 14, 2008).............. 13, 17, 19, 20

*Schnall v. Annuity & Life Re (Holdings)*,
    No. 02-CV-2133, 2006 WL 2331138 (D. Conn. Aug. 10, 2006)................................ 23

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

*Simpson v. AOL Time Warner Inc.*,
   452 F.3d 1040 (9th Cir. 2006) ...................................................................... 25

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   522 U.S. ---, 128 S. Ct. 761 (2007)................................................................ 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007) .................................................................... passim

*Weiss v. Amkor Tech., Inc.*,
   527 F. Supp. 2d 948-49 .......................................................... 13, 16, 17, 27

## STATUTES

15 U.S.C. § 78t-1(a) ...................................................................................... 27

15 U.S.C. §§ 78u-4 ......................................................................................... 1

## RULES

17 C.F.R. § 240.10b-5 ................................................................................... 23

Fed. R. Civ. P. 12(b)(6)................................................................................... 1

Fed. R. Civ. P. 9(b) ............................................................................. passim

vi

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on September 5, 2008, at 9:00 a.m., in the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California, before the Honorable Jeffrey S. White in Courtroom 2, 17th Floor, Defendants Sonic Solutions ("Sonic"), David C. Habiger, Robert J. Doris, A. Clay Leighton, Mary C. Sauer, Mark Ely, Robert M. Greber, Peter J. Marguglio and R. Warren Langley (collectively referred to as "Defendants") will and hereby do move the Court for an order dismissing with prejudice the Consolidated Class Action Complaint in this action ("Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 *et seq.* ("PSLRA"), on the grounds that the allegations in the Complaint fail to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice and exhibits attached thereto, all pleadings and papers on file in this action, and such additional evidence and authority as may be offered at or before the time of oral argument on this Motion.

## <u>STATEMENT OF ISSUES (Civil Local Rule 7-4(a)(3))</u>

1. Whether the City of Westland and the Plymouth County Retirement System ("Plaintiffs") fail to adequately plead facts establishing a "cogent and compelling" inference of scienter as required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007), the PSLRA and Rule 9(b) of the Federal Rule of Civil Procedure so that their securities fraud claim against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder should be dismissed?

2. Whether Plaintiffs fail to state a Section 10(b) claim against Defendants Ely, Greber, Langley, and Marguglio where:

    (a) the Complaint fails to allege with the required particularity that these

1

Defendants were involved in the preparation of the allegedly misleading statements, and thus, fails to attribute any misstatements to these four individuals; and

(b)    the Complaint purports to state a claim for "scheme liability" by merely recasting the misrepresentation claim?

3.    Whether Plaintiffs fail to state a Section 20(a) control person liability claim against all Defendants under Section 20(a) of the Exchange Act where Plaintiffs fail to plead a predicate violation of the securities laws?

4.    Whether Plaintiffs fail to state a Section 20(a) control person liability claim against Sonic where Sonic is an entity that cannot "control" its employees?

5.    Whether Plaintiffs fail to state a Section 20(a) control person liability claim against the Individual Defendants where the Complaint fails to allege with the required particularity that the Individual Defendants exercised actual power or control over Sonic?

6.    Whether Plaintiffs fail to state insider trading claims under Section 20A of the Exchange Act against the Individual Defendants where Plaintiffs fail to adequately plead a primary violation of the securities laws?

7.    Whether Plaintiffs fail to state insider trading claims under Section 20A of the Exchange Act against Defendants Sauer, Ely, and Marguglio where the Complaint fails to allege that these Defendants made any stock sales that were "contemporaneous" with Plaintiffs' sales?

8.    Whether Plaintiffs fail to state insider trading claims under Section 20A of the Exchange Act against Defendants Langley and Greber where the alleged sales made by these Defendants were not "contemporaneous" with Plaintiffs' sales?

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs assert that Sonic and certain of its officers and directors have violated the federal securities laws by misrepresenting and concealing a scheme to issue backdated stock options.  Specifically, Plaintiffs claim that the Company falsely represented that stock options were granted at fair market value and that Sonic's Forms 10-Q and Forms 10-K during the class period consequently under-reported the Company's expenses, thereby over-stating the Company's reported earnings or under-stating its reported losses.  Plaintiffs point to the Company's Form 10-K filed earlier this year with the Securities and Exchange Commission (the "SEC"), which contained restated financial statements for prior periods (the "Restatement"), as an admission that the Company's financial statements throughout the class period were materially false and misleading.

Although the Company's Restatement may reflect an acknowledgement—after a long and careful review by the Audit Committee—that the Company's grant processes were weak and that grant documentation was inadequate in some instances, the Audit Committee explicitly concluded that no one at the Company had engaged in any intentional wrongful conduct or had any knowledge that the Company's accounting for options violated GAAP. The Complaint—replete with newspaper articles about other companies' backdating activities and extensive quotes from Sonic's public filings about its option grants and investigation—is absolutely devoid of facts from which any reasonable inference could be drawn that Defendants deliberately defrauded shareholders.[1]

As the Supreme Court made clear just last term in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007), the Complaint must allege facts that give rise to a strong inference of scienter which is "more than merely 'reasonable' or 'permissible'—it must be cogent and compelling . . . in light of other explanations."  Here, the only fact plead

---

[1] In fact, Plaintiffs rushed to file a case asserting securities fraud claims before the Audit Committee had even concluded its investigation, based on the mere announcement that such an investigation was underway and that the Company had concluded that grant documentation was insufficient.

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

in the Complaint to support an inference of scienter is the existence of the Restatement; however, the equally and indeed more compelling inference fairly drawn from the Restatement is—consistent with the conclusions of the Audit Committee as spelled out in that Form 10-K—that the Company's grant approval processes and documentation were weak, not that there was any intentional backdating or knowledge of improper accounting for stock options.  Accordingly, Plaintiffs' Complaint fails to adequately plead scienter and their Section 10(b) claim must be dismissed.

Plaintiffs' claims for control person liability and insider trading under Section 20 of the Exchange Act also should be dismissed.  First, both of these claims fail because they require a predicate violation of the federal securities laws and because Plaintiffs have failed to plead a Section 10(b) violation, they also cannot assert claims under Section 20(a).  Moreover, Plaintiffs have failed to specifically plead facts establishing that any of the Individual Defendants exercised control over the Company.  And with regard to Plaintiffs' insider trading claim under Section 20A, they have not established a right to relief because Plaintiffs have not alleged that they purchased Sonic securities contemporaneously with many of the Individual Defendants' purported sales.

## II.    STATEMENT OF FACTS

### A.    Description of the Defendants.

Sonic, located in Novato, California, is a California corporation that develops and markets computer software related to digital media, such as data, photographs, audio, and video in digital formats.  Compl. ¶ 59.  Sonic became a public company in February 1994 and is traded on The Nasdaq Global Select Market.  RJN Ex. A, at 14.[2]

Defendants Robert J. Doris and Mary C. Sauer co-founded Sonic in 1986.  Doris has been the Chairman of the Board of Directors since the Company's formation.  Compl. ¶ 61.  He also served as the CEO of Sonic from 1986 until he resigned from the position in September 2005.  *Id.* ¶ 61.  Sauer has served as a Director and Company Secretary since its

---

[2]  All "RJN Ex.__" citations in the brief refer to the exhibit attached to Sonic's Request for Judicial Notice in Support of Motion to Dismiss, filed concurrently.

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

founding. *Id.* ¶ 63.  She also served as Vice President from 1986 to September 2005 and as the Senior Vice President of Marketing and Sales from February 1993 to September 2005. *Id.*

Defendants David C. Habiger, A. Clay Leighton, and Mark Ely are executive officers of Sonic (collectively referred to as the "Officer Defendants").  Habiger joined Sonic in 1993, and became its President and Chief Operating Officer in April 2005.  *Id.* ¶ 60.  In September 2005, he succeeded Robert Doris as the CEO of Sonic.  *Id.*  Leighton joined Sonic in 1992 as a Vice President of Finance and later became the Senior Vice President of Worldwide Sales and Finance.  He served as the Company's Chief Financial Officer from January 1999 to February 2008.  *Id.* ¶ 62.  Ely joined Sonic in 1992 and in September 2006, became the Company's Executive Vice President, Strategy.  *Id.* ¶ 64.

