SARA B. BRODY (Bar No. 130222)
CAROL LYNN THOMPSON (Bar No. 148079)
CECILIA Y. CHAN (Bar No. 240971)
MATTHEW D. THURLOW (Bar No. 243470)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
Sara.Brody@hellerehrman.com
CarolLynn.Thompson@hellerehrman.com
Cecilia.Chan@hellerehrman.com
Matthew.Thurlow@hellerehrman.com

Attorneys for Defendants
SONIC SOLUTIONS, DAVID C. HABIGER,
ROBERT J. DORIS, A. CLAY LEIGHTON,
MARY C. SAUER, MARK ELY, ROBERT M. GREBER,
PETER J. MARGUGLIO and R. WARREN LANGLEY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF WESTLAND POLICE AND FIRE RETIREMENT SYSTEM AND PLYMOUTH COUNTY RETIREMENT SYSTEM, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SONIC SOLUTIONS, DAVID C. HABIGER, ROBERT J. DORIS, A. CLAY LEIGHTON, MARY C. SAUER, MARK ELY, ROBERT M. GREBER, PETER J. MARGUGLIO and R. WARREN LANGLEY, <br><br> Defendants. | Case No.: C 07-5111(JSW) <br><br> CLASS ACTION <br><br> **DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUPERSEDING MOTION TO DISMISS THE [CORRECTED] CONSOLIDATED CLASS ACTION COMPLAINT** <br><br> Date:      September 5, 2008 <br> Time:      9:00 a.m. <br> Crtrm:    2 <br> Trial Date:  None Set <br><br> The Honorable Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT .....................................................................................................2

    A.    Plaintiffs Fail to Properly Plead a Section 10(b) Claim .................................2

        1.    Plaintiffs Have Not Specifically Plead Facts Creating a
             Strong Inference of Scienter. ...............................................................2

             a.    Sonic's Restatement Does Not Support a Finding
                  of Scienter. ...............................................................................2

             b.    Plaintiffs' Spurious Statistical Claim Does Not
                  Give Rise to a Compelling Inference of Scienter. ....................4

             c.    Plaintiffs Do Not Allege Specific Facts
                  Establishing that Each Individual Defendant
                  Knowingly Backdated Options or Violated Stock
                  Option Accounting Rules. ........................................................7

             d.    Defendants' Stock Sales Do Not Create an
                  Inference of Scienter. .............................................................11

             e.    Defendants' Corporate Positions Do Not Create an
                  Inference of Scienter. .............................................................12

              f.    Defendants' Signing of Filings Does Not Create
                  an Inference of Scienter. .........................................................13

         2.    The Complaint Also Fails to Attribute Any
              Misstatements to Defendants Ely or the Outside Directors
              or Plead Scheme Liability as to These Defendants. ...........................13

    B.    Plaintiffs Fail to Plead a Section 14(a) Claim..............................................14

        1.    Plaintiffs' Section 14(a) Claim Based on the 2003 and
              2004 Proxy Statements Is Barred by the Applicable
              Statute of Limitation. ........................................................................14

        2.    Plaintiffs' Section 14(a) Claim Based on the 2005 Proxy
              Statement Also Fails. ........................................................................14

i

          a.     Plaintiffs Fail to Plead Causation or Direct Injury. ................14

          b.     Plaintiffs' Complaint Fails to Raise a Strong
                Inference of Negligence. ........................................................15

    C.     Plaintiffs' Section 20(a) Claim Must Be Dismissed ...................16

    D.     Plaintiffs Failed to State a Section 20A (Insider Trading) Claim.................18

III.    CONCLUSION .......................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alfus v. Pyramid Tech. Corp.,*
  745 F. Supp. 1511 (N.D. Cal. 1990) ------------------------------------------------------19

*Arthur Children's Trust v. Keim,*
  994 F.2d 1390 (9th Cir. 1993)------------------------------------------------------------17

*Belova v. Sharp,*
  No. CV 07-299-MO, 2008 WL 700961 (D. Or. Mar. 13, 2008) ----------------------- 14, 15

*Buban v. O'Brien, No. C 94-0331 FMS,*
  No. C 94-0331 FMS, 1994 WL 324093 (N.D. Cal. June 22, 1994) ------------------------19

*Desaigoudar v. Meyercord,*
  223 F.3d 1020 (9th Cir. 2000)------------------------------------------------------------14

*Ditech Comms. Corp. Sec. Litig.,*
  No. C 05-02406,
  2006 WL 2319784 (N.D. Cal. Aug. 10, 2006)----------------------------------------------11

*Gaines v. Haughton,*
  645 F.2d 761 (9th Cir. 1981) -------------------------------------------------------------14

*Hall v. The Children's Place Retail Stores, Inc.,*
  No. 07 Civ. 8252 (SAS), 2008 U.S. Dist. Lexis. 54790 (S.D.N.Y. July 18,
  2008)------------------------------------------------------------------------------------- 8

*Hayley v. Parker,*
  No. Civ. 01-0069, 2002 WL 925322 (C.D. Cal. Mar. 15, 2002) ---------------------------16

*Howard v. Everex Sys.,*
  228 F.3d 1057 (9th Cir. 2000)------------------------------------------------------------17

*Howard v. Hui,*
  No. C 92-3742-CRB, 2001 WL 1159780 (Sept. 24, 2001) -------------------------------16

*In re Apple Computer Sec. Litig.,*
  886 F.2d 1109 (9th Cir. 1989)------------------------------------------------------------11

*In re Apple Computer, Inc. Sec. Litig.,*
  243 F. Supp. 2d 1012 (N.D. Cal. 2002)---------------------------------------------------12

iii

*In re AST Research Sec. Litig.,*
  887 F. Supp. 231 (C.D. Cal. 1995) --------------------------------------------------------------19

*In re CNET Networks, Inc.,*
  483 F. Supp. 2d 947 (N.D. Cal. April 11, 2007)---------------------------------------------- 3, 4

*In re Cornerstone Propane Partners,*
  355 F. Supp.2d 1069 (N.D. Cal. 2005) ------------------------------------------------------- 9

*In re Digital Island Sec. Litig.,*
  223 F. Supp. 2d 546 (D. Del. 2002) ---------------------------------------------------------18

*In re Ditech Commc'ns Corp. Sec. Litig.,*
  No. C -05-02406, 2007 WL 2990532 (N.D. Cal. Oct. 11, 2007)----------------------------16

*In re Hansen Nat. Corp. Sec. Litig.,*
  527 F. Supp. 2d 1142 (C.D. Cal. 2007)----------------------------------------------- passim

*In re HiEnergy Tech., Inc. Sec. Litig.,*
  2005 WL 3071250 (C.D. Cal. Oct. 25, 2005)---------------------------------------------------17

