COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS (213113)
CHRISTOPHER M. WOOD (254908)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@csgrr.com
cwood@csgrr.com

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
JOY ANN BULL
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
joyb@csgrr.com

LABATON SUCHAROW LLP
CHRISTOPHER J. KELLER
JONATHAN GARDNER
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
ckeller@labaton.com
jgardner@labaton.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF WESTLAND POLICE AND FIRE RETIREMENT SYSTEM and PLYMOUTH COUNTY RETIREMENT SYSTEM, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SONIC SOLUTIONS, et al., <br><br> Defendants. | No. C 07-05111-CW <br><br> CLASS ACTION <br><br> LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:         December 3, 2009 <br> TIME:          2:00 p.m. <br> COURTROOM:  The Honorable <br> Claudia Wilken |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND .................................................................................2

       A.     Nature of the Claims ..................................................................................2

       B.     Procedural History and Lead Plaintiffs' Factual Investigation .................3

       C.     Settlement Negotiations and Overview of the Settlement .........................5

       D.     Summary of the Proposed Settlement ........................................................5

III.   ARGUMENT ..........................................................................................................6

       A.     The Proposed Settlement Satisfies the Criteria for Preliminary Approval .............6

       B.     The Settlement Is the Result of a Thorough, Rigorous and Adversarial
              Process .......................................................................................................7

       C.     The Settlement Merits Preliminary Approval and Settlement Class
              Members Should Be Given Notice and an Opportunity to Be Heard
              Concerning the Terms of the Settlement ...................................................8

       D.     Members of the Settlement Class Should Be Given an Opportunity to
              Request Exclusion ...................................................................................10

IV.    THE PROPOSED SETTLEMENT NOTICE SATISFIES RULES 23(D) AND (E)
       AND DUE PROCESS REQUIREMENTS .........................................................11

V.     THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT
       CLASS ................................................................................................................12

VI.    PROPOSED SCHEDULE OF EVENTS ............................................................14

VII.   CONCLUSION ....................................................................................................15

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997) .................................................................................................14

5

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) ......................................12

6

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) .........................................................................8, 11

7

8

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) .........................................................................6

9

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .........................................................................13

10

11

*Hicks v. Stanley,*
   No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................................8

12

*In re Broadwing, Inc. ERISA Litig.,*
   252 F.R.D. 369 (S.D. Ohio 2006) .........................................................................10

13

14

*In re Cirrus Logic Sec.,*
   155 F.R.D. 654 (N.D. Cal. 1994) .........................................................................12

15

*In re Corrugated Container Antitrust Litig.,*
   659 F.2d 1322 (5th Cir. 1981) .........................................................................6

16

17

*In re Indep. Energy Holdings PLC Sec. Litig.,*
   No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..................................8

18

*In re THQ, Inc., Sec. Litig.,*
   No. CV 00-1783, 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ..................................12

19

20

*In re Worlds of Wonder Sec. Litig.,*
   No. C 87 5491, 1990 WL 61951 (N.D. Cal. Mar. 23, 1990) ..................................12

21

*Jaffe v. Morgan Stanley & Co.,*
   No. C 06 3903, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ....................................12, 13

22

23

*Linney v. Cellular Alaska P'ship,*
   151 F.3d 1234 (9th Cir. 1998) .........................................................................6, 10

24

*Mendoza v. Tucson Sch. Dist. No. 1,*
   623 F.2d 1338 (9th Cir. 1980) ....................................................................11, 12

25

26

*Mullane v. Cent. Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) .........................................................................11

27

28

Page

*Satchell v. Fed. Express Corp.*,
   Nos. C03-2659, C 03-2878, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)....................7, 8

*Schneider v. Traweek*,
   No. CV 88-0905, 1990 WL 132716 (C.D. Cal. July 31, 1990) .........................................12

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...........................................................................................15

*West v. Circle K Stores, Inc.*,
   No. CIV. S-04-0438, 2006 WL 1652598 (E.D. Cal. June 13, 2006).............................6, 8

*Yamner v. Boich*,
   No. C-92-20597, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994).......................................12

*Young v. Polo Retail, LLC*,
   No. C-02-4546, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ......................................6, 7


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b).................................................................................................... *passim*
   §78n(a)..........................................................................................................2, 4
   §78t(a) ................................................................................................................2

Federal Rules of Civil Procedure
   Rule 23 .............................................................................................................12
   Rule 23(a)....................................................................................................13, 14
   Rule 23(b) ...................................................................................................13, 14
   Rule 23(c)(2).......................................................................................................6
   Rule 23(c)(2)(B)................................................................................................11
   Rule 23(D) .....................................................................................................111

17 C.F.R.
   §240.10b-5 .........................................................................................................2

TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on December 3, 2009, at 2:00 p.m., in the Courtroom of the Honorable Claudia Wilken, United States District Judge, at the United States Courthouse, United States District Court, Northern District of California, 1301 Clay Street, Oakland, California, Lead Plaintiffs will seek entry of the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"), filed herewith.  Lead Plaintiffs' unopposed motion is based on the Stipulation of Settlement dated as of October 12, 2009 ("Stipulation"), filed herewith, the following Memorandum in Support of Preliminary Approval of Settlement, all other pleadings and matters of record, and such additional evidence or argument as may be presented.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Settling Parties have entered into the Stipulation that results in the resolution of all claims in this Litigation for the amount of $5 million in cash on the terms set forth in the Stipulation. Lead Plaintiffs City of Westland Police and Fire Retirement System and Plymouth County Retirement System ("Lead Plaintiffs") submit this memorandum in support of their unopposed Motion for entry of the Notice Order.  Lead Plaintiffs respectfully request that the Court:  (1) grant preliminary approval of the Settlement and provisionally approve the certification of a Settlement Class; (2) approve the form of notice (the "Notice") and direct the dissemination of Notice to the members of the Settlement Class; (3) set a date by which objections, if any, to the Settlement, the Plan of Allocation or the application for an award of attorneys' fees and expenses must be served and filed with the Court; (4) set a date by which members of the Settlement Class may request exclusion from the Settlement Class; (5) set a date by which Settlement Class members wishing to participate in the Settlement must submit properly completed Proofs of Claim and supporting documents; and (6) schedule a date and time for a hearing to consider final judicial approval of the Settlement.

Lead Plaintiffs submit that the Settlement is a very good result for the Settlement Class and should be preliminarily approved.  The Settlement, which was achieved after a comprehensive pre-discovery investigation by counsel, analysis by expert consultants, aggressive motion practice and

months of settlement negotiations (including two formal mediation sessions before impartial mediators), provides a substantial recovery in the range of between 8% and 22% of the aggregate damages estimated by the Settlement Class's damages consultant.[1]   In consideration for this payment, the Settlement will result in the dismissal of the First Amended Class Action Complaint for Violations of the Federal Securities Laws, filed on May 8, 2009 (the "Amended Complaint") with prejudice and the release of all related claims against Defendants in the Litigation.  For the reasons set forth herein, Lead Plaintiffs respectfully request that the Court grant this Motion.

## II.   FACTUAL BACKGROUND

### A.   Nature of the Claims

The Amended Complaint alleges that Defendants Sonic Solutions ("Sonic" or the "Company"), and Robert J. Doris ("Doris"), Mary C. Sauer ("Sauer"), David C. Habiger ("Habiger"), A. Clay Leighton ("Leighton"), Mark Ely ("Ely"), R. Warren Langley ("Langley"), Peter J. Marguglio ("Marguglio") and Robert M. Greber ("Greber") (the "Individual Defendants") violated Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, by issuing false and misleading statements in periodic reports and proxy statements which were filed with the Securities and Exchange Commission ("SEC") between October 23, 2002 through May 17, 2007, inclusive (the "Class Period").[2]

As alleged in the Amended Complaint, Defendants engaged in a prolonged scheme to grant backdated and "in the money" stock options to themselves and their employees while failing to disclose these practices to investors and by improperly accounting for the backdated options under Generally Accepted Accounting Principles ("GAAP").  As a result, Sonic's Class Period SEC filings and public statements contained material misrepresentations and omissions about the Company's

---

[1]    As explained more fully herein, the range of recovery depends on which stock price drops Lead Plaintiffs would be able to prove resulted from the wrongdoing alleged.

[2]    In addition to the alleged Sections 10(b) and 14(a) liability for these acts, the Individual Defendants, as control persons, are also allegedly liable under Section 20(a) of the Exchange Act. Based on their sale of Sonic securities during the Class Period, the Individual Defendants are allegedly further liable under Section 20(A) for insider trading.

1  stock option grants, and misrepresented the Company's income and expenses.  The false and

2  misleading statements had the effect of artificially inflating the value of Sonic's securities during the

3  Class Period.

4          On February 1, 2007, Sonic issued a press release announcing that an internal investigation

5  into its past options practices found that the Company's stock options had not been issued at fair

6  market value as previously stated, and that the Company had not properly expensed its stock options

7  in accordance with GAAP and APB 25.  On February 2, 2007, the Company's stock fell from $18.03

8  to $16.68.

9          Two weeks later, in a February 15, 2007 press release, the Company announced it would

10 have to restate previous financial statements as a result of the improper accounting for stock options,

11 and that the impact of the restatement would be material.  Sonic's stock price dropped from $16.20

12 to $13.75 following this announcement.  The amount of the write off was later quantified in Sonic's

13 2007 Form 10-K, when the Company disclosed that it had written off all but $3.21 million of the

14 $22.163 million net income reported for fiscal years 1998-2005.