Defendants Robert M. Greber, R. Warren Langley, and Peter J. Marguglio (collectively referred to as the "Outside Directors") are outside directors and members of various Board Committees.  These directors joined Sonic's Board in August 1993, August 1996 and June 2001, respectively.  *Id.* ¶¶ 65, 66, 67.

**B.    Sonic's Stock Option Program, Historical Review and Restatement**

Like many other technology companies, Sonic awards stock options as an integral part of the compensation provided to employees, officers and directors.  Compl. ¶ 17.  During the class period, the Company had various Stock Option Plans that governed the terms on which Sonic could issue options.  *See, e.g.*, *id.* ¶ 19 and 21.  From 1998 until September 2005, Doris, as CEO, was authorized to grant stock options.  RJN Ex. A, at 7.  On September 23, 2005, the board adopted a resolution creating an employee options subcommittee comprised of the CEO, Habiger, and the CFO, Leighton, to administer grants to recipients other than directors and executive officers.  *Id.*  Directors typically received grants at preset times, normally at the meeting of the Company's board of directors immediately following each annual shareholder meeting.  *Id.*

In the spring of 2006, journalists and academics identified several companies where it appeared that stock option grants may have been issued on favorable dates and questioned

whether these companies had appropriately accounted for those grants.  Compl. ¶¶ 42-44.

Some theorized that executives at these companies might have deliberately manipulated

grant documentation to suggest that grants were made at earlier dates when stock prices

were lower, i.e., backdating, so that recipients realized an immediate gain.  *Id.* ¶¶ 42-46.

In the wake of the extensive press reports challenging perceived widespread

backdating and SEC pronouncements regarding stock option accounting, Sonic decided to

review its historical stock option practices.  On February 1, 2007, the Company issued a

press release announcing that it had commenced a voluntary review of its historical and

current stock option grant practices and related accounting.  Compl. ¶ 46.

The stock option review was conducted by the Audit Committee, comprised solely of

independent directors, with the assistance of legal counsel and outside consultants.  RJN Ex.

A, at 5.  The Audit Committee and its advisors conducted an extensive review, including an

assessment of Sonic's options granting policies and procedures, internal records, supporting

documentation, e-mail communications, and interviews of Company personnel.  *Id.*

On February 26, 2008, the Audit Committee reported the results of its investigation.

Compl. ¶ 52 and RJN Ex. A.  The Audit Committee found that the Company's employee

option granting processes were informal and that "it appears that insufficient attention was

devoted to ensuring that grant documentation was prepared or finalized by the Record

Date." RJN Ex. A, at 7.  Accordingly, the Audit Committee concluded that for a large

portion of the employee options issued prior to September 23, 2005, "there is little or no

contemporaneous grant-specific documentation that satisfies the requirements for

'measurement dates' under APB No. 25 and that would allow [Sonic] to maintain the

original grant date used for accounting purposes (the 'Record Date')." *Id.* at 6.[3]  The Audit

Committee, however, did not find any evidence that management backdated grants or

---

[3] Founders and directors grants were generally not determined to have record dates that required adjustment.  In one case where full minutes were not available, certain measurement date adjustments were made based upon the supporting documentation that was available.  Additionally, the Audit Committee identified two instances where written consents were used and the Company deemed the measurement date to be the date of the last signature.  In both instances the change in measurement date was one day.  RJN Ex. A, at 7.

4

committed any other misconduct.

In fact, the Audit Committee expressly concluded that there was *no intentional wrongful conduct* by Sonic employees, officers, or directors, and that *there was no evidence that they "had any knowledge that their handling of option grants violated stock option accounting rules."* RJN Ex. A, at 7-8 (emphasis added). To the extent Sonic personnel authorized grants using incorrect or unreliable dates, the Audit Committee found "*no evidence of an intent to purposefully circumvent stock option accounting rules or to otherwise inaccurately report the financial results of the Company* during the Review Period." *Id.* at 8 (emphasis added).

The Audit Committee also did not find any evidence that the officers or directors responsible for the Company's stock administration had taken steps to provide themselves with options at better prices than those granted to other employees. *Id.* at 7. Moreover, the Audit Committee found no indication of intent by those with responsibility for selecting grant dates to benefit personally at the expense of the Company. *Id.* at 6-7.

Based on the results of the Audit Committee's extensive review, on February 26, 2008, the Company filed the Restatement, which restated its prior financial statements by $29 million to adjust for compensation expenses relating to stock option grants. Compl. ¶¶ 2, 52.

### C.    Plaintiffs and Their Complaints.

Plaintiff, the City of Westland Police and Fire Retirement System ("the City of Westland"), filed its initial complaint on October 4, 2007—eight months after the Company announced its voluntary stock option review.[4] Plaintiff purported to bring suit on behalf of all Sonic shareholders who purchased securities between October 4, 2002 and May 17, 2007. Plaintiff alleged that the Company "had been manipulating stock option grant dates

---

[4] Before plaintiff filed this shareholder class action, a number of derivative lawsuits were filed in both state and federal court alleging breach of fiduciary duty and other claims against Sonic's senior officers and directors. Counsel for Plaintiffs herein, initially filed a derivative claim on March 15, 2007 on behalf of plaintiff Ralph D. Wilder in the United States District Court for the Northern District of California which was subsequently dismissed voluntarily on September 6, 2007.

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

to benefit insiders which caused the Company's proxy statements and Forms 10-Q and Forms 10-K to be materially false and misleading." First Compl. ¶ 66(a). This complaint asserted claims under Sections 10(b), Section 14(a), and Section 20(a) of the Exchange Act against Sonic, Doris, Sauer, Habiger, Leighton and Ely.

Following the Company's Restatement in February 2008, the City of Westland joined by the Plymouth County Retirement System filed a Consolidated Class Action Complaint on March 21, 2008. According to Plaintiffs' consolidated complaint, Defendants engaged in a fraudulent scheme that involved the knowing manipulation of stock option grants to Company officers, directors and employees. Plaintiffs allege that Defendants falsely represented that stock options were granted at fair market value, consistent with the provisions of Sonic's stock option plans. Plaintiffs further allege that Sonic's Forms 10-Q and Forms 10-K during the class period under-reported the Company's expenses and thereby over-stated the Company's reported earnings or under-stated the reported losses. Plaintiffs claim that the Company's Restatement amounts to an admission that the Company's financial statements throughout the class period were materially false and misleading. Compl. ¶ 2.

Plaintiffs' consolidated complaint not only names Doris, Sauer, Habiger, Leighton and Ely as well as the Company as defendants, but also asserts claims against certain outside directors during the class period: Greber, Marguglio and Langley. Plaintiffs allege that the CEO and the Board were responsible for administering the Company's stock option plans. Compl. ¶ 24. The Complaint further alleges that because of their positions with the Company, the Individual Defendants had "the power and authority to control the contents" of Sonic's public filings and that "because of their positions," they further "knew that the adverse facts specified [in the Complaint] had not been disclosed to and were being concealed from the public and that the representations being made were then materially false and misleading." *Id.* ¶ 68. The Complaint asserts three claims under the federal securities laws: (1) violation of Section 10(b) of the Exchange Act against all Defendants; (2) violation of Section 20(a) of the Exchange Act (controlling person liability) against all

Defendants; and (3) violation of Section 20A of the Exchange Act (insider trading claims) against the Individual Defendants.[5]

## III.    SUMMARY OF ARGUMENT

The Court should grant Defendants' Motion to Dismiss Plaintiffs' First Claim asserting violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead:  (1) a material misrepresentation or omission; (2) scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *See, e.g., Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 522 U.S. ---, 128 S. Ct. 761 (2007); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA further require that plaintiffs plead these elements by alleging particular facts "specify[ing] each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  Section 21D(b)(1)(B) of the PSLRA; *see also Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).  The Complaint falls far short of pleading a Section 10(b) violation with the requisite specificity.