*In re Hypercom Corp. Securities Litigation,*
  No. CV-05-455-PHX-NVW, 2006 WL 1836181 (D. Ariz. 2006) ------------------------- 9

*In re Juniper Networks, Inc. Sec. Litig.,*
  542 F. Supp. 2d 1037 (N.D. Cal. 2008)-------------------------------------------------13,17

*In re Linear Tech Corp. Deriv. Litig.,*
  No. C-06-3290 MMC, 2006 WL 3533024 (N.D. Cal. Dec. 7, 2006)------------------------ 4

*In re McKesson HBOC Sec. Litig.,*
  126 F. Supp. 2d 1248 (N.D. Cal. 2000)------------------------------------------------- 9,15

*In re McLinn,*
  739 F. 2d 1395, 1397 (9th Cir. 1984) ------------------------------------------------------14

*In re NextCard, Inc. Sec. Litig.,*
  No. C 01-21029, 2006 WL 708663 (N.D. Cal. Mar. 20, 2006) -------------------------------11

*In re Openwave Sys. Sec. Litig.,*
  528 F. Supp. 2d 236 (S.D.N.Y. 2007)------------------------------------------------------18

*In re Pixar Sec. Litig.,*
  450 F. Supp. 2d 1096 (N.D. Cal. 2006)-----------------------------------------------------16

*In re Silicon Graphics Inc. Sec. Lit.,*
  183 F.3d 970 (9th Cir. 1999) ------------------------------------------------------------12

iv

*In re Splash Tech. Holdings Sec. Litig.,*
  No. C 99-00109 SBA, 2000 WL 1727377 (N.D. Cal. Sept. 29, 2000) --------------------16

*In re Verifone Sec. Litig.,*
  784 F. Supp. 1471 (N.D. Cal. 1990) ------------------------------------------------------19

*In re Verisign Deriv. Litig.,*
  531 F. Supp. 2d 1173 (N.D. Cal. 2007)---------------------------------------- 3, 14, 15, 16

*In re Zoran Corp. Deriv. Litig.,*
  511 F. Supp. 2d 986 (N.D. Cal. 2007) ---------------------------------------- 3, 5, 14, 15

*Johnson v. Aljian,*
  490 F.3d 778 (9th Cir. 2007) -------------------------------------------------------------18

*Kuehbeck v. Genesis Microchip, Inc.,*
  No. C 02-05344 JSW, 2005 WL 1787426 (N.D. Cal. 2005) ---------------------------------16

*La Mar v. H & B Novelty and Loan Co.,*
  489 F.2d 461 (9th Cir. 1973) ------------------------------------------------------------19

*Middlesex Retirement Sys. v. Quest Software, Inc.,*
  527 F. Supp. 2d 1164 (C.D. Cal. 2007)----------------------------------------5, 9, 11, 12

*Neubronner v. Milken,*
  6 F.3d 666 (9th Cir. 1993) --------------------------------------------------------- 18, 19

*Rudolph v. UTStarcom,*
  No. C 07-04578, 2008 WL 1734763 (N.D. Cal. April 14, 2008) ----------------- 3, 8, 15, 16

*Weiss v. Amkor Tech., Inc.,*
  527 F. Supp. 2d 948 (D. Ariz. 2007) ----------------------------------------------------- 3

*Wool v. Tandem Computers Inc.,*
  818 F.2d 1433 (9th Cir. 1987)-----------------------------------------------------------17

*Wynn v. NBC, Inc.,*
  234 F. Supp. 2d 1067 (C.D. Cal. 2002)--------------------------------------------------- 4

## I.    INTRODUCTION

The lynchpin of Plaintiffs' scienter theory is their so-called "powerful statistical evidence" that there is "a 1 in 11 million chance" that during the last decade, Sonic made eight out of fourteen discretionary stock option grants on dates when its stock was trading at a monthly low.  *See* Plaintiffs' Opposition to Defendants' Superseding Motion to Dismiss the [Corrected] Consolidated Class Action Complaint ("Opp.").  Putting aside the obvious question about the methodology of this statistical claim, the facts about these eight grants show that they were clearly not backdated.  Without any other factual allegations regarding the circumstances surrounding these grants, the statements of employees or questionable documents, there is no plausible basis to infer wrongdoing as opposed to crediting the Audit Committee's conclusion that the Company merely lacked contemporaneous grant documentation and therefore had to adjust measurement dates for many of its grants throughout the class period.

In addition to the overarching failure to plead scienter, the opposition brief makes clear that the Complaint fails in a number of other respects.  The opposition completely ignores the argument that the Section 10(b) claims against Ely and the Outside Directors must be dismissed because the Complaint fails to either attribute misstatements to them or state a claim for scheme liability.  The Court therefore should dismiss claims against these Defendants on that basis, at a minimum.

Plaintiffs also appear to have conceded that their Section 14(a) claim based on the 2003 and 2004 proxy statements is time barred.  As to the remaining 2005 proxy statement, Plaintiffs fail to explain how there was an "essential link" between the purported backdating scheme and the proxy soliciting the election of directors, nor do they point to specific facts raising a "strong inference of negligence" on the part of the Defendants.

Lastly, because the Complaint fails to plead a predicate violation of the securities laws under either Section 10(b) or Section 14(a), Plaintiffs' claims for control person liability and insider trading under Section 20 also should be dismissed.  The Section 20(a) claim is also defective because the Complaint does not plead particular facts showing that

1

1 each of the Individual Defendants exercised control over Sonic.  Likewise, the Complaint

2 does not plead with sufficient particularity that Plaintiffs traded contemporaneously with

3 many of the Individual Defendants' to support their Section 20A claim.  Accordingly, this

4 Court should grant Defendants' motion and dismiss the Complaint in its entirety.

5 **II.    ARGUMENT**

6     **A.    Plaintiffs Fail to Properly Plead a Section 10(b) Claim**

7         **1.    Plaintiffs Have Not Specifically Plead Facts Creating a Strong Inference of Scienter.**

8     Plaintiffs argue that they have sufficiently alleged facts establishing scienter by

9 pointing to the mere existence of the Restatement and the purported statistical improbability

10 that eight out of fourteen "discretionary" stock option grants in a ten year period were at

11 monthly lows.  Given these two facts, Plaintiffs claim that it is clear backdating occurred

12 and that the Individual Defendants responsible for overseeing the stock option-granting

13 process must have engaged in intentional fraud.  Because the underlying premise that

14 backdating occurred is simply not established by these two facts—and, indeed, is

15 contradicted by the findings of the Audit Committee as well as the evidence in the factual

16 record before the Court—Plaintiffs have failed to meet their burden of pleading a strong

17 inference of scienter on the part of either the Company or the Individual Defendants.