15         The gravamen of the Amended Complaint is that during the Class Period, Defendants

16 artificially inflated the price of Sonic's stock by intentionally backdating stock option grants to

17 Company officers, directors and employees, and intentionally, or with severe recklessness, failing to

18 disclose these practices to investors and to properly account for the backdated stock option grants

19 during the Class Period.  When the truth about Defendants scheme was revealed to the market, the

20 price of Sonic stock dropped materially, as the artificial inflation was removed from Sonic's stock

21 price.  As a result, Lead Plaintiffs and the Settlement Class were economically harmed.

22     **B.       Procedural History and Lead Plaintiffs' Factual Investigation**

23         The parties have been vigorously litigating the Litigation since the initial complaint was filed

24 on October 4, 2007.  On January 10, 2008, the Court appointed the City of Westland Police and Fire

25 Retirement System and the Plymouth County Retirement System as Lead Plaintiffs to represent the

26 proposed Settlement Class.

27         Lead Plaintiffs filed a consolidated complaint on March 21, 2008 and a corrected

28 consolidated complaint on May 27, 2008.  Although the Private Securities Litigation Reform Act

1   ("PSLRA") discovery stay was in place pending a ruling on a motion to dismiss, counsel conducted

2   an investigation to locate and interview former Sonic employees.  That effort resulted in several

3   confidential witness statements used to support the allegations of the consolidated complaint.  Lead

4   Plaintiffs also worked closely with Professor Eric Lie, the leading statistician on the issue of

5   backdating and whose scholarly work on the issue is largely responsible for uncovering backdating

6   practices at hundreds of publicly traded companies.  Professor Lie's analysis was also used to

7   support the allegations of the consolidated complaint.

8          Defendants then moved to dismiss the consolidated complaint and Lead Plaintiffs opposed

9   the motion.  On September 4, 2008, with Defendant's motion to dismiss outstanding, the Court, *sua*

10  *sponte*, ordered the case related to the underlying derivative action and transferred the case to the

11  Honorable Claudia Wilken.  Thereafter, Defendants motion to dismiss was re-briefed in front of

12  Judge Wilken.

13         On April 6, 2009, the Court granted in part and denied in part Defendants' motion, sustaining

14  the Section 14(a) claim based on allegedly false statements in Sonic's 2005 Proxy Statement and the

15  insider trading claims brought against Individual Defendants Doris, Leighton, Langley and Greber,

16  but dismissed the Section 10(b) and control person claims against all Defendants, as well as the

17  insider trading claims against Individual Defendants Sauer, Ely and Marguglio without prejudice.

18         In order to address what the Court perceived as the shortfalls in the consolidated complaint,

19  Lead Plaintiffs continued their investigation resulting in several additional confidential witness

20  statements supporting Lead Plaintiffs' claims.  Lead Plaintiffs also engaged Professor Lie to do a

21  more comprehensive statistical analysis of Sonic's stock option grants.  Professor Lie performed

22  perhaps the most thorough analysis of backdating at any public company in connection with this

23  litigation, analyzing Sonic's public stock option grant information under at least three different

24  methodologies.  Professor Lie's analysis was used to support the allegations of the Amended

25  Complaint.  Lead Plaintiffs also worked closely with a damages consultant to investigate loss

26  causation claims and assess the size and scope of the damage suffered by the Settlement Class.  On

27  May 8, 2009, Lead Plaintiffs filed the Amended Complaint supporting the allegations with the

28  results of the continued factual investigation and the additional expert consultant analysis.

### C.   Settlement Negotiations and Overview of the Settlement

The parties made a first attempt at settlement through a combined mediation with the related shareholders' derivative action prior to the Court's decision on Defendants' motion to dismiss. However, the first mediation session was not successful.

After the Court's decision on the motion to dismiss and the filing of the Amended Complaint, the parties agreed to a second mediation session before a different mediator: United States District Court Judge Layn Phillips (Ret.).   A full-day mediation session was held on June 24, 2009. Although the parties left the mediation conference at an impasse, a settlement was reached via continued negotiations between the parties in the week following the conference.   All negotiations were at arms-length and well informed by: (i) months of extensive informal investigation by counsel, including interviews with numerous former Sonic employees; (ii) analysis of the publicly available information about Sonic and the Individual Defendants; (iii) an analysis of the Company's financial wherewithal to sustain a judgment or pay a settlement; and (iv) contentious motion practice seeking dismissal of the claims.