*First*, Plaintiffs have failed to allege facts giving rise to a compelling inference of scienter.  In order to survive a motion to dismiss, the inference of scienter plead by Plaintiffs must be "cogent and compelling."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007).  In assessing scienter, courts must consider all reasonable inferences that can be taken from the complaint, including inferences that are unfavorable to plaintiffs.  *See Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

Here, Plaintiffs allege that the Individual Defendants—simply by virtue of their position at the Company, their access to information, and their routine corporate duties— knowingly participated in a backdating scheme and/or its concealment.  There are no

---

[5] Plaintiffs apparently have dropped their claim under Section 14.

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

1   particular facts alleged regarding each individual defendant establishing knowing

2   participation in any backdating scheme or intentional accounting violations.  While

3   Plaintiffs point to the Restatement as evidence of materially misleading statements, as

4   reflected in the Restatement, the Audit Committee expressly concluded that there was no

5   evidence of intentional wrongdoing.  Because Plaintiffs have failed to allege facts giving

6   rise to an inference of scienter on the part of any Individual Defendant, they also have not

7   sufficiently alleged scienter on the part of the Company.

8       *Second*, the Complaint fails to adequately attribute any misleading statement or

9   omission to Defendants Ely and the three Outside Directors (Greber, Marguglio and

10  Langley).  Ely is not alleged to have signed any of the Company's public filings and the

11  Complaint does not allege specific facts demonstrating the role that any of the alleged

12  Outside Directors played in the preparation of the Company's statements.  Because the

13  Complaint fails to attribute any misstatement to Defendants Ely and the Outside Directors,

14  they may be liable under Section 10(b) only if Plaintiffs have stated a claim under

15  subsections (a) and (c), which together create what has become known as "scheme"

16  liability.  However, scheme liability must be based on conduct that goes beyond the making

17  of false statements.  *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374, 2006 WL

18  2355402, at *8 (D.N.J. Aug. 14, 2006); *JHW Greentree Capital, L.P. v. Whittier Trust Co.*,

19  No. 05 Civ. 2985 HB, 2005 WL 3008452, at *7 (S.D.N.Y. Nov. 10, 2005).  Because

20  Plaintiffs have failed to allege any misconduct in the Complaint beyond the alleged

21  misstatements, they cannot assert a valid Section 10(b) claim against Ely and the Outside

22  Directors.

23      *Third*, Plaintiffs' second cause of action fails to state a claim for control person

24  liability under Section 20(a) of the Exchange Act.  Because the Complaint fails to

25  adequately allege a primary violation under Section 10(b) for the reasons set forth above, it

26  also fails to plead control person liability under Section 20(a).  *In re U.S. Aggregates, Inc.*

27  *Sec. Litig.*, 235 F. Supp. 2d 1063, 1076 (N.D. Cal. 2002).  In addition, the Complaint

28  erroneously seeks to hold Sonic liable as a controlling person and fails to plead with

8

particularity that the Individual Defendants exercised the requisite control.  As the Ninth Circuit has held, a defendant's status as an officer or director does not create a presumption of control for establishing control person liability.  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996).  The Complaint's conclusory allegation—that "[b]y reason of their positions with the Company, and their ownership of Sonic stock, defendants had the power and authority to cause Sonic to engage in the wrongful conduct"—makes no attempt to differentiate the various Defendants and plead with particularity how these Defendants controlled Sonic.

*Fourth*, Plaintiffs' third claim alleging insider trading on the part of the Individual Defendants in violation of Section 20A of the Exchange Act also should be dismissed.  To be liable under Section 20A, there must be an independent violation of another provision of the securities laws.  *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007).  Since Plaintiffs' Section 10(b) and control person claims fail, this claim also must fail as to all Defendants. In addition, Plaintiffs must also plead with particularity that they traded contemporaneously with Defendants.  *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993).  With respect to Defendants Sauer, Ely, Marguglio, Langley and Greber, Plaintiffs also have failed to allege that these Defendants sold stock contemporaneously with Plaintiffs.  *Buban v. O'Brien*, No. C 94-0331 FMS, 1994 WL 324093, at *2 (N.D. Cal. June 22, 1994); *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 233 (C.D. Cal. 1995).

## IV.    FRAUD PLEADING STANDARDS UNDER RULE 9(B) AND THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995

In its last term, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions.  *See Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007).  Under the standard announced in *Twombly,* a plaintiff must "provide the 'grounds' of his 'entitlement to relief'," a burden that "requires more than labels and conclusions." *Id.* at 1965.  "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* There must be "enough facts to state a claim to relief that is plausible on its face." *Id. at* 1974.  Overruling the oft-cited standard of *Conley v. Gibson,* 355 U.S. 41 (1957)**,** the

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

Supreme Court rejected the maxim that "a complaint should not be dismissed … unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Twombly*, 127 S. Ct. at 1968-69.  Instead, the "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level." *Id.* at 1965.[6]

For private actions arising under the federal securities laws, Rule 9(b) and the PSLRA have long established additional pleading hurdles.  As one court has explained, the Rule 9(b) pleading standard requires plaintiff to allege "the who, what, when, where, and how:  the first paragraph of any newspaper story."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).  The PSLRA further requires that plaintiffs plead falsity with particularity by "specify[ing] each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  Section 21D(b)(1)(B); *see also Ronconi*, 253 F.3d at 429.  Alleging mere conclusions is insufficient.  *See, e.g., In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1013 (9th Cir. 2005).  To plead scienter under the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  Section 21D(b)(2); *Daou*, 411 F.3d at 1014.  In the Ninth Circuit, scienter means at a minimum deliberate or conscious recklessness.  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999) (en banc).

## V.    PLAINTIFFS FAIL TO STATE A SECTION 10(B) CLAIM AGAINST ALL DEFENDANTS

### A.    Plaintiffs' Complaint Fails to Plead a Strong Inference of Scienter as to All Defendants

Plaintiffs' Complaint must be dismissed because it fails to allege specific facts that give rise to a strong inference of scienter.  In the context of Section 10(b), scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Silicon Graphics*, 183 F.3d at 975.  Plaintiffs can only establish a strong inference of scienter if they plead facts

---

[6]  Although *Twombly* was an antitrust case, its holding has been extended to federal securities claims.  *See, e.g., ATSI Communications, Inc. v. Shaar Fund, Ltd.*, --- F.3d ---, Nos. 05-5132-cv, 05-2593-cv, 2007 WL 1989336 (2d Cir. July 11, 2007).

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

"in great detail" that "constitute strong circumstantial evidence" that Defendants knowingly or recklessly violated Section 10(b). *Id.* at 974. A Section 10(b) claim must "contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *In re Read-Rite Corp.*, 335 F.3d 843, 846 (9th Cir. 2003) (internal quotations and citations omitted). Plaintiffs cannot "aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Silicon Graphics*, 183 F.3d at 979.

As the Supreme Court recently held, in order to survive a motion to dismiss, the inference of scienter plead by plaintiffs must be "more than merely 'reasonable' or 'permissible' – it must be cogent and compelling . . . in light of other explanations." *Tellabs*, 127 S. Ct. at 2510. In assessing scienter, courts must consider all reasonable inferences that can be taken from the complaint, including inferences that are unfavorable to plaintiffs. *See Gompper*, 298 F.3d at 897 (holding that to survive dismissal a strong inference of scienter must be "the most plausible of competing inferences").