18         **a.    Sonic's Restatement Does Not Support a Finding of Scienter.**

19     Plaintiffs assert that because Sonic restated its financial statements and adjusted the

20 measurement dates for many of its stock option grants that Defendants effectively have

21 conceded that the Company engaged in backdating.  This assertion is unsupported and is

22 directly contradicted by the factual record.  In its Restatement, the Company said that it had

23 found no evidence of intentional misconduct and that it was adjusting the measurement

24 dates for stock option grants where there was insufficient contemporaneous documentation

25 satisfying the requirements of APB 25.  RJN, Ex. A, at 2-3.[1]  As no less than the Office of

26 the Chief Accountant of the Securities & Exchange Commission has acknowledged, the

27

28     [1] Unless otherwise noted, all "RJN Ex.___" citations in this brief refer to the exhibits attached to Defendants' Second Request for Judicial Notice in Support of Motion to Dismiss, filed concurrently.

DEFENDANTS' REPLY IN SUPPORT OF SUPERSEDING MOTION TO DISMISS
CASE NO.:  C 07-5111(JSW)

failure to create contemporaneous grant documentation does not amount to wrong-doing or evidence of intentional backdating. *See Letter from Chief Accountant to Lawrence Silva*, September 19, 2006, § G, Compl. Ex. 7 (indicating that the absence of stock option documentation alone does not create an inference of backdating).

There have been a number of stock option cases—with facts like those alleged here—where Defendants restated financial results because of mistakes in stock option grant documentation and courts concluded that there was no evidence of fraud. *See, e.g., Rudolph v. UTStarcom*, No. C 07-04578 SI, 2008 WL 1734763, at *6 (N.D. Cal. April 14, 2008) (holding that admission of backdating in restatement was not enough to establish scienter because options could have been backdated through "innocent bookkeeping error"); *In re Verisign Deriv. Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007) ("Finally, the mere fact that a corporation restates its financial statements does not give rise to a strong inference that any individual defendant acted with intent to defraud."); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 948-49 (D. Ariz. 2007) ("A plaintiff cannot allege scienter simply because Amkor restated its financial statements."). Indeed, even in *Zoran*, the case Plaintiffs principally rely upon, the Court acknowledges that "[n]ot each and every single instance where a company has chosen the wrong measurement date is necessarily a case of backdating. Use of an incorrect measurement date for stock options could be the result of innocent but sloppy accounting practices rather than a fraudulent effort to retrospectively change the grant dates." *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1003-04 (2007).

Plaintiffs argue that the Audit Committee's conclusion (as set forth in the Restatement) that no intentional misconduct occurred is simply self-exonerating and should be discounted. But there are no facts alleged to undermine the conclusions of the Audit Committee or the contents of the Company's Restatement. *See In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 963 (N.D. Cal. April 11, 2007) ("Plaintiffs have not pleaded with particularity that the contents of the restated financial statements are untrue."). Sonic's Audit Committee launched its stock option investigation voluntarily, long before Plaintiffs

3

filed their Complaint or sued any of the individual directors who serve on the Audit Committee. Plaintiffs have not pointed to any facts that cast doubt on either the completeness or the impartiality of the Audit Committee's investigation and conclusions. In fact, Plaintiffs rushed to file their Complaint alleging securities fraud before the Audit Committee even reported the results of its investigation—suggesting that Plaintiffs were relying on nothing more than the completely spurious statistical analysis discussed below.

### b. Plaintiffs' Spurious Statistical Claim Does Not Give Rise to a Compelling Inference of Scienter.

Plaintiffs repeatedly assert that there is only a "1 in 11 million chance" that eight out of fourteen "discretionary" grants made to Sonic's officers and directors over a ten year period could have been made at monthly lows.[2] Compl. ¶ 8. This utterly unsupported statistic is the foundation for Plaintiffs' scienter argument. Opp. at p. 9-11. Yet, Plaintiffs' Complaint provides no explanation for how it determined which grants among the thousands made by the Company during the class period were "discretionary," no facts relating to the circumstances surrounding those discretionary grant dates,[3] nor any facts relating to the methodology used by their purportedly "leading statistician." Consequently, Plaintiffs' statistical claim utterly fails to create a compelling inference of scienter.

Several courts have rejected attempts by plaintiffs in stock option cases to plead scienter with similarly misleading statistical claims. *See In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007). In *Hansen*, the Court refused to credit plaintiff's statistical evidence where plaintiff failed "to plead where his empirical and statistical method came from, whether it was used by anyone else, or whether it was peer-reviewed or bore other indicia of academic approval." *Id.* at 1155, *quoting CNET Networks, Inc.*, 483 F. Supp. 2d at 957; *see also Wynn v. NBC, Inc.*, 234 F. Supp. 2d 1067, 1102 (C.D.

---

[2] These allegedly suspicious grants were made on July 16, 1996; July 22, 1997; November 30, 2000; July 12, 2001 (three grants); March 11, 2003; and May 10, 2004.

[3] Plaintiffs cannot use this dubious statistic to show pattern of backdating at Sonic: "Much like the plaintiffs in *Linear Tech.*, plaintiffs here rely on pointing out instances where options were granted a periodic low point in stock price, followed by an increase. They do not plead any facts as to when any other options were granted, or under what circumstances they were granted." *CNET*, 483 F. Supp. 2d at 958 (*citing In re Linear Tech Corp. Deriv. Litig.*, No. C-06-3290 MMC, 2006 WL 3533024, at *3 (N.D. Cal. Dec. 7, 2006)).

DEFENDANTS' REPLY IN SUPPORT OF SUPERSEDING MOTION TO DISMISS
CASE NO.: C 07-5111(JSW)

Cal. 2002) ("It is inappropriate, to put it simply, for a party to make a conclusory statistical inference as the foundation for its claim, and not provide the Court with any indication of the basis for that inference.").  Plaintiffs attempt to distinguish their case from *Hansen* by claiming that their expert "Eric Lie, is the leading statistician on the issue of backdating" and that he used "proven methods of statistical analysis of potentially backdated grants." Opp. at 10-11, fn. 14.  But Plaintiffs fail to identify what these "proven methods" are in either their Complaint or their opposition, provide any facts regarding how Professor Lie's method was applied, or provide the facts that support their statistical conclusions.

Plaintiffs also argue that their statistical evidence is comparable to the evidence that the courts found gave rise to a compelling inference of scienter in the *Quest* and *Zoran* cases.  In *Quest*, the plaintiffs presented evidence that *all* of the alleged grant dates "reflect either the lowest prices for a period exceeding six months, or are prices that immediately proceeded rapid increases in the price of Quest's stock . . . . The fact that *none* of the grant dates resulted in less than favorable results for Defendants also gives rise to a strong suggestion that improper dating of options was intentional." *Middlesex Retirement Sys. v. Quest Software, Inc.*, 527 F. Supp. 2d 1164, 1182 (C.D. Cal. 2007) (emphasis added).  Here, Plaintiffs have presented no evidence that any of the "suspicious" grants reflect six month lows in the price of Sonic's stock.  In fact, as discussed below, for some of the grants Plaintiffs identified as suspicious, Sonic's stock price actually dropped significantly after the grant date.