### D.   Summary of the Proposed Settlement

The Settlement will be funded by a $5,000,000.00 cash payment by Sonic's insurance carriers.  The terms of the settlement are set forth in the Stipulation.  The $5 million in cash, less attorneys' fees and any expenses awarded by the Court,[3] notice and administration expenses, and any tax expenses payable from the Settlement Fund (the "Net Settlement Fund"), will be distributed to Authorized Claimants (*i.e.*, Settlement Class Members who file timely and valid Proofs of Claim) in accordance with the Plan of Allocation described fully in the Notice.  The Plan of Allocation, which was drafted with the assistance of a damages consultant, takes into account the various alleged disclosure dates and stock drops and treats all potential claimants in a fair and equitable fashion. Each Authorized Claimant will be paid that percentage of the Net Settlement Fund that such

---

[3]     As set forth in the Notice, Lead Counsel will file a written request with the Court for an award of attorneys' fees and expenses incurred in connection with the prosecution of the Litigation.

1   Authorized Claimant's "claim" represents in relation to the total claims of all Authorized Claimants

2   who purchased Sonic's securities during the Settlement Class Period.

3          As set forth below, the Settlement meets the standards for preliminary approval as it falls

4   well within the range of possible approvals, was the product of rigorous arms-length negotiations

5   between experienced counsel and has no obvious deficiencies. The proposed notices should also be

6   issued to the Settlement Class given the notice program is the best practicable under the

7   circumstances. Fed. R. Civ. P. 23(c)(2).

8   **III.   ARGUMENT**

9          **A.   The Proposed Settlement Satisfies the Criteria for Preliminary**
               **Approval**

10

11         Judicial policy strongly favors settlement of class actions. *Class Plaintiffs v. City of Seattle*,

12   955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th

13   Cir. 1998); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438, 2006 WL 1652598, at *1 (E.D. Cal.

14   June 13, 2006). Settlements of complex cases greatly contribute to the efficient utilization of scarce

15   judicial resources and achieve the speedy resolution of justice. In the context of a class action

16   settlement, recovery of approximately 8% of the maximum potential damages is a very good result.

17   Nevertheless, courts have recognized that a "just result is often no more than an arbitrary point

18   between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.*, 659

19   F.2d 1322, 1325 (5th Cir. 1981).

20         Approval of a class action settlement normally proceeds in two stages: preliminary approval,

21   followed by notice to the class, and then final approval. *See, e.g.*, *West*, 2006 WL 1652598, at *2.

22   This case is now at the first stage of the process. Standards governing whether preliminary approval

23   should be granted have "both a procedural and a substantive component." *Young v. Polo Retail*,

24   *LLC*, No. C-02-4546, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006). The court in *Young*,

25   quoting from Newberg on Class Actions, explained the procedure as follows:

26         "[i]f the proposed settlement appears to be the product of serious, informed, non-
            collusive negotiations, has no obvious deficiencies, does not improperly grant
27         preferential treatment to class representatives or segments of the class, and falls
            within the range of possible approval, then the court should direct that the notice be
            given to the class members of a formal fairness hearing . . . ." Manual for Complex
28         Litigation, Second § 30.44 (1985). In addition, "[t]he court may find that the

1  settlement proposal contains some merit, is within the range of reasonableness
2  required for a settlement offer, or is presumptively valid."   Newberg on Class
   Actions § 11.25 (1992).

3  *Id.* (omission in original); *see also Satchell v. Fed. Express Corp.*, Nos. C03-2659, C 03-2878, 2007

4  WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (granting preliminary approval after finding proposed

5  settlement was non-collusive, had no obvious defects and was within the range of possible settlement

6  approval).  Applying the standards set forth above, the Settlement should be preliminarily approved.

7      **B.      The Settlement Is the Result of a Thorough, Rigorous and Adversarial
               Process**
8
9          The procedural history of this case demonstrates an arm's-length, adversarial relationship

10  between the parties.  The suit was filed two years ago.  For months, the parties attempted to mediate

11  the class claims in conjunction with the derivative claims, but were unable to make any progress.

12  The parties then litigated a motion to dismiss, which resulted in the Court dismissing the Complaint

13  in part, with leave to re-plead.  As noted above, the Court did not sustain Lead Plaintiffs' Section

14  10(b) claims, control person claims, and the insider trading claims brought against certain Individual

15  Defendants.

16          As Lead Plaintiffs worked at drafting the Amended Complaint in an effort to address the

17  deficiencies the Court identified in connection with the claims that were not sustained, the parties

18  began to discuss the possibility of mediation.  The initial discussions were contentious, with the

19  parties far apart.  The parties did agree, however, that the participation of a skilled mediator might

20  assist the parties in reaching a settlement.

21          In addition to the contentious nature of the parties' initial settlement discussions, the

22  mediation process also demonstrates that the Settlement was hard-fought and negotiated at arm's-

23  length.  Although conducted by an experienced mediator, the initial mediation session failed.  The

24  parties almost reached an agreement through a second mediation session, facilitated by a different,

25  experienced mediator and former federal judge who has considerable knowledge and expertise in the

26  field of securities law and who has mediated several securities cases alleging that defendants

27  backdated stock options.  However, even with the assistance of the mediator, no agreement was

28

1    reached.  Finally, after additional discussions following the mediation conference, both with and

2    without the mediator's participation, the framework of a settlement was reached.