Furthermore, courts must also consider whether plaintiffs have adequately plead scienter as to *each* individual defendant. *See In re Silicon Storage Tech.*, No. C 05-0295, 2006 WL 648683, at *22 (N.D. Cal. Mar. 10, 2006). Where, as here, "pleadings are not sufficiently particularized or where, even taken as a whole, they do not raise a strong inference of scienter, dismissal pursuant to 12(b)(6) is proper." *In re Ditech Comms. Corp. Sec. Litig.*, No. C 05-02406, 2006 WL 2319784, at *7 (N.D. Cal. Aug. 10, 2006).

### 1. The Complaint Fails to Plead Scienter and Fraud with Particularity as to the Individual Defendants

The scienter allegations against the Individual Defendants fall far short of meeting the PSLRA and Rule 9(b) pleading standards. Plaintiffs generally allege that the Individual Defendants participated in a backdating scheme that artificially inflated the value of Sonic's stock, but do not allege any specific facts indicating that each Defendant (1) participated in

11

approving improperly backdated options and/or (2) knew that the Company's failure to take a compensation charge for the backdated option grants had a material effect on the Company's financials.

Instead of pleading with the requisite particularity, Plaintiffs infer that simply by virtue of their role or position in the Company, their access to information, and their routine corporate duties, the Individual Defendants knowingly participated in a backdating scheme and/or its concealment. Individually or collectively, such flimsy, over-generalized allegations do not create any inference of scienter, let alone a "strong" or "cogent and compelling" inference of scienter.

Moreover, Plaintiffs' unsupported and conclusory allegations regarding the role of the Sonic officers and directors in the alleged backdating scheme are flatly contradicted by the facts.

- By Plaintiffs' own admission, Habiger did not even become President and CEO of Sonic *until September 2005*, well after many of the instances of alleged backdating and misstatements occurred. Plaintiffs do not allege specific facts establishing that Habiger intentionally or recklessly backdated stock option grants and committed accounting violations before or after he became CEO.

- The Complaint does not allege that Ely participated in the granting or approval of stock options and Plaintiffs do not allege specific facts that explain if or how he may have known about the alleged backdating, the proper accounting for stock options, and the financial misstatements.

- As the Complaint concedes, Outside Directors Marguglio, Greber, and Langley had a limited role in granting and approving stock options. Plaintiffs do not allege facts showing that the Outside Directors knowingly or recklessly approved backdated stock options in violation of GAAP or that they attempted to conceal backdating or accounting violations.

- Doris, Sauer, and Leighton are alleged to have received backdated options and to have had a role in granting or approving stock options, but are not specifically alleged to have knowingly or recklessly granted backdated options or made any effort to conceal the grant of backdated options. Nor are they specifically alleged to have knowingly committed accounting violations.

In sum, the general allegations that Plaintiffs make throughout their Complaint in an effort to plead scienter are simply insufficient and are not enough to outweigh the equally compelling inference that none of the Individual Defendants participated in deliberately backdating option grants or had any knowledge that the Company's financial statements

12

accounted for stock option grants improperly.  Without more, the limited facts that Plaintiffs have alleged in the Complaint, as set forth below, have been repeatedly rejected by courts as insufficient to raise an inference of scienter.

### a.  Sonic's Restatement Does Not Give Rise to a Strong Inference of Scienter.

Plaintiffs claim that Sonic's February 26, 2008 Restatement creates a strong inference of scienter as to Defendants' knowledge of backdating and inadequate accounting controls.  Compl. ¶ 136.  Plaintiffs conclude that the Restatement effectively functions as an admission by Defendants that they deliberately or recklessly violated the securities laws. Id. ¶¶ 126, 136.[7]

But an inference of scienter does not necessarily follow from a restatement: "A plaintiff cannot allege scienter simply because [the defendant] restated its financial statements . . . . a mere violation of a generally accepted accounting principle (GAAP) or accounting rules fails to plead scienter."  *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 948-49; *see also Rudolph v. UTStarcom*, No. C 07-04578, 2008 WL 1734763, at *6 (N.D. Cal. April 14, 2008) (holding that Company's Restatement, among other factors, was not enough to establish scienter in backdating fraud suit); *see also In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 963 (N.D. Cal. 2007) (same).

While Plaintiffs attempt to use Sonic's Restatement as an admission of fraud, as Plaintiffs grudgingly concede, Sonic's Restatement never states that intentional backdating occurred at Sonic.  Compl. ¶ 71.[8]  In fact, the Audit Committee concluded exactly the

---

[7]  Plaintiffs simply conclude that "[b]ecause the restatement admits that Doris was responsible for granting these backdated options, there can be no question that he was at least deliberately reckless with respect to the statements alleged herein to be false."  Compl. ¶ 128.  And without pleading more, Plaintiffs also conclude that members of the Board (comprised of Defendants Doris, Sauer, Greber, Marguglio, and Langley) knew that Doris "was issuing stock options in violation of the specific terms of shareholder approved stock option plans" and did nothing to prevent these violations.  Compl. ¶ 53.

[8]  Sonic's Restatement states that there was a lack of contemporaneous grant-specific documentation that satisfies the requirements for "measurement dates" under APB No. 25.  But the absence of grant-specific documentation does not create a strong inference of scienter.  It is equally plausible that there was administrative sloppiness or error, rather than any effort to intentionally conceal backdating.  *See Letter from Chief Accountant to Lawrence Silva,* September 19, 2006, § G, Compl. Ex. 7 (indicating that the absence of stock option documentation alone does not create an

13

opposite—that Sonic's officers and directors had not engaged in "self dealing or favoritism" and that the "conduct of those who administered our options plans was not intentionally or knowing[ly] wrongful."  RJN Ex. A, at 8.

These findings are nearly identical to those of another audit committee in a recent backdating case in the Northern District of California.  In *CNET Networks*, 483 F. Supp. 2d at 963, as here, the defendant company's "special committee concluded that there was no wrongdoing by any current or recently resigned directors or officers."  *Id.*  In light of these findings, the district court held that "absent other facts indicating fraud" plaintiffs had not sufficiently plead facts supporting an inference of scienter.  *Id.*  So, too, here.  Because Sonic's Restatement admits no intentional or deliberately reckless conduct by Defendants, it does not create a strong inference of scienter.

> **b.    Plaintiffs Do Not Allege Facts Demonstrating that Defendants Knowingly or Recklessly Backdated Options or Knowingly or Recklessly Violated Accounting Rules.**

Plaintiffs fail to allege specific facts demonstrating that any of the Individual Defendants knowingly:  (1) backdated stock option grants; and/or (2) violated stock option accounting rules, including APB No. 25.  Without providing any specific facts, Plaintiffs allege that because eight of Sonic's fourteen discretionary stock grants between 1996-2004 "were purportedly granted on dates where Sonic's stock price was trading at" a monthly low, this pattern "can only be the result of deliberate and systematic backdating."  Compl. ¶ 72.  Building on this unsupported assertion, Plaintiffs then claim that not only were the grants intentionally backdated, but Defendants knowingly violated GAAP when they made the grants.  Compl. ¶¶ 121, 122, 124, 126, 127, 129, 130.

First, Plaintiffs cannot establish scienter merely by alleging that because options were granted at monthly lows, Defendants therefore participated in a backdating scheme.  Compl. ¶ 72; *see In re Hansen Nat. Corp. Sec. Litig*, 527 F. Supp. 2d 1142, 1155 (C.D. Cal. 2007).  In *Hansen*, the court held that in the absence of facts including "admissions by

---

inference of fraud).  In fact, in light of the Audit Committee's findings that there was no intentional wrongdoing, this is the more cogent and compelling inference to be drawn.

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

Hansen that the stock option grants were backdated, statements by Hansen employees or other witnesses that the stock option grants were backdated, or contemporaneous documents demonstrating that the stock options grants were backdated," the plaintiff had failed to create an inference of scienter. *Id.* Likewise, in this case, Plaintiffs have not alleged any facts indicating that stock options were intentionally backdated or that the improperly dated grants were anything other than the result of administrative sloppiness or errors. *See Rudolph*, 2008 WL 1734763 at *6 (holding that the plaintiff's allegations "could equally support the inference that stock options had been backdated through innocent bookkeeping error").