In *Zoran*, plaintiffs fully described all of the grants they identified as suspicious and described their methodology for analyzing the probability that these grant dates were randomly selected.  *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1004 (N.D. Cal. 2007).  But here, Plaintiffs have provided absolutely no allegations describing Professor Lie's methodology.  More importantly, Professor Lie's purported statistical analysis of the fourteen "discretionary" grant dates reflects obvious errors and faulty factual assumptions:

- Plaintiffs do not plead facts explaining how they identified only fourteen grants as allegedly "discretionary."  Sonic has made thousands of grants in the past fifteen

years.  In the absence of further information as to why these fourteen grants are distinguishable from the thousands of other grants made by Sonic, these fourteen grants appear to constitute a small, random, and grossly oversimplified sample.

- Plaintiffs specifically identify only eight of the fourteen grants as being "suspicious."  Opp. at 4.  In the absence of any allegations about the other six grants, it can only be assumed that these grants were not at or near monthly lows.  Thus, even with respect to Plaintiffs' hand-picked, arbitrary sample of fourteen grants, they could only find eight grants that were made during periods in which Sonic's stock traded at relative lows.  In the context of a stock grant program that involved thousands of individual grants for well over a decade, it is unsurprising that at least a few grants would be made on dates when Sonic stock traded at relative lows.

- Although Plaintiffs identify eight "discretionary" grants, those grants involve only six separate grant dates, which skews Plaintiffs' results so that it appears that there were more favorable grant dates than there actually were.

- The three grants made to Doris, Leighton, and Sauer on July 12, 2001 should not be included in the analysis because they were not "discretionary."  Rather, they were made on a predetermined payroll processing date for the semi-monthly pay period beginning July 1, 2001.  RJN Ex. A, at 99.  Because there was no issue with either the issuance or documentation of these three grants, they were not adjusted by the Audit Committee, and there is no basis for inferring that they were backdated.  *Id.*

- Nearly all of these "suspicious" grants were made prior to the class period, with the exception of the March 11, 2003 and May 10, 2004 grants, so it is unclear how allegations regarding these grants are even relevant to Plaintiffs' case.  Opp. at 10.

Additionally, when placed in the proper context, these discretionary grants are far from "outrageously fortuitous" as Plaintiffs claim.  Opp. at 10, line 13.  Plaintiffs allege that these grants were made at "monthly lows," when, in fact, the stock was trading at the same price *or lower* within a few days or weeks.  If Defendants were actively selecting grant dates with the benefit of hindsight, they could have and would have selected far more favorable dates.  For instance:

- The grant on July 22, 1997 was made when the stock was trading at $5.12 per share, which Plaintiffs identify as suspicious, because it was the "monthly low."  But Sonic's stock closed at $5.12 exactly nine times during the month of July 2007.  Far from the providential grant Plaintiffs allege it to be, the actual odds of granting at this price in July 1997 were 9 out of the 22 trading days or over 40%.  RJN, Ex. C.

6

- Similarly, Plaintiffs allege that the November 30, 2000 grant was suspicious because it was the low for November 2000 at $1.56, but Sonic's stock price was trading at far lower prices in that same quarter. Only three weeks later, Sonic's stock dropped to $1.31 on December 21, 2000. A week after that, the stock dropped to $1.16 per share. A drop of over 25% less than a month *after* the grant undermines any inference of backdating. RJN, Ex. C.

- Likewise, the March 11, 2003 grant was granted at the lowest price for March 2003 at $3.97 per share, but less than a month earlier the stock traded as low as $3.75 per share. RJN, Ex. C.

- Finally, Defendant Leighton received a grant on May 10, 2004, but the Company filed his Form-4 within two days of this grant. RJN, Ex. B. This prompt filing undermines any inference of backdating. *See Hansen*, 527 F. Supp. 2d at 1156; *CNET*, 483 F. Supp. 2d at 961.

In sum, even among Plaintiffs' hand-picked "suspicious" grants, there is little evidence grants were made on unusually favorable dates so that no inference of scienter can be drawn even as to these eight grants.

### c. Plaintiffs Do Not Allege Specific Facts Establishing that Each Individual Defendant Knowingly Backdated Options or Violated Stock Option Accounting Rules.

As Sonic established in its moving papers, the Complaint utterly fails to allege specific facts giving rise to a compelling inference that each of the Individual Defendants acted with scienter. Plaintiffs' lengthy opposition is likewise devoid of any basis for concluding that any of the Individual Defendants either knowingly backdated option grants or violated stock option accounting rules in Sonic's Forms 10-Q or 10-Ks.

With respect to defendant Robert Doris, the Company's former CEO, Plaintiff's entire argument that they have adequately alleged scienter is premised on the unfounded assertion that because eight of the fourteen Section 16 officer grants were allegedly backdated and because Doris was responsible for approving all Section 16 officer grants, *a fortiori*, he engaged in fraudulent conduct. Opp. at 11, lines 16-20. But the only factual allegation in the Complaint to support the existence of backdating is the patently insufficient and unsupported statistical analysis discussed above. There are simply no other allegations in the Complaint—no description of the circumstances surrounding the making

DEFENDANTS' REPLY IN SUPPORT OF SUPERSEDING MOTION TO DISMISS
CASE NO.:  C 07-5111(JSW)

of these grants, no cites to documents or statements by Sonic employees—that establish that Doris intentionally backdated option grants. *Hansen*, 527 F. Supp. 2d at 1155.[4]  Because neither Plaintiffs' spurious "1 in 11 million" statistical claim nor the fact of the Restatement gives rise to a compelling inference of scienter, Plaintiffs have simply failed to specifically allege scienter as to Doris.  The more plausible inference, consistent with the Audit Committee's conclusions in the Restatement, is that any inaccuracies in Sonic's accounting for stock options were the result of administrative error or sloppiness. *Rudolph*, 2008 WL 1734763, at *6.