3           Courts have recognized that "[t]he assistance of an experienced mediator in the settlement

4    process confirms that the settlement is non-collusive."  *Satchell*, 2007 WL 1114010, at *4; *see also*

5    *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *4

6    (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length

7    negotiations, with the assistance of a private mediator experienced in complex litigation, is further

8    proof that it is fair and reasonable").  This presumption is particularly apt where, as here, the

9    ultimate settlement required a number of attempts at mediation and, even then, went into "extra

10   innings."  *See*, *e.g.*, *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct.

11   24, 2005) ("[a] breakdown in settlement negotiations can tend to display the negotiation's arms-

12   length and non-collusive nature").

13          **C.    The Settlement Merits Preliminary Approval and Settlement Class
                    Members Should Be Given Notice and an Opportunity to Be Heard**
14          **Concerning the Terms of the Settlement**

15          "[A]t this preliminary approval stage, the court need only 'determine whether the proposed

16   settlement is within the range of possible approval.'"  *West*, 2006 WL 1652598, at *11 (citation

17   omitted).  This Settlement, which obligates Defendants to pay $5 million, clearly is within such a

18   range and merits consideration by all of the members of the Settlement Class.  Moreover, the

19   fairness and adequacy of the Settlement is further underscored by taking into account the obstacles

20   the Settlement Class faced in ultimately succeeding on the merits, as well as the expense and likely

21   duration of the litigation.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004)

22   (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final

23   approval of settlement).

24          It is difficult to compare the Settlement to the amount that the Settlement Class might have

25   obtained if Lead Plaintiffs had been completely successful in establishing liability at trial, because

26   there were a number of variables impacting the analysis.  For example, the Court dismissed Lead

27   Plaintiffs' Section 10(b) and control person claims.  Those claims gave rise to all but a small

28

1    percentage of the damages estimated by Lead Plaintiffs' damages consultant.  There was hot debate

2    between the parties and substantial disagreement whether the Court would sustain those claims in

3    connection with a motion to dismiss the Amended Complaint, or whether the Court would dismiss

4    them for a second time.   While Lead Plaintiffs felt confident the claims would be sustained,

5    Defendants felt strongly to the contrary.

6          Even assuming those claims would have been sustained, the parties also hotly debated issues

7    of loss causation and the proper methodologies for computing damages.   For example, Lead

8    Plaintiffs were most confident in establishing loss causation regarding Sonic's announcement of the

9    backdating investigation on February 2, 2007.   Lead Plaintiffs' damages consultant estimated

10   Section 10(b) damages to the Settlement Class based on that announcement alone of $22.499

11   million.

12         Defendants had a different view indicating they would challenge loss causation on all three

13   days, but particularly that Sonic's stock price drops on February 16, 2007 and May 18, 2007, were

14   not caused by news regarding the backdating, but by other Company-specific information.  Lead

15   Plaintiffs felt confident they would be able to prove loss causation regarding the other event days on

16   February 16, 2007 and May 18, 2007, and that they would be able to demonstrate total damages of

17   approximately $62.1 million.[4]  Lead Plaintiffs acknowledged the risk in proving damages for each of

18   the event days, and recognized the risk that a jury might not find liability or that Defendants' actions

19   caused losses, or that, even if a jury reached findings favorable to the Settlement Class, a jury might

20   substantially reduce the amount of damages.

21         Regardless of who was successful at trial, there is no doubt that the case both sides would

22   present would be both complex and nuanced, and would include a "battle of the experts" on the

23   arcana of damages calculation, isolation of the damages attributable to particular disclosures,

24   accounting methodology and securities disclosure requirements.   The results of the trial would

25

---

26   [4]      The Plan of Allocation that Lead Counsel propose to use to calculate Settlement Class
     Members' Claims uses all three event days.  Therefore the maximum class-wide damages under this
27   plan are approximately $62.1 million.

28

almost certainly not end the Litigation, as one side would likely appeal, and it is quite possible that both sides would do so in the event that the jury found for the Settlement Class, but substantially reduced the damages sought.  In the absence of a settlement, Settlement Class Members would have to wait several more years before they obtain any relief, even assuming they were successful and overcame every obstacle.  It has been noted that "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement."  *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006).

Taking into account the risks of surviving a second motion to dismiss and in proving damages, the proposed $5 million Settlement represents approximately 8% of Lead Plaintiff's estimate of the maximum damages to the Settlement Class.  Moreover, the Settlement amount substantially exceeds Defendants' calculation of the damages, based on any scenario, sustained by the Settlement Class.  The Ninth Circuit has pointed out that the very essence of settlement is compromise and that a settlement can be acceptable even though it may amount to only a fraction of the potential recovery. *Linney*, 151 F.3d at 1242.  The proposed Settlement exceeds the percentage of total damages recovered in many class action settlements that are presented for court approval.[5] Thus, the proposed Settlement clearly meets the standards for preliminary and final approval.