But even if Plaintiffs could establish that Defendants intentionally backdated stock options, to plead a violation of the Exchange Act, they still must plead facts showing that in doing so, Defendants knowingly violated stock option accounting rules. *Weiss,* 527 F. Supp. 2d at 949 ("[a]lthough allegations of accounting violations may provide some support for scienter allegations, they must be underpinned by other particularized allegations that defendants possessed the requisite mental state); *see also In re Worlds of Wonder Sec. Litig.*, 235 F. Supp. 2d 1063, 1073 (N.D. Cal. 2002) ("even an obvious failure to follow GAAP does not give rise to an inference of scienter"). In other words, "to plead fraudulent intent based on GAAP violations, plaintiffs must allege facts showing that: (1) specific accounting decisions were improper; and (2) the defendants knew specific facts at the time that rendered their accounting determinations fraudulent." *Morgan v. AXT, Inc.*, No. 04-4362, 2005 WL 2347125, at *14 (N.D. Cal. Sept. 23, 2005); *see also In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 106, 1014-15 (9th Cir. 2005). Plaintiffs fail to allege any specific facts showing that Defendants knew both that stock options had been backdated and were not properly accounted for under GAAP. Compl. ¶ 124.

For instance, Plaintiffs do not plead any specific facts tending to establish: (1) that any of the Defendants were familiar with stock option accounting rules and decided not to follow them; or (2) that any of the Defendants believed at the time that stock option grants were made or anytime thereafter, that the accounting used by the Company was improper or

illegal. *Weiss*, 527 F. Supp. 2d at 949 ("Furthermore, as pointed out by the Defendants, the accounting rules at issue, specifically APB No. 25, are complex and require accounting expertise and judgment.").[9]  Because Plaintiffs do not link the alleged violations of the stock option accounting rules to each Defendants' knowledge or intent, Plaintiffs have not established a strong inference of scienter.

> ### c.  Defendants' Corporate Positions and Roles in Preparing Routine SEC Filings and Press Releases Cannot Give Rise to a Strong Inference of Scienter.

Plaintiffs also claim that by virtue of their corporate positions or roles on Board Committees at Sonic, the Individual Defendants knowingly violated Section 10(b). Plaintiffs allege that "because of their positions with the Company," Individual Defendants "possessed the power and authority to control the contents of Sonic's quarterly reports, press releases and presentations to securities analysts" and that they had the "ability and opportunity" to prevent their issuance or demand their correction.  Compl. ¶ 68.  Plaintiffs also allege that because of their positions Defendants knew that "adverse facts" had not been disclosed and were "being concealed from the public." *Id.*  Plaintiffs further allege that members of the Sonic Board and the CEO, charged with administering the Company's stock option plans, knew or should have known that the Company's financial statements were false and misleading. *Id.* ¶ 121.

Again, without more, Plaintiffs' attempts to associate position and authority with knowledge fails to create a strong inference of scienter.  *See Hansen*, 527 F. Supp. 2d 1158-59 (holding in backdating suit that "the high rank of various Individual Defendants . . . is insufficient without more to infer a strong inference of scienter").  Nor is membership on the Board of Directors, Compensation Committee, or Audit Committee, itself probative of whether Individual Defendants intentionally or deliberately and recklessly violated the

---

[9]  Plaintiffs refer to the esoteric APB 25 stock option accounting rule as "perhaps the most well known accounting rule in Silicon Valley, particularly for companies like Sonic which relied so extensively on option grants to compensate employees." Compl. ¶ 31.  In 2008, APB 25 may be closely studied and well understood by Silicon Valley executives, but it is an unwarranted and unsubstantiated stretch of the imagination to argue that executives recognized its importance in the late 1990s and early 2000s.

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

securities laws. "Allegations that outside directors merely held positions on committees responsible for the preparation and disclosure of a corporation's finances are insufficient to set forth the circumstances constituting fraud with particularity." *In re Oak Tech. Sec. Litig.*, No. 96-20552, 1997 WL 448168, at *11 (N.D. Cal. Aug. 1, 1997) (citing *In re GlenFed, Inc.*, 60 F.3d 591, 593 (9th Cir. 1995)).

Finding a strong inference of scienter solely on the basis of Defendants' positions at the Company would eviscerate the PSLRA's high scienter pleading standard and transform the PSLRA into a strict liability statute. *See In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) (" . . . a ruling to the contrary would eliminate the necessity for specially pleading scienter as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position"). Sonic's directors and senior executives cannot be held liable for securities fraud simply because stock option granting errors occurred during their tenures at the Company.

### d. Signing Forms 10-K, Forms 10-Q, and SOX Certifications Does Not Give Rise to a Strong Inference of Scienter.

The Court should also reject Plaintiffs' attempt to create a strong inference of scienter on the basis of Individual Defendants' roles in signing SEC filings during the class period.[10] To create an inference of scienter, Plaintiffs must not only allege that Individual Defendants signed false filings, they must also allege that Defendants knew the statements in the Forms 10-K, Forms 10-Q, and SOX certifications were false at the time that they signed the filings. *See Hansen*, 527 F. Supp. 2d at 1160 ("Without allegations that each of the Individual Defendants that signed various [Corporate] public filings knew those public filings contained misstatements, the Individual Defendants' signatures on those public filings alone does not give rise to a strong inference of scienter."); *Rudolph*, 2008 WL 1734763 at *6 ("Similarly, the signing of quarterly certifications of financial statements

---

[10] Plaintiffs allege that Individual Defendants Habiger, Doris, Leighton, Greber, Marguglio, and Langley signed false Forms 10-K and Forms 10-Q during the class period and that Defendants Doris, Leighton, and Habiger attested to the accuracy of Sonic's financial statements. Compl. ¶¶ 120, 121, 123, 129, 60-62, 65-67.

mandated by the Sarbanes-Oxley Act does not, without more, support an inference of scienter."). The case law on this point is clear: without specific, particularized allegations of Defendants' knowledge or deliberate recklessness, simply signing an SEC filing that contains errors is not enough to create a strong inference of scienter. For the reasons set forth above in Section (b), Plaintiffs fail to allege with particularity that Defendants knew that Sonic's SEC filings were improper or misleading.

### e. Defendants Stock Sales Do Not Create a Strong Inference of Scienter.

The Individual Defendants' stock sales also do not give rise to a strong inference of scienter. Stock sales by corporate defendants can only lead to a strong inference of scienter if they are "suspicious" or "unusual." *In re Ditech Comms. Corp. Sec. Litig.*, No. C 05-02406, 2006 WL 2319784, at *7 (N.D. Cal. Aug. 10, 2006) (*citing In re Silicon Graphics*, 183 F.3d at 986). Moreover, to rely on stock sales as evidence of scienter, Plaintiffs "must allege sufficient context of insider trading for use in determining whether the level of trading is 'dramatically out of line with [Defendants] prior trading practices.'" *Ronconi v. Larkin*, 253 F. 3d 423, 436-37 (9th Cir. 2001); *see also In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1004-05 (N.D. Cal. 2006).

Plaintiffs allege that Individual Defendants sold stock during the class period for combined "proceeds" of $23,509,225. Compl. ¶ 41.[11] But Plaintiffs do not allege facts showing that these stock sales were "unusual" or "suspicious" either in their timing, in their quantity relative to Defendants' total holdings, or relative to Defendants' past trading behavior. *In re NextCard, Inc. Sec. Litig.*, No. C 01-21029, 2006 WL 7086663, at *4 (N.D. Cal. Mar. 20, 2006) (holding that Plaintiffs failed to plead scienter where they did not plead

---

[11] Plaintiffs allege: Defendants Doris and Sauer sold 956,000 shares of Sonic stock for proceeds of $17,025,285; Defendant Ely sold 28,071 shares of Sonic stock for proceeds of $428,083; Defendant Greber sold 40,000 shares of Sonic stock for proceeds of $663,865; Defendant Langley sold 38,000 shares of Sonic stock for proceeds of $696,462; Defendant Leighton sold 261,000 shares of Sonic stock for proceeds of $4,440,900; and Defendant Marguglio sold 20,000 shares of Sonic stock for proceeds of $254,630. Compl. ¶ 41.