Similarly, as to defendant Clay Leighton, the former CFO, Plaintiffs argue that because Leighton *received* six of the eight purportedly backdated grants, he must have had knowledge of fraudulent conduct.  However, there are no factual allegations in the Complaint to establish that Leighton knowingly received "patently in-the-money" option grants.  Opp. at 13, line 20.  If the grants were not backdated—and as discussed above, there are no facts alleged giving rise to a compelling inference that options were backdated—then there is no reason to believe that at the time Leighton received his option grants, that those options were "in the money" or that he was necessarily aware of that fact.  To the contrary, as described above, the facts show that for the grants that Leighton received on November 30, 2000, his options already were under-water within a month of the original grant dates.[5]

Plaintiffs also suggest that the fact that Leighton ceased serving as CFO and became the Company's Chief Operating Officer gives rise to an inference scienter.  Opp. at 14; Compl. ¶ 62.  However, a mere change of position—without more—does not give rise to any inference of wrongdoing and thus scienter—particularly, here, where the Company has

---

[4]  In other words, the facts of this case are clearly distinguishable from the recent decision, *Hall v. The Children's Place Retail Stores, Inc.*, No. 07 Civ. 8252 (SAS), 2008 U.S. Dist. Lexis. 54790 (S.D.N.Y. July 18, 2008), that Plaintiffs submitted to the Court the day before Defendants' reply brief was due.  Not only is this Southern District of New York case of no precedential value, plaintiffs there raised an inference of scienter because the company admitted to backdating and seven confidential witnesses provided information about the practices and procedures carried out by the company during the class period.  None of these facts are present here.

[5]  Moreover, the six grants that plaintiffs focus on in their Complaint are a subset of the grants that Leighton received throughout the period that plaintiffs focus on from 1997 to 2005.

DEFENDANTS' REPLY IN SUPPORT OF SUPERSEDING MOTION TO DISMISS
CASE NO.:  C 07-5111(JSW)

publicly disclaimed that any intentional wrongdoing took place and the individual was moved laterally within the company. *In re Cornerstone Propane Partners*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005) ("The court finds that whether they [executives] were terminated or resigned, these notable departures are not in and of themselves evidence of scienter. Most major stock losses are often accompanied by management departures, and it would be unwise for courts to penalize directors for these decisions."); *cf. In re McKesson HBOC Sec. Litig.*, 126 F. Supp. 2d 1248, 1273-74 (N.D. Cal. 2000) (holding that statements by company that dismissed executives were fired for cause because of their participation in fraudulent accounting practices was circumstantial evidence of fraud). In the absence of any evidence that the Board removed Leighton from his position because he engaged in fraud, Plaintiffs cannot draw a negative inference of scienter from his departure. *See In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455-PHX-NVW, 2006 WL 1836181, at *8 (D. Ariz. 2006) ("Plaintiffs allege that Smolak's resignation is evidence of scienter. However, Smolak was not fired for cause, and Hypercom did not publicly offer a reason—such as fraud—for his resignation.").[6]

Plaintiffs also argue that because Leighton as CFO certified that the Company had adequate internal controls, as required by Sarbanes Oxley, and the Company's Stock Option Plans required that each grant be memorialized with a written option agreement, that the admission in the Restatement that the Company lacked sufficient grant documentation "strongly indicates scienter." Opp. at 14. However, the fact that the documentation was not prepared contemporaneously—and thus was not sufficient for establishing the original measurement date—does not mean that no grant documentation (or option agreement) was ever prepared. To the contrary, it was this material that was used by the Audit Committee

---

[6] Even in Plaintiffs' oft-cited case, *Quest*, 527 F. Supp. 2d at 1187, the court held that no negative inference of scienter could be drawn against a reassigned executive even though "the magnitude of the restated financial reports combined with [his] reassignment lends additional credence to the inference that [he] was aware of the improperly dated options." By contrast, a negative inference of scienter could be inferred against a second Quest executive that "refused to cooperate with the Special Committee and resigned." *Id.* at 1188. There is no evidence that Defendant Leighton refused to cooperate with the investigation in this case or that his position change was even related to Sonic's Restatement.

DEFENDANTS' REPLY IN SUPPORT OF SUPERSEDING MOTION TO DISMISS
CASE NO.:  C 07-5111(JSW)

1  in adjusting the measurement dates as part of the Restatement.  RJN, Ex. A, at 2-3.

2          Plaintiffs' pleading failures are even more apparent with respect to the remaining

3  Defendants.  With respect to the outside directors—Marguglio, Greber, and Langley—

4  Plaintiffs allege that the Board admitted in the Restatement that they were aware of the

5  backdating of Section 16 officer grants.  Opp. at 14.  However, the Restatement, as

6  Plaintiffs well know, indicates only that the Board was aware that Doris had made grants to

7  Section 16 officers and did not disapprove of the practice.  Permitting the CEO to approve

8  Section 16 officer grants without full Board action obviously does not amount to

9  participation in fraudulent conduct or tacit approval of backdating.

10          Plaintiffs also make the assertion that because the Complaint alleges that Mary Sauer

11  was Robert Doris' (ex-)wife and a founder of Sonic, as well as the recipient of a purportedly

12  backdated option, they have alleged enough to give rise to a compelling inference of

13  scienter.  Opp. at 15.  Not surprisingly, Plaintiffs fail to cite any cases for the proposition

14  that ex-wives necessarily have "oversight" and knowledge of spousal wrongdoing

15  (assuming *arguendo* that any wrongdoing occurred).  Moreover, as described above, the

16  grant which Ms. Sauer received and Plaintiffs claim was "backdated" was not, in fact,

17  adjusted during the Restatement.  *See* discussion, *supra*, at 6.

18          Plaintiffs apparently concede that they have not alleged sufficient facts to give rise to

19  scienter on the part of David Habiger and Mark Ely.  Habiger did not become President and

20  CEO of Sonic until September 2005, and is not alleged to have participated in approving

21  any of the eight "suspicious" grants.  Plaintiffs concede no backdating occurred after 2004

22  and that Doris was the CEO during the entire period in which backdating allegedly

23  occurred.  Opp. at 2, 3; Compl. ¶ 72.  Defendant Ely became the Vice President of Strategy

24  in 2006.  He is not alleged to have had any role in the granting or approval of stock options;

25  nor is he alleged to have received backdated options.

26  ///

27  ///

28  ///

Accordingly, Plaintiffs' Complaint fall far short of meeting the threshold of particularity set forth in the PSLRA and by the Supreme Court in *Tellabs*.[7]

### d. Defendants' Stock Sales Do Not Create an Inference of Scienter.

The stock sales by Sonic's officers and directors do not create an inference of scienter for similar reasons: Plaintiffs provide absolutely no context for their conclusory claims that Defendants sold "$23 million worth of Sonic stock during the class period." Opp. at 15. As Defendants established in their moving papers, the law is clear that to create an inference of scienter from stock sales, plaintiffs must explain why stock sales are suspicious or unusual. *See Ditech Commc'ns. Corp. Sec. Litig.*, No. C 05-02406, 2006 WL 2319784, at *7 (N.D. Cal. Aug. 10, 2006); *In re NextCard, Inc. Sec. Litig.*, No. C 01-21029, 2006 WL 708663, at *4 (N.D. Cal. Mar. 20, 2006).