> ### D.      Members of the Settlement Class Should Be Given an Opportunity to Request Exclusion

Because of the stage of the Litigation, prior to certification of the Settlement Class, prior to the distribution of a notice of pendency and prior to the opportunity for members of the Settlement Class to request exclusion from the Settlement Class, notice of the proposed Settlement and of the date and time of the final approval hearing should advise the members of the Settlement Class of a method for requesting exclusion from the Settlement Class, the time within which they can make such decision, and the manner in which they can advise the Claims Administrator of their decision to

---

[5]      A recent study by National Economic Research Associates states that in 2008, the median ratio of settlement value to investor losses was 2.7%.

request exclusion.  *See* Fed. R. Civ. P. 23(c)(2)(B).  The Notice annexed to the proposed Notice Order advises the members of the Settlement Class of their right to request exclusion, the consequences of making such a request (*i.e.*, they will not participate in the Settlement, but will retain whatever rights they may have and not be bound by the Settlement's terms and releases), the method by which they can request exclusion, and the deadline by which they must mail their request for exclusion.  In addition, the Summary Notice advises Settlement Class Members of the deadline for exclusion and how to obtain a copy of the Notice.  Providing an opportunity to request exclusion from the Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(c)(2)(B).  Further, the deadlines set in the Notice and Summary Notice will provide members of the Settlement Class with ample time to request exclusion or to object should they wish to do so.

## IV.   THE PROPOSED SETTLEMENT NOTICE SATISFIES RULES 23(D) AND (E) AND DUE PROCESS REQUIREMENTS

Lead Counsel propose that mailed and published notices be given in the form of the Notice and Summary Notice, attached as Exhibits A-1 and A-3 to the Notice Order.  Notice to the Settlement Class in the form and in the manner set forth in the Notice Order will fulfill the requirements of due process, comply with the Federal Rules of Civil Procedure, and inform Settlement Class Members of the Settlement, their right to request exclusion from the Settlement Class, and their opportunity to appear and be heard at the Fairness Hearing.

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).  Lead Plaintiffs propose to give interested parties notice in two ways:  by first-class mail, addressed to all Settlement Class Members who can reasonably be identified and located, and by publication notice in *Investors Business Daily*.  In addition, the Notice and claim form will be posted on the website of the claims administrator.

The form and substance of the notices are also sufficient.  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village*, 361 F.3d at 575

1   (quoting *Mendoza*, 623 F.2d at 1352).  The proposed form of class notice describes in plain English

2   the terms of the Settlement, the considerations that caused Lead Counsel to conclude that the

3   Settlement is fair and adequate, the maximum counsel fees and expenses that will be sought, the

4   procedure for requesting exclusion from the Settlement Class, the procedure for objecting to the

5   Settlement, the procedure for participating in the Settlement, and the date and place of the Fairness

6   Hearing.  The notice will fairly apprise Settlement Class Members of the Settlement and their

7   options with respect thereto, and fully satisfy all due process requirements.

8   **V.    THE COURT SHOULD PRELIMINARILY CERTIFY THE**
       **SETTLEMENT CLASS**

9       At the final approval hearing, the Court will be asked to grant final approval to the Settlement

10  on behalf of a Settlement Class.  For that reason, it is appropriate for the Court to consider, at the

11  preliminary approval stage, whether the certification of a Settlement Class appears to be appropriate.

12  *Jaffe v. Morgan Stanley & Co.*, No. C 06 3903, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008).

13      This action satisfies all the factors for certification of a class and, if the action were

14  proceeding toward trial, class certification would be appropriate.  Certainly, in the context of the

15  proposed Settlement, the provisional certification of a Settlement Class is warranted.  The Ninth

16  Circuit and numerous courts within the Ninth Circuit have held that class actions are generally

17  favored in securities fraud actions.  *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975), *cert.*

18  *denied*, 429 U.S. 816 (1976).  "'[T]he law in the Ninth Circuit is very well established that the

19  requirements of Rule 23 should be liberally construed in favor of class action cases brought under

20  the federal securities laws.'"  *In re THQ, Inc., Sec. Litig.*, No. CV 00-1783, 2002 WL 1832145, at *2

21  (C.D. Cal. Mar. 22, 2002) (quoting *Schneider v. Traweek*, No. CV 88-0905, 1990 WL 132716, at *6

22  (C.D. Cal. July 31, 1990)) (citing *Blackie*, 524 F.2d at 902); *see also Yamner v. Boich*, No. C-92-

23  20597, 1994 WL 514035, at *2 (N.D. Cal. Sept. 15, 1994) (finding that the "Ninth Circuit favors a

24  liberal use of class actions to enforce federal securities laws"); *In re Cirrus Logic Sec.*, 155 F.R.D.