18

facts distinguishing Defendants' stock sales from other routine stock sales).[12]  Specifically, they do not provide any context for their analysis of these sales:  they do not identify the purchase prices of the stock sold, they do not state whether the transactions they identify constitute all of Defendants' sales from the class period, and they fail to identify any losses Defendants avoided.  *See Ronconi*, 253 F.3d at 436.  Nor do Plaintiffs tie any particular stock transaction to any instance of alleged backdating or to any alleged misstatement to show how the Defendants specifically benefited from the sale of Sonic stock.[13]  Without the necessary particularized allegations, there can be no negative inference drawn from the Complaints' allegations about the Individual Defendants' stock sales.

### f.  Defendants' Receipt of Allegedly Backdated Options Does Not Create a Strong Inference of Scienter.

Plaintiffs also allege that they are entitled to an inference of scienter because Defendants Doris, Sauer, and Leighton received backdated options.  Compl. ¶¶ 61-63.  Plaintiffs do not allege that Defendants Ely, Marguglio, Langley, or Greber received backdated options.  Nor do they explain why these Defendants allegedly participated in a conspiracy that benefited only a small group of Sonic's officers and directors.  But even if they could provide such an explanation, Plaintiffs still cannot draw a negative inference from the allegedly backdated options received by Doris, Sauer, and Leighton because they provide no specific allegations of fraud related to these grants.  Compl. ¶¶  14, 61, 63.  In the absence of particularized allegations of fraudulent intent, "defendants' receipt and exercise of backdated stock options" does not create a strong inference of scienter.  *Rudolph*, 2008 WL 1734763,  at *6.

Moreover, as an initial matter, the majority of the allegedly backdated grants to Doris, Sauer, and Leighton are outside the class period (October 23, 2003 to May 17, 2007).

---

[12] *See also Ditech Comms.*, 2006 WL 2319784 at *8 (holding that 7.1% sales of insiders' total holdings was not suspicious or unusual); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 875 (N.D. Cal. 2004) (holding that sales of 17% and 21% of insiders' stock was not suspicious for purposes of pleading scienter).

[13] Plaintiffs also inexplicably exclude from their analysis Defendants' stock sales during the class period between October 23, 2002-August 4, 2003 and January 8, 2007-May 17, 2007.

19

*See* Compl. ¶¶ 11-14, 61, 63 (describing grants received by Defendants Doris, Sauer and Leighton on July 16, 1996, July 22, 1997, November 30, 2000, July 21, 2001, December 3, 2001, March 11, 2003, and May 10, 2004).

The only two grants that fall within the class period are grants to Defendant Leighton on March 11, 2003 and May 10, 2004.  Compl. ¶ 129.  Plaintiffs provide no particularized allegations regarding the March 11, 2003 grant.  Compl. ¶¶ 87, 129-30.  As to the May 10, 2004 grant, the Complaint appears to concede that any benefit derived from this grant was the result of an administrative error in failing to file Leighton's Form 4 on time, rather than the result of any intentional fraudulent conduct.[14]  Compl. ¶ 87 & n. 7.  *Rudolph*, 2008 WL 1734763 at *6.  Thus, at best, Plaintiffs have alleged that of all the officers and directors, only Defendant Leighton received one backdated option during the entire class period.[15]  This single allegation of receipt of a backdated grant, which appears to have involved an administrative mistake, cannot support a strong inference of scienter.

### 2. Plaintiffs' Failure to Plead Scienter as to the Individual Defendants Precludes an Inference of Scienter as to the Company.

In sum, Plaintiffs have failed to plead an inference of scienter as to each Individual Defendant.  *See In re Silicon Storage Tech.*, No. C 05-0295, 2006 WL 648683, at *22 (N.D. Cal. Mar. 10, 2006) (requiring plaintiffs to meet the scienter pleading standard for each individual defendant).  Because Plaintiffs have failed to plead scienter as to any of the Individual Defendants, they also fail to plead scienter as to the Company.  *See In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) (holding that a corporate defendant can only be deemed to have the requisite scienter for fraud if the individual corporate officer had the requisite level of scienter in making a misstatement); *see also Pugh v. Tribune Co.*, Nos. 06-3898, 06-3909, 2008 WL 867739, *10 (7th Cir. Apr.

---

[14]  The Complaint alleges "While Sonic was routinely late filing Form 4's with the SEC relating to stock option grants, this grant to Leighton was reported on May 12, 2004.  However, by this time, Sonic stock price had risen 5.6% from $17.49 on Monday May 10, 2004 to $18.53 on May 12, 2004, giving Leighton an instant profit of $104,000—or almost half of his annual salary for the fiscal year, which was $215,000."  Compl. ¶ 87, n.7.

[15]  Moreover, the Complaint fails to explain how the date of the filing of the Form 4 changes the grant date or price.

20

2, 2008) (holding that plaintiffs failure "to establish the primary liability of any individual defendant" prevented the court from finding for plaintiffs under a respondeat superior theory"). Even if Plaintiffs' failure to plead scienter did not preclude a finding of scienter as to Sonic, Plaintiffs make no particularized allegations distinguishing the knowledge or deliberate recklessness of the Company from that of the other Defendants.

### B. The Complaint Fails to Attribute Any Misstatements to Ely or the Outside Directors.

Just as the Complaint fails to plead scienter with particularity, the Complaint fails to adequately attribute any misleading statements to Ely and the three Outside Directors. Instead, the Complaint merely alleges that these four Defendants "participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings." Compl. ¶¶ 64, 65, 66, & 67.

Notably, the Complaint does not allege that Ely signed any of the relevant SEC filings or that he participated in any conference calls. Nor does the Complaint allege that he was responsible for the relevant press releases. While some courts have held that a plaintiff can assert claims against non-speaking officers based on the "group pleading doctrine," Plaintiffs must nonetheless satisfy the particularity requirements of Rule 9(b) and the PSLRA under this doctrine.[16] *See, e.g.*, *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109, 2000 WL 1727405, *13 (N.D. Cal. Sept. 29, 2000). Specifically, Plaintiffs must "state, with particularity, facts indicating that the individual defendant was directly involved in the preparation of the alleged misleading statements." *In re ESS Tech., Inc. Sec. Litig.*, No C-02-04497, 2004 WL 3030058, at *12 (N.D. Cal. Dec. 1, 2004).

---

[16] There is serious question as to whether the group pleading doctrine, which relieves a plaintiff from alleging that each defendant actually spoke, survives the PSLRA. Although the Ninth Circuit has not yet ruled on the viability of this doctrine, a number of district courts in this district have held that it cannot survive the PSLRA's requirement that "statements or omissions be set forth with particularity as to *each* defendant[.]" *NextCard*, 2006 WL 7086663 at *3 (Fogel, J.) (emphasis in original). Indeed, as one court noted, the courts in this district are increasingly finding that this doctrine is contrary to the PSLRA. *In re Tibco Software, Inc.*, No. 05-2146, 2006 WL 1469654, at *27 (N.D. Cal. May 25, 2006) (Armstrong, J.). *See also Silicon Storage*, 2006 WL 648683 at *22 (Hamilton, J.) (finding that this doctrine inappropriate in light of the pleading standards imposed by the PSLRA); *Nextcard*, 2006 WL 7086663, at *3 (same); *In re Netopia, Inc. Sec. Litig.*, No. C-04-03364, 2005 WL 3445631, at *6 (N.D. Cal. Dec. 15, 2005) (Whyte, J) (same). We respectfully request that this Court join these courts and reject the group pleading doctrine.