In their opposition, Plaintiffs concede that the Complaint does not plead any facts showing that Defendants' stock sales were suspicious or unusual in their timing, quantity relevant to their total holdings, or relative to their past trading practices. Opp. at 15-16. Nor do Plaintiffs attempt to tie any specific stock transaction of Defendants to any particular allegedly backdated grant or alleged misstatement made by Defendants. Plaintiffs do not even plead facts necessary to determine how much of the $23 million in alleged sales represented a gain, whether these "proceeds" were simply reinvested in Sonic stock, or what Defendants' contemporaneous Sonic stock losses may have been.

Instead of pleading any of these particularized facts, Plaintiffs claim that none of this detail is relevant because of the "long duration" of the alleged conspiracy, once again citing *Quest*, 527 F. Supp. 2d at 1185. Opp. at 15-16. But unlike the defendants in *Quest*, Sonic has not conceded the existence of a long-term conspiracy to backdate stock options. *Id.* at 1176. Moreover, in *Quest,* plaintiffs' complaint at least "listed the precise number of shares sold, the dates on which the shares were sold, the price for which the shares were sold, and

---

[7] Because Plaintiffs have failed to plead scienter as to each Individual Defendant, they have also failed to plead scienter as to the Company. *See In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002).

DEFENDANTS' REPLY IN SUPPORT OF SUPERSEDING MOTION TO DISMISS
CASE NO.:  C 07-5111(JSW)

the resulting earnings by each Defendant." *Id.*  In any event, the district court's decision in *Quest* —apparently finding the mere existence of significant stock sales to be suspicious— is contrary to the great weight of Ninth Circuit authority requiring that in order to raise an inference of scienter, plaintiffs must plead facts showing that defendants' stock sales were suspicious or unusual given prior trading practices. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987 (9th Cir. 1999) ("Insider trading is suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.") (*quoting In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989).  Plaintiffs' contention that *all* of Defendants' trades occurred during a period when backdating took place simply renders any inference from their stock sales meaningless.

### e.  Defendants' Corporate Positions Do Not Create an Inference of Scienter.

In the absence of any specific factual allegations of scienter, Defendants' corporate positions at Sonic cannot be used to create an inference of scienter.  *See Hansen*, 527 F. Supp. 2d 1158-59 ("[T]he high rank of various Individual Defendants . . . is insufficient, without more, to infer a strong inference of scienter").  In their opposition, Plaintiffs argue that they have not relied solely upon Defendants' positions at the Company to establish scienter, but have "probe[d] the specifics of the Stock Option Plans at issue and defendants' admissions of who was responsible for the allegedly backdated option grants and which defendants were otherwise aware of them."  Opp. at 19.  Plaintiffs further argue that stock option grants were so vital to the Company's future that Individual Defendants must have known about the backdated grants.  Opp. at 19.  But Plaintiffs do not specifically identify any alleged admissions made by each Individual Defendant; nor do they specifically describe each Individual Defendant's alleged role and knowledge of backdating or its concealment; and they provide no factual support for their assertion that backdated grants were essential to the Company's viability.  Left standing alone, Plaintiffs' allegations regarding Individual Defendants' corporate positions do not create an inference of scienter.

DEFENDANTS' REPLY IN SUPPORT OF SUPERSEDING MOTION TO DISMISS
CASE NO.:  C 07-5111(JSW)

Compl. ¶ 68.[8]

### f.     Defendants' Signing of Filings Does Not Create an Inference of Scienter.

Similarly, in the absence of any specifically pled facts that Individual Defendants knowingly backdated stock options or intentionally concealed the backdating of options, Plaintiffs cannot infer scienter from the Individual Defendants' signing of routine SEC filings. Plaintiffs argue that combined with other evidence of Individual Defendants guilty knowledge, a strong inference of scienter can be inferred from the signing of these filings. But as discussed at length above, Plaintiffs have presented no independent evidence of the Individual Defendants' scienter. "Without allegations that each of the Individual Defendants that signed various [ ] public filings *knew those public filings contained misstatement*s, the Individual Defendants' signatures on those public filings alone does not give rise to a strong inference of scienter." *Hansen*, 527 F. Supp. 2d at 1160 (emphasis added).

### 2.     The Complaint Also Fails to Attribute Any Misstatements to Defendants Ely or the Outside Directors or Plead Scheme Liability as to These Defendants.

As Defendants established in their moving papers, Plaintiffs' Complaint does not attribute any misleading statements to Defendants Ely or any of the Outside Directors (Greber, Langley, and Marguglio). *See* Opening Br. at 22-24. Nor does the Complaint against these Defendants state a "scheme" liability claim. *See* Opening Br. at 24-26. Without allegations that these Defendants either made a statement or participated in a scheme, they cannot be liable under Section 10(b). Plaintiffs' opposition does not even address these arguments. Plaintiffs' failure to do so mandates dismissal of their Section 10(b) claim against Ely and the Outside Directors.

---

[8] *Compare In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1048 (N.D. Cal. 2008) ("[The Complaint] alleges more than that Kriens and Gani held high executive positions. Rather, it alleges (1) that Kriens and Gani signed false financial documents, (2) that they knew or were reckless in not knowing that these documents were false, and (3) that they placed themselves in a position of oversight over Juniper's options granting practices such that they knew or were reckless in not knowing that options were being granted inconsistent with the representations in the financial documents.").

DEFENDANTS' REPLY IN SUPPORT OF SUPERSEDING MOTION TO DISMISS
CASE NO.:  C 07-5111(JSW)

**B.    Plaintiffs Fail to Plead a Section 14(a) Claim**

**1.    Plaintiffs' Section 14(a) Claim Based on the 2003 and 2004 Proxy Statements Is Barred by the Applicable Statute of Limitation.**

Plaintiffs' Section 14(a) claim based on alleged omissions in Sonic's 2003 and 2004 proxy statements is barred by the three year statute of limitations, a point Plaintiffs appear to have conceded.  *See* Plaintiffs' Opp., at 28 (only addressing the sufficiency of the allegations as to the 2005 proxy statement).  Accordingly, to the extent that Plaintiffs' Section 14(a) claim is based on the 2003 and 2004 proxy statements, that claim must be dismissed.

**2.    Plaintiffs' Section 14(a) Claim Based on the 2005 Proxy Statement Also Fails.**

Plaintiffs' Section 14(a) claim based on the 2005 proxy statement should be dismissed because, as set forth in Defendants' motion, Plaintiffs have failed to plead both (1) an "essential link" between any alleged misstatement and any injury to investors, and (2) facts raising a "strong inference of negligence" on the part of the Defendants.  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000); *see also In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007).  Plaintiffs' arguments to the contrary in their opposition brief are unavailing.