25  654, 656 (N.D. Cal. 1994) (same) (citing *In re Worlds of Wonder Sec. Litig.*, No. C 87 5491, 1990

26  WL 61951, at *1 (N.D. Cal. Mar. 23, 1990)).

27

28

1    Under Fed. R. Civ. P. 23(a), a class may be certified if it is so numerous that joinder of all

2    members is impracticable; there are questions of law and fact common to the class; the claims or

3    defenses of the representative parties are typical of the claims or defenses of the class; and the

4    representative parties will fairly and adequately protect the interests of the class.  In addition, the

5    court must find that at least one of the three conditions of Fed. R. Civ. P. 23(b) are satisfied.  Under

6    subsection (b), the court must find that the prosecution of separate actions would create a risk of

7    inconsistent or varying adjudications or individual adjudications dispositive of the interests of other

8    members not parties to the adjudications; or that the party opposing the class has acted or refused to

9    act on grounds generally applicable to the class; or that the questions of law or fact common to the

10   members of the class predominate over any questions affecting only individual members and that a

11   class action is superior to other available methods for the fair and efficient adjudication of the

12   controversy.  *Id.*; *accord Jaffe*, 2008 WL 346417, at *3.

13   This action clearly satisfies each of the requirements for the certification of a class:  (1) The

14   number of purchasers of Sonic securities during the Settlement Class Period, who will be members

15   of the Settlement Class, numbers in the thousands.  The class members are located in numerous

16   jurisdictions throughout the United States; (2) There are numerous questions of law and fact

17   common to the class.  If the action were to proceed, such common questions would include whether

18   the Defendants engaged in undisclosed options backdating; whether the options backdating affected

19   the disclosures of costs and earnings on Sonic's financial statements; and, whether the disclosure of

20   the options backdating resulted in a decline in the price of Sonic securities.  In the context of the

21   Settlement Class, common questions include whether the proposed settlement is fair, reasonable and

22   adequate; and whether the proposed settlement should be approved.  Moreover, commonality is

23   satisfied if there is one issue common to class members.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

24   1019 (9th Cir. 1998); (3) The claims of the Lead Plaintiffs are typical of the claims of the other

25   members of the Settlement Class.  Like the other Settlement Class Members, the Lead Plaintiffs

26   purchased Sonic securities during the Settlement Class Period, at a time when the options backdating

27   had not been disclosed.  Lead Plaintiffs alleged that the undisclosed options backdating at Sonic had

28   resulted in artificial inflation of the price of the Sonic securities that the Lead Plaintiffs purchased

LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT - C 07-05111-CW          - 13 -

1   and that, upon disclosure of the options backdating, the value of the securities purchased by Lead

2   Plaintiffs declined.  The other members of the Settlement Class were affected in the same way.

3   Similarly, the interest of Lead Plaintiffs in obtaining a fair, reasonable and adequate settlement of the

4   options backdating claims is identical to the interests of the remaining Settlement Class Members.

5   Accordingly, Lead Plaintiffs' claims are typical of those of the Settlement Class; and (4) The Lead

6   Plaintiffs have prosecuted the action, negotiated with Defendants and obtained a proposed

7   Settlement representing a very significant percentage of the losses allegedly suffered by the members

8   of the Settlement Class.  Lead Plaintiffs have also fairly and adequately protected the interests of the

9   Settlement Class.  Lead Plaintiffs retained, and are represented by, highly qualified counsel with vast

10  experience in the prosecution of securities class actions.  Based upon the foregoing, each of the

11  requirements of Rule 23(a) are met.

12          The proposed Settlement Class also satisfies the requirements of Rule 23(b) in that, as

13  described above, the questions of law or fact common to the members of the Settlement Class clearly

14  predominate over questions (if any) affecting only individual members.  Moreover, although the

15  losses sustained by the members of the Settlement Class are significant, in most cases they are not

16  sufficient to make it economical to prosecute separate actions in order to recover losses sustained as

17  a result of the undisclosed options backdating.  Accordingly, a class action is superior to other

18  available methods for the fair and efficient adjudication of the controversy.

19          In addition, the United States Supreme Court noted that the predominance test is readily met

20  in cases alleging securities fraud.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).  Moreover,

21  because the Court is certifying this action for settlement purposes only, it need not determine

22  whether the Settlement Class would be manageable for litigation purposes.  *Id*. at 620.

23          The proposed Settlement Class satisfies each of the requirements for the certification of a

24  class pursuant to Fed. R. Civ. P. 23(a) and (b) and the certification of the Settlement Class is

25  warranted.