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.: C 07-5111(JSW)

1    Here, the Complaint fails to provide any particulars regarding Ely's involvement in

2  the preparation of any of the challenged statements. To the contrary, the Complaint simply

3  relies on boilerplate allegations that he "participated in the issuance of false and/or

4  misleading statements"—allegations that courts have repeatedly held to be insufficient to

5  invoke the group pleading doctrine. *See e.g.*, *In re Tibco Software, Inc.*, No. 05-2146, 2006

6  WL 1469654, at *28 (N.D. Cal. May 25, 2006)(conclusory allegations that "defendants

7  were involved in drafting, producing, reviewing and/or disseminating the false and

8  misleading statements" insufficient); *Splash Tech. Holdings*, 2000 WL 17274905 at *14

9  ("conclusory comment" that "defendants participated in the drafting and reviewing of the

10  misleading statements" insufficient). Accordingly, the Complaint fails to plead any

11  misstatement by Ely and Plaintiffs' Section 10(b) claim against him must be dismissed. *See*

12  *Medimatch, Inc. v. Lucent Tech., Inc.*, 120 F. Supp. 2d 842, 856 (N.D. Cal. 2000)

13  (dismissing Section 10(b) claim where plaintiff failed to allege any misstatement made by

14  defendant).

15    As to the Outside Directors, the Complaint also alleges that they signed the allegedly

16  false Forms 10-K. But that is not enough. As courts have repeatedly held, the mere fact

17  that an outside director signed a Form 10-K is insufficient to make the outside director

18  liable for its contents. *See, e.g., In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1241

19  (N.D. Cal. 1994); *In re Ross Sys. Sec. Litig.*, No. C-94-0017, 1994 WL 583114, at *6 (N.D.

20  Cal. July 21, 1994). Instead, plaintiffs must plead that those directors were involved not

21  only in the day-to-day activities, management, or control of the company, but also in the

22  preparation of the allegedly misleading statements in particular. *See e.g., Tibco Software*,

23  2006 WL 1469654, at *28; *Ross Sys. Sec. Litig.*, 1994 WL 583114 at *6; *In re Syntex Corp.*

24  *Sec. Litig.*, 855 F. Supp. 1086, 1100 (N.D. Cal. 1994). This Complaint pleads neither. It

25  does not plead that the Outside Directors were involved in the day-to-day activities of

26  Sonic. Nor does it plead specific facts establishing that they were involved in the

27  preparation of the particular misstatements at issue. Accordingly, Plaintiffs' Section 10(b)

28  claim against the Outside Directors also should be dismissed.

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

### C.    The Court Should Dismiss Any Claim Plaintiffs Purport to State for "Scheme" Liability.

Plaintiffs also fail to state a Section 10(b) claim under "scheme" liability.  Rule 10b-5 has three subsections.  The section most frequently used is subsection (b), which imposes liability for making false statements.[17]  The bulk of Plaintiffs' Complaint appears to be grounded in this subsection:  Plaintiffs spend nearly fifty paragraphs listing allegedly false statements made by Defendants.  Compl. ¶¶ 70-114.  Because the Complaint fails to attribute any of these misstatements to Ely and the Outside Directors for the reasons discussed above, they may be liable under Section 10(b) only if Plaintiffs have stated a claim under subsections (a) and (c), which together create what has become known as "scheme" liability.  *E.g., Schnall v. Annuity & Life Re (Holdings)*, No. 02-CV-2133, 2006 WL 2331138, at *6 (D. Conn. Aug. 10, 2006) (describing and dismissing plaintiff's scheme liability claim under Rule 10b-5(a) and (c)); Compl. ¶ 198 (alleging that Defendants violated all three subsections of Rule 10b-5).

In order to allege scheme liability, Plaintiffs must allege acts and conduct beyond misrepresentations.  *See, e.g.*, *In re Redback Networks, Inc. Sec. Litig.,* No. C03-5642 JF (HRL), 2006 WL 1805579, at *5 (N.D. Cal. Mar. 20, 2006) ("despite the fact that Plaintiffs attempt to characterize their second claim as a 'manipulative act' claim rather than a 'misstatements and omissions' claim, the Court will treat claim two as duplicative of

---

[17]  Rule 10b-5 states as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means of instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

[misstatements and omissions] claim"); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (rejecting scheme liability when "the sole basis for such claims is alleged misrepresentations or omissions"); *In re Recoton Corp. Sec. Litig.*, 358 F. Supp. 2d 1130, 1138 n. 4 (M.D. Fla. 2005) (refusing to analyze scheme liability claims that were based on alleged misrepresentations and omissions). Instead, a plaintiff must "allege that the defendant engaged in a manipulative or deceptive scheme or conduct that encompasses acts beyond misrepresentations." *In re Royal Dutch/Shell Transport Sec. Litig.*, No. 04-374, 2006 WL 2355402, at *8 (D.N.J. Aug. 14, 2006) (collecting authorities); *see also JHW Greentree Capital, L.P. v. Whittier Trust Co.*, No. 05 Civ.2985 HB, 2005 WL 3008452, at *7 n.11 (S.D.N.Y. Nov. 10, 2005) (plaintiffs failed to allege scheme liability where they did not plead any allegations against the defendant personally, "apart from her alleged misrepresentations and omissions"). Plaintiffs' scheme allegations fall far short of this standard.

There is no question that Plaintiffs' Section 10(b) claim is based on purported misstatements. As noted above, the Complaint devotes nearly fifty paragraphs to listing the alleged misstatements by the Defendants. Indeed, Plaintiffs' entire case relies on the fact that there was a Restatement, which they claim is implicit acknowledgement of misrepresentations.

Although the Complaint loosely alludes to a "fraudulent scheme," in Plaintiffs' own words, the crux of the alleged fraudulent scheme "was a practice whereby defendants knowingly manipulated stock option grants to the Company's officers, directors and employees in order to provide the recipients with a more profitable exercise price while under-reporting the Company's expenses and thereby overstating the Company's reported earnings or understating the Company's reported loss." Compl. ¶ 2. In other words, Defendants are accused of getting the accounting for option grants wrong on the Company's financial statements. These allegations do not rescue the Complaint as they do little more than recast the misrepresentation claim as a claim for scheme liability. *Royal Dutch/Shell Transp.*, 2006 WL 2355402, at *8; *JHW Greentree Capital*, 2005 WL 3008452, at *7

24

n.11.[18]    Because Plaintiffs fail to allege any misconduct beyond the alleged misstatements, the Court should dismiss any claim under subsections (a) and (c) of Rule 10b-5.

## VI.    PLAINTIFFS FAIL TO PLEAD A SECTION 20(A) "CONTROL PERSON" LIABILITY CLAIM AGAINST ALL DEFENDANTS

The Complaint also seeks to hold *all* Defendants (including the Company) liable as "controlling persons" under Section 20(a) of the Exchange Act.  Compl. ¶¶ 210-211.  To plead control person liability under Section 20(a), a plaintiff must allege (1) a primary violation of the securities laws and (2) "that the defendant exercised actual power or control over the primary violator."  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  "Plaintiff's section 20(a) claim is an allegation of fraud.  Allegations of fraud must be pled with particularity," therefore, "plaintiff must plead the circumstances of the control relationship with sufficient particularity to satisfy rule 9(b)."  *Howard v. Hui*, No. C-92-3742-CRB, 2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) (internal citations omitted); *see also In re Ramp Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1063 (N.D. Cal. 2002) ("Where a plaintiff alleges a Section 20(a) claim based on an underlying violation of section 10(b) of the 1934 Act, the pleading requirements for the Section 20(a) claim are the same as they are for the Section 10(b) claim.").  Plaintiffs' Section 20(a) claim must be dismissed for three reasons.

*First*, because the Complaint fails to adequately allege a primary violation under

---

[18]  *Simpson v. AOL Time Warner Inc.* was the Ninth Circuit's leading authority on scheme liability. *Simpson* requires a plaintiff to plead that a defendant's conduct "had the principal purpose and effect of creating a false appearance in deceptive transactions" as part of a scheme to defraud.  *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1052 (9th Cir. 2006) (judgment vacated in *Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008)).  Following the Supreme Court's *Stoneridge* decision, however, the Ninth Circuit vacated this opinion and remanded the case to the district court for further proceedings.  Thus, until the 9th Circuit reaffirms its holding, it appears that *Simpson* is no longer good law.