**a.    Plaintiffs Fail to Plead Causation or Direct Injury.**

The alleged omission is the disclosure of the purported backdating scheme and the transaction at issue in the 2004 proxy is the election of directors.  Missing from the Complaint is the causal link between the two.  Opening Br. at 28-29, citing *Gaines v. Haughton*, 645 F.2d 761 (9th Cir. 1981), overruled in part on other grounds in *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir. 1984); *In re Verisign, Inc. Sec. Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007).  In their opposition, Plaintiffs ignore *Verisign* and *Gaines*, and argue that they have sufficiently pled an "essential link," pointing to two other options cases, *Belova v. Sharp*, No. CV 07-299-MO, 2008 WL 700961 (D. Or. Mar. 13, 2008) and *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1017 (N.D. Cal. 2007)*, that are clearly distinguishable.  Opp. at 28-29.  Plaintiffs ignore the critical fact that in both of those cases

14

the shareholders not only voted to elect directors, but also voted to approve the option plans

pursuant to which the purportedly backdated options were issued.  *Belova*, 2008 WL

700961, at *7; *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d at 1017.  In contrast, Sonic's

2005 proxy statement did not solicit shareholder approval for any option plans; the *only*

item up for a vote was the election of directors.  *See* RJN in Support of Defendants' Motion

to Dismiss, Ex. A, filed on June 27, 2008.

Plaintiffs also ignore the requirement that the Complaint must allege that the

approved transaction was the direct cause of Plaintiffs' injury.  *See* Opening Br., at 28-30,

citing *Verisign*, 531 F. Supp. 2d at 1213 (holding that plaintiffs failed to meet the causation

requirement by seeking damages based on the alleged backdating where such transactions

were not subject to shareholder approval via the proxy statement at issue).  Here, Plaintiffs

assert pecuniary harm from the purported backdating.  It stands to reason then (and the case

law supports this conclusion) that only those proxies soliciting approval of an option plan

could even begin to provide the basis of a Section 14(a) claim.  The 2005 proxy statement

does not seek approval of an option plan or any option grants.  Nor can Plaintiffs rely on

*Zoran* and *Belova* on this point: the alleged harm in *Zoran* and *Belova* (which were

derivative cases) was to the Company when the options were issued under the plans

approved by the shareholders.  Plaintiffs here have failed to articulate how shareholders—

purchasers in the open market—were directly harmed by the election of directors.  *See*

Opening Br. at 29-30.

### b.    Plaintiffs' Complaint Fails to Raise a Strong Inference of Negligence.

Plaintiffs' Section 14(a) claim must be dismissed for an additional reason:  Plaintiffs'

Complaint fails to plead "particular facts giving rise to a strong inference of negligence."

*McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000); *see also*

*Rudolph v. UTStarcom*, No. C 07-04578, 2008 WL 1734763, at *8 (N.D. Cal. Apr. 14,

2008); Opening Br. at 30-31.

Instead of pointing to specific factual allegations in the Complaint as to *each*

Defendant, Plaintiffs summarily argues in their opposition that allegations regarding Defendants' positions, roles and duties are sufficient to lead to a strong inference of negligence. Opp. at 29-30. To infer negligence merely from such generalized allegations would transform Section 14(a)'s negligence standard into a strict liability standard based on a defendant's position or title. Indeed, numerous courts have rejected these types of allegations finding them insufficient to allege negligence in the context of a Section 14(a) claim in other options cases. *See, e.g.*, *In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d at 1205-07, 1214 (finding that allegations of defendants' position and duties insufficient to allege scienter or negligence); *Rudolph v. UTStarcom*, 2008 WL 1734763, at *6-7.

### C.    Plaintiffs' Section 20(a) Claim Must Be Dismissed

Plaintiffs' Section 20(a) claim must be dismissed because: (1) the Complaint fails to allege a primary violation, see discussion *supra*; and (2) the Complaint fails to plead the circumstances of the control relationship with particularity. Opening Br. at 22-25. In response, Plaintiffs make two arguments: (1) allegations of control only need to be plead in accordance with "notice pleading" under Rule 8; and (2) even if the particularity requirements of Rule 9(b) apply, the allegations in the Complaint have met this requirement. Opp. at 22-25. Plaintiffs' arguments should be rejected.

As an initial matter, the argument that notice pleading applies ignores the fact that this Court (and most other courts in this district that have addressed this issue) has already concluded that a Section 20(a) claim must be plead with particularity. *See, e.g., In re Ditech Commc'ns Corp. Sec. Litig.*, 2007 WL 2990532, at *4 (N.D. Cal. Oct. 11, 2007) (J. White); *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1098 (N.D. Cal. 2006) (J. White); *Kuehbeck v. Genesis Microchip, Inc.*, No. C 02-05344 JSW, 2005 WL 1787426, at *3 (N.D. Cal. 2005); *Hayley v. Parker*, No. Civ. 01-0069, 2002 WL 925322, at *3 (C.D. Cal. Mar. 15, 2002); *Howard v. Hui*, No. C 92-3742-CRB, 2001 WL 1159780, *4 (Sept. 24, 2001); *In re Splash Tech. Holdings Sec. Litig.*, No. C 99-00109 SBA, 2000 WL 1727377, at *25 (N.D. Cal. Sept. 29, 2000). Thus, Plaintiffs' Section 20(a) claim must comply with Rule 9(b) and the Complaint must plead the "circumstances of control" with particularity.

16

As discussed in Defendants' opening brief, the Complaint utterly fails to plead with particularity how *each* Defendant was involved in the day-to-day operations of the Company *and* had the power to control corporate actions, and instead offers nothing more than boilerplate allegations that have been rejected by other courts.  Opp. at 33; *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (holding that determination of control involves examination of defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions).

Plaintiffs' opposition cites to numerous paragraphs of the Complaint that supposedly set out how the Individual Defendants controlled the Company.[9]  *See* Opp. at 23.  But these paragraphs are nothing more than boilerplate allegations regarding the Individual Defendants' roles, positions, Board membership, and responsibilities.[10]  *See id.*  Even the cases cited in Plaintiffs' opposition state that general allegations of roles and positions are insufficient to support a Section 20(a) claim.  *See e.g.*, *Arthur Children's Trust v. Keim*, 994 F.2d 1390 (9th Cir. 1993) (holding that motion for summary judgment should be denied where there was substantial evidence from discovery that defendant had exercised control over the Company, and not merely because of his title, position, or membership on the Board); *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987) ("the status or position of an alleged controlling person, by itself, is insufficient to presume or warrant a finding of power to control or influence"); *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1053 (N.D. Cal. 2008) ("[a] plaintiff must allege more than the defendant's position and committee membership"); *In re HiEnergy Tech., Inc. Sec. Litig.*, No. SACV 04-1226 DOC (JTLX), 2005 WL 3071250, at *13 (C.D. Cal. Oct. 25, 2005) ("the fact that

---

[9]  Plaintiffs appear to have abandoned their Section 20(a) claim against Sonic.  Plaintiffs' opposition only contends that "the complaint adequately alleges 'control person' liability as to all *individual defendants*."  Opp. at 22, line 18-19 (emphasis added).  Thus, for the reasons set forth Defendants' opening brief, the Section 20(a) claim against Sonic must be dismissed.