26  **VI.     PROPOSED SCHEDULE OF EVENTS**

27          The Settling Parties request permission to provide notice of the settlement to Settlement

28  Class Members at this time.  Lead Counsel have inserted the following proposed schedule into the

LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT - C 07-05111-CW          - 14 -

Notice Order and its exhibits submitted herewith, subject to the Court's availability for a final approval hearing on February 18, 2010.

| | |
|---|---|
| Date by which the Notice is mailed to Settlement Class Members | December 22, 2009 |
| Date by which the Summary Notice must be published | December 23, 2009 |
| Date by which to file motions in support of settlement, Plan of Allocation and attorneys' fees and expenses | January 21, 2010 |
| Last day to request exclusion from the Settlement Class | February 4, 2010 |
| Last day for Settlement Class Members to object to the settlement | February 4, 2010 |
| Date by which reply briefs must be filed | February 11, 2010 |
| Final Approval Hearing | February 18, 2010 |
| Last day for Settlement Class Members to submit a proof of claim form | March 22, 2010 |

This schedule is similar to those used and approved by numerous courts in class action settlements and provides due process to Settlement Class Members with respect to their rights concerning the settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993).

## VII.    CONCLUSION

For the reasons set forth above, Lead Plaintiffs respectfully request that the Court enter the Notice Order: (1) preliminarily approving the Settlement; (2) directing the dissemination of notice to the members of the Settlement Class; (3) setting a date by which objections, if any, to the Settlement, the Plan of Allocation or the application for the award of attorneys' fees and expenses must be served and filed; (4) setting a date by which members of the Settlement Class may request exclusion from the Settlement Class; (5) setting a date by which Settlement Class Members wishing to participate in the Settlement must submit properly completed Proofs of Claim and supporting

1  documents; (6) provisionally certify a Settlement Class; and (7) scheduling a date and time for a

2  hearing to consider whether to grant final judicial approval to the Settlement.

3  DATED:  October 15, 2009                    Respectfully submitted,

4                                              COUGHLIN STOIA GELLER
                                                 RUDMAN & ROBBINS LLP
5                                              SHAWN A. WILLIAMS
                                               CHRISTOPHER M. WOOD
6                                              100 Pine Street, 26th Floor
                                               San Francisco, CA  94111
7                                              Telephone:  415/288-4545
                                               415/288-4534 (fax)
8
                                               COUGHLIN STOIA GELLER
9                                                 RUDMAN & ROBBINS LLP
                                               JOY ANN BULL
10

11                                                         s/ Joy Ann Bull
12                                                       JOY ANN BULL

13                                             655 West Broadway, Suite 1900
                                               San Diego, CA  92101-3301
14                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)
15
                                               LABATON SUCHAROW LLP
16                                             CHRISTOPHER J. KELLER
                                               JONATHAN GARDNER
17                                             140 Broadway, 34th Floor
                                               New York, NY  10005
18                                             Telephone:  212/907-0700
                                               212/818-0477 (fax)
19
                                               Co-Lead Counsel for Plaintiffs
20
                                               VANOVERBEKE MICHAUD
21                                                 & TIMMONY, P.C.
                                               MICHAEL J. VANOVERBEKE
22                                             THOMAS C. MICHAUD
                                               79 Alfred Street
23                                             Detroit, MI  48201
                                               Telephone:  313/578-1200
24                                             313/578-1201 (fax)

25                                             Additional Counsel for Plaintiffs

26  S:\Settlement\Sonic Solutions.set\BRIEF PRELIM APPROVAL 00062350.doc

27

28

LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT - C 07-05111-CW        - 16 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following Designated Internet Site at:  http://securities.stanford.edu.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 15, 2009.

  s/ JOY ANN BULL
JOY ANN BULL

COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:joyb@csgrr.com

# Mailing Information for a Case 4:07-cv-05111-CW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Sara B. Brody**
  sbrody@sidley.com,tberninzoni@sidley.com,cecilia.chan@sidley.com,ahassid@sidley.com,cthom

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Cecilia Y. Chan**
  cecilia.chan@sidley.com,dgiusti@sidley.com

- **Jonathan Gardner**
  jgardner@labaton.com

- **John K. Grant**
  johnkg@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.c

- **Monica Patel**
  monica.patel@hellerehrman.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Carol Lynn Thompson**
  cthompson@sidley.com,tnewman@sidley.com

- **Shawn A. Williams**
  shawnw@csgrr.com,jdecena@csgrr.com,travisd@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.c

- **Christopher Martin Wood**
  cwood@csgrr.com,aserros@csgrr.com,jdecena@csgrr.com,khuang@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine J Kowalewski
Lerach Coughlin et al LLP
655 W Broadway #1900
San Diego, CA 92101

Brian Penny
Labaton Sucharow LLP
140 Broadway
```

New York, NY 10005

**David C. Walton**
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101-3301