But even if the *Simpson* "purpose and effect" standard still applies, Plaintiffs also fail to meet that standard here.  According to Plaintiffs, the "principal purpose" of Defendants' conduct was the realization of a *direct financial benefit* to themselves and to other employees the Company sought to recruit or retain by issuing in the money grants.  *See, e.g.*, Compl. ¶¶ 4, 39.  Thus the "principal purpose and effect" that emerges from the Complaint allegations is not the "creat[ion of] a false appearance" with respect to some item in Sonic's financial statements, as *Simpson* requires.  452 F.3d at 1052.  Rather, the "principal purpose and effect" of the alleged misconduct is something much simpler:  the awarding of lucrative stock option grants to Company executives and sought-after employees.  Accordingly, Plaintiffs fail to meet the *Simpson* standard even if it continues to be the standard in this Circuit.

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)

Section 10(b) for the reasons set forth above, it too fails to plead control person liability under Section 20(a). *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1076 (N.D. Cal. 2002) (dismissing Section 20(a) claim where plaintiff failed to allege an underlying primary violation).

*Second*, in yet another attempt to overreach, the Complaint seeks to hold Sonic liable both as a controlling person and as a controlled person. In asserting the Section 20(a) claim against all Defendants, the Complaint states: "By reason of their positions with the Company, and their ownership of Sonic stock, defendants had the power and authority to cause Sonic to engage in the wrongful conduct complained of herein. Sonic controlled defendants and all of its employees. By reason of such conduct, defendants named herein are liable pursuant to Section 20(a) of the Exchange Act." Compl. ¶ 211. This allegation further illustrates Plaintiffs' circular approach to pleading—they ask this Court to find that the Individual Defendants controlled Sonic, and that, Sonic, in turn, controlled the Individual Defendants. Like a cat chasing its own tail, this allegation is nonsensical: Sonic is an entity that cannot control the actions of individuals. Therefore, the Section 20(a) claim against Sonic must be dismissed.

*Third*, the Section 20(a) claim against the Individual Defendants must also be dismissed because the Complaint fails to plead with particularity that they exercised the requisite control. As an initial matter, the Complaint's conclusory allegation—that "[b]y reason of their positions with the Company, and their ownership of Sonic stock, defendants had the power and authority to cause Sonic to engage in the wrongful conduct"—makes no attempt to differentiate among the various Defendants or plead how they individually controlled Sonic. As the Ninth Circuit has held, a defendant's status as officer or director does not create any presumption of control for establishing control person liability. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996). Nor is Plaintiffs' reliance on Defendants' ownership of Sonic stock sufficient. Though lengthy, nowhere in its 217 paragraphs does the Complaint allege what percentage of Sonic the Individual Defendants own. It is inconceivable that any level of ownership of Sonic stock suffices for

26

control person liability.[19]

Courts have rejected similarly undifferentiated allegations of control.  In *Hansen,* the Complaint likewise alleged that "[b]y virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements …, the Individual Defendants had the power to influence and control … the decision making of the Company …"  *Hansen*, 527 F. Supp. 2d at 1163.  The Court there held that "this boilerplate allegation is insufficient to state a claim for control person liability."  *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) (quoting *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546 (D. Del. 2002), *aff'd* 357 F.3d 322 (3d Cir. 2004) ("[E]ven a CEO is not automatically a 'controlling person' under Section 20(a).")).  Here, too, the Section 20(a) claim must be dismissed against all Defendants.

## VII.    THE COMPLAINT FAILS TO STATE SECTION 20A INSIDER TRADING CLAIMS

Plaintiffs' Section 20A insider trading claims against Doris, Sauer, Ely, Greber, Langley, Leighton and Marguglio also should be dismissed.  Compl. Third Claim for Relief.  To be liable under Section 20A, there must be an independent violation of another provision of the securities laws.[20]  *Johnson v. Aljian*, 490 F.3d 778, 781, 785 (9th Cir. 2007) (holding that plaintiff must "plead and prove the essential elements of a predicate violation" of the securities laws to pursue a 20A claim); *In re Verifone Securities Lit.*, 784 F. Supp. 1471, 1488 (N.D. Cal. 1992) (same).  Because Plaintiffs fail to properly plead that the Individual

---

[19]  And in any event, courts have held that even significant stock ownership is insufficient to establish control.  *See, e.g.*, *Howard*, 2001 WL 1159780 (finding that defendants' 20% ownership in the underlying entity, together with numerous other control allegations, insufficient to plead a Section 20(a) claim); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 00-00109, 2000 WL 1727405, (N.D. Cal. 2000) (20% ownership insufficient to plead Section 20(a) controlling person liability).

[20]  Section 20A of the Exchange Act provides:

> Any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased or sold securities of the same class.

15 U.S.C. § 78t-1(a).

Defendants violated any securities laws, Plaintiffs also fail to allege that the Individual Defendants violated Section 20A. *Johnson v. Aljian*, 490 F.3d at 781; *In re Verifone Sec. Lit.*, 784 F. Supp. at 1488.

Second, Plaintiffs must also plead with particularity that they traded contemporaneously with Defendants. *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993). Sauer, Ely and Marguglio are not alleged to have sold stock contemporaneously with Plaintiffs, and thus, the claims against these Defendants must be dismissed. *See* Third Claim for Relief; Compl. ¶¶ 212-217. As to Langley and Greber, although the Ninth Circuit has not squarely address the issue of what constitutes "contemporaneous" trading, district courts in this Circuit have adopted a restrictive reading of this term, at least with respect to shares like Sonic's that are heavily traded on a national exchange. *See, e.g., Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1522 (N.D. Cal. 1990); *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 233 (C.D. Cal. 1995). Following this approach, numerous courts have held that only purchases and sales on the same day are "contemporaneous." *Buban v. O'Brien*, No. C 94-0331 FMS, 1994 WL 324093, at *2 (N.D. Cal. June 22, 1994); *In re AST Research Sec. Litig.*, 887 F. Supp. at 233. These courts reason that, because the contemporaneous trading requirement functions as a substitute for privity, in a heavily traded security, plaintiff could not have purchased defendant's shares where the trades are more than one day apart.[21] *Buban*, 1994 WL 324093, at *2; *In re AST Research Sec. Litig.*, 887 F. Supp. at 233. The same holds true here. Because Plaintiffs only made trades on February 19, 2004, Plaintiffs lack standing to bring Section 20A claims against Langley and Greber, neither of whom made any sales on that date. Compl. ¶ 214.

## VIII.  CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

---

[21]  Though one Northern District court stated that the contemporaneous requirement is not met "if plaintiff's trade occurred more than a few days apart from defendants' transactions," *Alfus v. Pyramid Tech. Corp.*, the court relied on one authority that held that two days was not contemporaneous. 745 F. Supp. 1511, 1522 (N.D. Cal. 1990).

1   DATED:  May 23, 2008                    Respectfully submitted,

2                                           HELLER EHRMAN LLP

3

4                                           _____/s/ Sara B. Brody_____
                                            SARA B. BRODY
5                                           CAROL LYNN THOMPSON
                                            CECILIA Y. CHAN
6                                           MATTHEW D. THURLOW

7                                           Attorneys for Defendants
                                            SONIC SOLUTIONS, DAVID C. HABIGER,
8                                           ROBERT J. DORIS, A. CLAY LEIGHTON,
                                            MARY C. SAUER, MARK ELY, ROBERT M.
9                                           GREBER, PETER J. MARGUGLIO and R.
                                            WARREN LANGLEY
10

11

12

13   SF 1462641 v5

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS; MP&A
CASE NO.:  C 07-5111(JSW)