[10]  In a last ditch effort to shore up Plaintiffs' Section 20(a) claim, the opposition also repeatedly contends that the Individual Defendants were involved in the "daily management of the Company."  Opp. at 23, lines 12-13 (citing Compl. ¶¶ 60-68, 217), at 24, line 12 (citing Compl. ¶¶ 60-64, 68).  The Complaint paragraphs cited simply do not allege that Defendants were responsible for the day-to-day management of the Company and the Court need not consider these allegations asserted for the first time in the opposition.

17

1 [defendants] are officers and directors of HiEnergy does not alone create a presumption of

2 control").  Nor are Plaintiffs' remaining allegations regarding Defendants' responsibilities

3 under the option plans sufficient.  Opp. at 23-24; *see also In re Digital Island Sec. Litig.*,

4 223 F. Supp. 2d 546, 561 (D. Del. 2002) ("the court concludes that the plaintiffs'

5 unsupported allegations regarding management responsibilities fail to allege with the

6 requisite specificity that the individual defendants played a role in the alleged

7 nondisclosures").  In short, Plaintiffs' allegations are precisely like those in *Hansen* which

8 were insufficient to allege control and here too, this Court should dismiss Plaintiffs' Section

9 20(a) claim.  *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (N.D. Cal.

10 2007).

11 **D.      Plaintiffs Failed to State a Section 20A (Insider Trading) Claim**

12 To state a Section 20A claim, Plaintiffs must plead (1) a predicate violation of

13 another provision of the securities laws, and (2) particular facts showing that they traded

14 contemporaneously with Defendants.  *Johnson v. Aljian*, 490 F.3d 778, 785 (9th Cir. 2007);

15 *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993).  As discussed above, the Section

16 20A claim against all Individual Defendants should be dismissed because Plaintiffs have

17 failed to plead a predicate violation of either Section 10(b) or Section 14(a) of the securities

18 laws.  Additionally, Plaintiffs fail to plead with particularity that they traded

19 contemporaneously with Defendants Sauer, Ely, Marguglio, Langley, or Greber.  Opening

20 Br. at 34.  Plaintiffs make three arguments in their opposition, all of which are without

21 merit.

22 *First*, Plaintiffs argue that they do not need to plead that they purchased stock

23 contemporaneously with Defendants because "there can be little doubt that members of the

24 proposed class traded on the same day as each of the insider selling defendants sold."  Opp.

25 at 27, lines 6-7, citing *In re Openwave Sys. Sec. Litig.*, 528 F. Supp 2d 236, 256 (S.D.N.Y.

26 2007).  Plaintiffs further argue that Defendants' position—that the Court-appointed lead

27 plaintiff must have traded contemporaneously with Defendants—would "require a separate

28 lead plaintiff be appointed for every insider sale by every defendant—a position that is

18

directly contrary to the law and the very purposes underlying the PSLRA." Opp. at 27, lines 1-2. But that is exactly what the law requires in this Circuit: Where a plaintiff lacks standing to bring a claim personally, that plaintiff cannot pursue the claim on behalf of the class. *See, e.g.*, *La Mar v. H & B Novelty and Loan Co.*, 489 F.2d 461, 465-66 (9th Cir. 1973) (holding that a class plaintiff may not represent the class for claims she does not share); *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1523 (N.D. Cal. 1990) (dismissing Section 20A claim where class plaintiff did not trade contemporaneously with defendants); *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1489-90 (N.D. Cal. 1990) (same). It is irrelevant that other members of the putative class traded contemporaneously with Defendants. *In re Verifone Sec. Litig.*, 784 F. Supp. at 1490 (rejecting plaintiffs' argument that they may nonetheless maintain a class for the benefit of those who did trade contemporaneously with defendants).

   *Second*, Plaintiffs argue that the Complaint's general allegation that Sauer, Ely, and Marguglio sold Sonic stock during the class period is sufficient. Opp. at 26. But these allegations do not specify on what dates these Defendants traded. Without this information, there is simply no way for this Court to even determine whether these Defendants traded contemporaneously with Plaintiffs. Accordingly, the Section 20A claim against these Defendants fails. *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993).

   *Third*, as to defendants Langley and Greber, who traded one and nine days before the City of Westland respectively, the issue turns on the definition of "contemporaneous." Though the Ninth Circuit has not squarely addressed what constitutes "contemporaneous" trading, numerous district courts in this Circuit have adopted the more restrictive requirement that the purchases and sales must be on the same day. *See, e.g.*, *Buban v. O'Brien*, No. C 94-0331 FMS, 1994 WL 324093, at *2 (N.D. Cal. June 22, 1994); *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 233 (C.D. Cal. 1995). Defendants submit that the same day standard is more consistent with the underlying goals of Section 20A—to protect only those who might have actually traded with insiders. *In re AST Research Sec. Litig.*, 887 F. Supp. at 234. For publicly traded securities, the contemporaneous requirement is

19

intended to serve as a proxy for contractual privity. *Buban*, 1994 WL 324093, at *2; *AST Research*, 887 F. Supp. at 234. Thus, it stands to reason that Plaintiffs could not have purchased Defendants' shares where the trades are not made on the same day. Because Plaintiffs did not trade on the same day as Greber and Langley, Plaintiffs do not have standing to maintain a Section 20A claim against them.

## III.    CONCLUSION

For the reasons stated above and in Defendants' opening brief, this Court should grant Defendants' Motion to Dismiss Plaintiffs' [Corrected] Consolidated Class Action Complaint.

DATED:  August 8, 2008                    Respectfully submitted,

HELLER EHRMAN LLP


                                                        /s/  Sara Brody
                                         SARA B. BRODY
                                         CAROL LYNN THOMPSON
                                         CECILIA Y. CHAN
                                         MATTHEW D. THURLOW


                                         Attorneys for Defendants
                                         SONIC SOLUTIONS, DAVID C. HABIGER,
                                         ROBERT J. DORIS, A. CLAY LEIGHTON,
                                         MARY C. SAUER, MARK ELY, ROBERT M.
                                         GREBER, PETER J. MARGUGLIO and R.
                                         WARREN LANGLEY

SF 1475424 v9

DEFENDANTS' REPLY IN SUPPORT OF SUPERSEDING MOTION TO DISMISS
CASE NO.:  C 07-5111(JSW)