1 | COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2 | SHAWN A. WILLIAMS (213113)
    CHRISTOPHER M. WOOD (254908)
3 | 100 Pine Street, Suite 2600
    San Francisco, CA  94111
4 | Telephone: 415/288-4545
    415/288-4534 (fax)
5 | shawnw@csgrr.com
    cwood@csgrr.com
6 |
    COUGHLIN STOIA GELLER
7 |    RUDMAN & ROBBINS LLP
    JOY ANN BULL
8 | 655 West Broadway, Suite 1900
    San Diego, CA  92101-3301
9 | Telephone: 619/231-1058
    619/231-7423 (fax)
10 | joyb@csgrr.com

11 | LABATON SUCHAROW LLP
    CHRISTOPHER J. KELLER
12 | JONATHAN GARDNER
    140 Broadway, 34th Floor
13 | New York, NY  10005
    Telephone: 212/907-0700
14 | 212/818-0477 (fax)
    ckeller@labaton.com
15 | jgardner@labaton.com

16 | Co-Lead Counsel for Plaintiffs

17 | [Additional counsel appear on signature page.]

18 | UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF CALIFORNIA

19 |

| 20 | CITY OF WESTLAND POLICE AND FIRE RETIREMENT SYSTEM and PLYMOUTH COUNTY RETIREMENT SYSTEM, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) ) ) | No. C 07-05111-CW |
| 21 | | | CLASS ACTION |
| 22 | | ) ) ) | NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION |
| 23 | Plaintiffs, | ) ) ) | SETTLEMENT AND THE PLAN OF ALLOCATION OF SETTLEMENT |
| 24 | vs. | ) ) ) | PROCEEDS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT |
| 25 | SONIC SOLUTIONS, et al., | ) ) ) | THEREOF |
| 26 | Defendants. | ) ) ) | DATE:      April 8, 2010 TIME:      2:00 p.m. |
| 27 | | | COURTROOM:  The Honorable Claudia Wilken |

**TABLE OF CONTENTS**

Page

I.      SUMMARY OF ARGUMENT ................................................................................1

II.     THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
        SETTLEMENTS...............................................................................................3

III.    THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR
        APPROVAL ....................................................................................................5

        A.      The Parties Could Identify the Strengths and Weaknesses of Their Cases ............5

        B.      The Settlement Appropriately Balances the Risks of Litigation and the
                Benefit to the Settlement Class of a Certain Recovery...........................................5

                1.      Continued Litigation Posed Substantial Risks in Establishing
                        Liability...................................................................................6

                2.      Continued Litigation Posed Substantial Risks in Proving Damages ...........7

                3.      Balancing the Certainty of an Immediate Recovery Against the
                        Expense and Likely Duration of Protracted Litigation and Trial
                        Favors Settlement.....................................................................10

        C.      The Recommendations of Experienced Counsel Heavily Favor Approval
                of the Settlement ...............................................................................11

        D.      Reaction of the Settlement Class Supports Approval of the Settlement................12

IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE
        AND SHOULD BE APPROVED BY THE COURT .......................................................12

V.      CONCLUSION.................................................................................13

**TABLE OF AUTHORITIES**

Page

CASES

*AUSA Life Ins. Co. v. Ernst & Young,*
    39 Fed. Appx. 667 (2d Cir. 2002) ............................................................................... 10

*Backman v. Polaroid Corp.,*
    910 F.2d 10 (1st Cir. 1990) ........................................................................................ 10

*Beecher v. Able,*
    575 F.2d 1010 (2d Cir. 1978) ..................................................................................... 12

*Behrens v. Wometco Enters., Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) .............................. 8

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979) .................................................................... 4, 5, 10, 12

*Bullock v. Adm'r of Estate of Kircher,*
    84 F.R.D. 1 (D.N.J. 1979) .......................................................................................... 10

*Chatelain v. Prudential-Bache Sec.,*
    805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................................ 8

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ......................................................................................... 9

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005) ................................................................................................... 8

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ......................... 4, 5, 11

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976) ................................................................................................... 6

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
    630 F. Supp. 482 (E.D. Pa. 1985) ............................................................................... 11

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) .................................................................................... 5, 10

*Hughes v. Microsoft Corp.,*
    No. C98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ................. 4, 5

*In re "Agent Orange" Prod. Liab. Litig.,*
    611 F. Supp. 1396 (E.D.N.Y. 1985) ............................................................................ 13

**Page**

*In re Am. Bank Note Holographics,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................12

*In re Apple Computer Sec. Litig.,*
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991) ........................................................................9

*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) ..................................................................12

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981)), *aff'd in part and rev'd in part on other*
    *grounds*, 818 F.2d 179 (2d Cir. 1987) ....................................................13

*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000)................................................................6

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ..............................................................5, 13

*In re Mfrs. Life Ins. Co. Premium Litig.,* MDL No. 1109,
    1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 21, 1998)....................9, 12

*In re Pac. Enters. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) ..................................................................3, 4

*In re PaineWebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)................5

*In re Silicon Graphics Sec. Litig.,*
    183 F.3d 970 (9th Cir. 1999) ..................................................................6

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..................... *passim*

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.*
    *Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................3, 12

*Lewis v. Newman,*
    59 F.R.D. 525 (S.D.N.Y. 1973) ..............................................................6

*Malchman v. Davis,*
    761 F.2d 893 (2d Cir. 1985)....................................................................5

**Page**

*Marshall v. Holiday Magic, Inc.,*
    550 F.2d 1173 (9th Cir. 1977) ................................................................. 3

*Milstein v. Huck,*
    600 F. Supp. 254 (E.D.N.Y. 1984) ......................................................... 10

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.,*
    797 F.2d 799 (9th Cir. 1986) ................................................................. 3

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 6, 12

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ................................................................. 2

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ..................................................... *passim*

*Petrovic v. AMOCO Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ............................................................. 13

*Republic Nat'l Life Ins. Co. v. Beasley,*
    73 F.R.D. 658 (S.D.N.Y. 1977) ............................................................. 6

*Robbins v. Koger Props., Inc.,*
    116 F.3d 1441 (11th Cir. 1997) ........................................................... 10

*S.C. Nat'l Bank v. Stone,*
    749 F. Supp. 1419 (D.S.C. 1990) ....................................................... 13

*Sirota v. Solitron Devices, Inc.,*
    673 F.2d 566 (2d Cir. 1982) ................................................................. 8

*Steinberg v. Carey,*
    470 F. Supp. 471 (S.D.N.Y. 1979) ....................................................... 2

*Stoetzner v. U.S. Steel Corp.,*
    897 F.2d 115 (3d Cir. 1990) ............................................................... 12

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ............................................................ 3, 4

*TSC Indus. v. Northway, Inc.,*
    426 U.S. 438 (1976) ............................................................................. 6

**Page**

*Util. Reform Project v. Bonneville Power Admin.,*
        869 F.2d 437 (9th Cir. 1989) ....................................................................3

*Van Bronkhorst v. Safeco Corp.,*
        529 F.2d 943 (9th Cir. 1976) ....................................................................3

*Weinberger v. Kendrick,*
        698 F.2d 61 (2d Cir. 1982)................................................................3, 5, 13

*White v. NFL,*
        822 F. Supp. 1389 (D. Minn. 1993)..........................................................12

*Williams v. First Nat'l Bank,*
        216 U.S. 582 (1910)....................................................................................3

*Winkler v. NRD Mining, Ltd.,*
        198 F.R.D. 355 (E.D.N.Y.), *aff'd sub nom. Winkler v. Wigley,*
        242 F.3d 369 (2d Cir. 2000)......................................................................10

*Young v. Katz,*
        447 F.2d 431 (5th Cir. 1971) ....................................................................10


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
        §78j(b)................................................................................................6, 7, 8

Federal Rules of Civil Procedure
        Rule 23 ..............................................................................................2, 12
        Rule 23(e)............................................................................................2, 3


**SECONDARY AUTHORITIES**

*Manual for Complex Litigation* (3d ed. 1995)
        §30.42......................................................................................................5

1  TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2         PLEASE TAKE NOTICE that, pursuant to an Order of the Court filed December 2, 2009, on

3  April 8, 2010, at 2:00 p.m., or as soon thereafter as counsel may be heard, at the United States

4  Courthouse, 1301 Clay Street, Oakland, California, before the Honorable Claudia Wilken, United

5  States District Judge, Lead Plaintiffs will and hereby move for approval of the Settlement and the

6  Plan of Allocation of settlement proceeds.   Lead Plaintiffs' motion is based on the attached

7  Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement and

8  the Plan of Allocation of Settlement Proceeds, the Joint Declaration of Shawn A. Williams and

9  Jonathan Gardner in Support of Final Approval of Class Action Settlement, Plan of Allocation of

10  Settlement Proceeds, and Award of Attorneys' Fees and Expenses ("Joint Declaration"), the

11  Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class

12  Action and the Proof of Claim and Release Form, and B) Publication of the Summary Notice

13  ("Sylvester Declaration"), the Stipulation of Settlement dated as of October 12, 2009, all other

14  pleadings and matters of record, and such additional evidence or argument as may be presented at

15  the hearing.

16                    **MEMORANDUM OF POINTS AND AUTHORITIES**

17  **I.      SUMMARY OF ARGUMENT**

18         Lead Plaintiffs respectfully submit this memorandum of points and authorities in support of

19  their motion for final approval of the proposed settlement of this class action for cash consideration

20  of $5,000,000.   The compromise reached is the result of arm's-length and mediator-assisted

21  negotiations, and, in Lead Counsel's view, reflects a fair resolution of the parties' respective claims

22  and defenses.

23         This Litigation began in October 2007, with the filing of class action complaints asserting

24  that Defendants violated federal securities laws by issuing false and misleading statements about

25  Sonic Solutions ("Sonic") during the Settlement Class Period.   Lead Plaintiffs contended that

26  Defendants falsified Sonic's financial statements and concealed the backdating of stock option

27  grants to Sonic employees. Lead Plaintiffs alleged that Defendants' actions resulted in the inflation

28  of the price of Sonic securities during the Settlement Class Period and that the Settlement Class

1  suffered financial harm. An overview of Lead Plaintiffs' claims and the history of the litigation

2  leading to this Settlement are detailed in the Joint Declaration, filed herewith. The Court is

3  respectfully referred to the Joint Declaration for a detailed discussion of the factual and procedural

4  history of the Litigation.

5         Pursuant to an Order of the Court filed December 2, 2009, the Notice of Proposed Settlement

6  of Class Action (the "Notice") was mailed to over 50,000 potential Settlement Class Members

7  beginning on December 10, 2009. In addition, a summary notice was published in *Investor's*

8  *Business Daily* on December 18, 2009.[1] The last day to file objections to any aspect of the

9  settlement will be February 4, 2010. As of the date of this filing, Lead Counsel are not aware of any

10 objections to the Settlement or to the Plan of Allocation. Lead Counsel will address any objections

11 received in a reply brief.

12        Federal Rule of Civil Procedure 23(e) requires the settlement to be fair, adequate, and

13 reasonable. The factors analyzed in this Circuit to determine the fairness of a class action settlement

14 are set forth in *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and are

15 discussed in detail below. In sum, Lead Counsel firmly believe that this Settlement is fair,

16 reasonable and adequate based on their extensive investigation, interviews with potential witnesses,

17 consultation with expert consultants, the amount obtained in settlement versus the risk of obtaining a

18 larger judgment at trial, the certainty of a recovery versus the risks of no recovery at trial, past

19 experience in other class actions, and the serious disputes between the parties concerning damages

20 and liability. Thus, Lead Counsel recommend that the Settlement be approved by this Court.[2]

21

22

23

24

---

25 [1]    *See* paragraphs 3 through 11 of the Sylvester Declaration, filed herewith.

26 [2]    In reviewing this settlement under Rule 23, the Court is not required to substitute its business

27 judgment for that of these counsel, *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979); the settlement should be approved if it is within a "range of reasonableness," *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

28

## II.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation. "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[3]

In approving a proposed settlement of a class action under Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is "fair, adequate and reasonable."[4] The Ninth Circuit has provided a list of factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted). *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).

---

[3]     The law always favors the compromise of disputed claims, *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986); including those asserted in stockholder class actions, *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

[4]     *Pac. Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. However, a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *21 (W.D. Wash. Mar. 26, 2001). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the Court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id.* (emphasis in original). As explained below and in the Joint Declaration, application of these criteria shows that this Settlement warrants the Court's approval.

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arm's-length negotiations, including two separate mediations. *Hughes*, 2001 U.S. Dist. LEXIS 5976, at *17 (citing *Pac. Enters.*, 47 F.3d at 378) (finding mediator's involvement supports settlement approval). Finally, it is the considered judgment of counsel for the parties that this Settlement is a

fair, reasonable, and adequate resolution of the Litigation. *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21; *Manual for Complex Litigation* §30.42 (3d ed. 1995).[5]

## III. THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL

### A. The Parties Could Identify the Strengths and Weaknesses of Their Cases

The stage of the proceedings and the amount of discovery completed is one of the factors that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Weinberger*, 698 F.2d at 74; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-17.

Lead Counsel conducted informal investigations, including interviews of potential witnesses, worked with consultants, and researched the law regarding the claims and defenses asserted. The parties also participated in mediation sessions with the Honorable Howard B. Wiener (Ret.) and the Honorable Layn R. Phillips (Ret.), where each side's claims and defenses were thoroughly explored. As a result, Lead Counsel have a comprehensive understanding of the strengths and weaknesses of the case and have sufficient information to make an informed decision regarding the fairness of the Settlement before presenting it to the Court. *See Mego Fin.*, 213 F.3d at 459 (finding parties could identify strengths and weaknesses of claims without formal discovery).

### B. The Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Settlement Class of a Certain Recovery

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Settlement Class Members and the immediacy and certainty of a substantial recovery. *Mego Fin.*, 213 F.3d at 458; *Girsh*, 521 F.2d at 157; *Boyd*, 485 F. Supp. at 616-17; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). In other words, "'[t]he Court

---

[5]    *Accord Malchman v. Davis*, 761 F.2d 893, 903 (2d Cir. 1985); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

1   shall consider the vagaries of litigation and compare the significance of immediate recovery by way

2   of the compromise to the mere possibility of relief in the future, after protracted and expensive

3   litigation. In this respect, "[i]t has been held proper to take the bird in hand instead of a prospective

4   flock in the bush.""" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.

5   Cal. 2004) (citations omitted).

6        In the context of approving class action settlements, courts attempting to balance these

7   factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain."

8   *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v.*

9   *Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977). This is even more so today, in this post-Private Securities

10  Litigation Reform Act of 1995 ("PSLRA") environment, amid defendants' constant attempts to push

11  the envelope and contours of the PSLRA. *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194

12  (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the

13  wake of the PSLRA"). In particular, the Ninth Circuit's decisions in *In re Silicon Graphics Sec.*

14  *Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) and its progeny have interpreted the PSLRA's heightened

15  pleading standards in an expansive manner and have established what is commonly accepted to be

16  the most stringent standards of any circuit to pleading a successful §10(b) claim.

17       Here, a balance of these factors weighs heavily in support of approval of the Settlement and

18  unquestionably outweighs another distinct possibility – no recovery for the Settlement Class.

19       **1.    Continued Litigation Posed Substantial Risks in Establishing**
             **Liability**
20

21       In order to prevail on their §10(b) claims at trial, Lead Plaintiffs would have had the burden

22  of establishing the liability of Defendants to the satisfaction of the jury and the Court. Lead

    Plaintiffs would have had to prove, *inter alia*, that the alleged misstatements were material, *TSC*
23
    *Indus. v. Northway, Inc.*, 426 U.S. 438 (1976), and made with scienter (actual knowledge or reckless
24
    disregard for the truth), *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976). Accordingly, in order to
25
    prevail on the §10(b) claims, Lead Plaintiffs would have had to prove Defendants participated in the
26
    public dissemination of misleading information, that the information was material to investors in
27
    determining whether to purchase Sonic securities, that the information materially affected the price
28

1    of Sonic securities, and that Defendants withheld information either with actual intent to deceive,

2    manipulate, or defraud, or that Defendants recklessly disregarded these facts and their consequences.

3        Here, there was a significant risk that the Court would again dismiss the §10(b) claims for

4    failure to adequately plead scienter.  Other courts have found that the applicable accounting

5    standards were not clear, which could support a conclusion that there was no intentional failure to

6    use the proper accounting treatment and thus no evidence of scienter.

7        Assuming the §10b claims were upheld, a class was certified and survived summary

8    judgment, the risks of establishing liability posed by the conflicting testimony and evidence at trial

9    would be exacerbated by the unpredictability of a lengthy and complex jury trial; the risk that the

10   jury would find that the asserted misrepresentations were not material; and the risk that the jury

11   would find that Defendants reasonably believed in the appropriateness of their actions at the time

12   and that Lead Plaintiffs failed to prove that Defendants acted with the requisite scienter.  Lead

13   Plaintiffs' burden to prove scienter at trial cannot be underestimated.  Proof of scienter for each

14   defendant is complex and involves exploration of the individual's state of mind.  Lead Plaintiffs

15   would need to prove what each Individual Defendant knew about the alleged wrongdoing and at

16   what point in time they had or should have had such knowledge.

17       Although Lead Plaintiffs believe their securities claims are meritorious and fully supported

18   by the evidence obtained to date, further litigation to establish liability posed a potential threat to any

19   recovery.

20               **2.    Continued Litigation Posed Substantial Risks in Proving
                         Damages**

21
22       Lead Counsel are mindful that if they were able to overcome the obstacles to establishing

     liability at trial, they would still face the additional risks of proving loss causation and damages.
23
     Lead Counsel believe that if they continued to trial they would be able to establish damages
24
     significantly higher than the settlement amount.  However, this assumes that Lead Plaintiffs prevail
25
     on the damage issues presented in this case.  The Court dismissed Lead Plaintiffs' §10(b) and control
26
     person claims and those claims gave rise to all but a small percentage of the damages estimated by
27
     Lead Plaintiffs' damages consultant.  There was substantial disagreement whether the Court would
28

1  sustain their §10(b) claims in connection with a motion to dismiss the complaint, or whether the

2  Court would dismiss them for a second time.

3  In addition, the United States Supreme Court has confirmed that the law requires that "a

4  plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately

5  caused the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). At

6  trial, Defendants' experts would likely contend that all of the losses experienced by the Settlement

7  Class were due to factors completely unrelated to any alleged misconduct of Defendants related to

8  backdating of options, thereby eliminating any potential recovery.

9  Moreover, expert testimony is necessary in order to fix the amount – and indeed the existence

10  – of actual damages. *See, e.g., Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 576-78 (2d Cir. 1982).

11  Such an expert evaluation is based not only on stock price history but on other more elusive factors,

12  including corporate asset value, cash flow, income and growth prospects for the future, industry and

13  economic trends, the quality of management, the nature and amount of liabilities, and many other

14  variables. At trial, Lead Plaintiffs would likely have faced a motion *in limine* by Defendants to

15  preclude their damage expert's testimony under the *Daubert* test and risked a decision that the

16  expert's valuation model might not be admissible in evidence.

17  If Lead Plaintiffs survived the *Daubert* motion, the loss causation analysis and damage

18  valuations of Lead Plaintiffs' and Defendants' experts would vary substantially. In the "battle of

19  experts," it is impossible to predict with any certainty which arguments would find favor with the

20  jury. *See Warner Commc'ns*, 618 F. Supp. at 744-45 (approving settlement where "it is virtually

21  impossible to predict with any certainty which testimony would be credited, and ultimately, which

22  damages would be found to have been caused by actionable, rather than the myriad nonactionable

23  factors such as general market conditions"); *see also Chatelain v. Prudential-Bache Sec.*, 805 F.

24  Supp. 209, 214 (S.D.N.Y. 1992); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla.

25  1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Thus, even if the Settlement Class prevailed in

26  establishing liability, significant additional risks would remain in establishing the existence of

27  damages.

28

NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF
ALLOCATION OF PROCEEDS AND MEMO IN SUPPORT THEREOF - C 07-05111-CW          - 8 -

1    While Lead Plaintiffs contend that the aggregate damages that could be established at trial

2    would be as high as $62 million, such result assumes that ***all significant liability and damage issues***

3    ***would have been resolved in favor of the Settlement Class***.[6] Setting aside the possibility that actual

4    provable damages could ultimately have been a small fraction of Lead Plaintiffs' preliminary

5    damage analysis, courts routinely approve settlements providing recoveries representing a

6    percentage of the potential recovery. "It is well-settled law that a cash settlement amounting to only

7    a fraction of the potential recovery will not ***per se*** render the settlement inadequate or unfair."

8    *Officers for Justice*, 688 F.2d at 628 (emphasis in original). The Second Circuit has observed:

9            The fact that a proposed settlement may only amount to a fraction of the
         potential recovery does not, in and of itself, mean that the proposed settlement is
10        grossly inadequate and should be disapproved.

11                                    * * *

12           ***In fact there is no reason, at least in theory, why a satisfactory settlement***
         ***could not amount to a hundredth or even a thousandth part of a single percent of***
13       ***the potential recovery.***

14   *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) (emphasis added).

15           In summary, although Lead Counsel believe that the case is meritorious, their experience has

16   taught them how the risks discussed above can render the outcome of a trial extremely uncertain.

17   *See In re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *17

18   (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome for plaintiffs at summary

19   judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent

20   – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no

21   recovery in future proceedings"). Moreover, even if Lead Plaintiffs were to prevail at trial, risks to

22   the Settlement Class remain. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-

23   JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), a case litigated and tried in this district,

24   the jury rendered a verdict for plaintiffs after an extended trial. Based upon the jury's findings,

25   recoverable damages would have exceeded $100 million. However, the court overturned the verdict,

26   _____

27   [6]     Lead Plaintiffs would have faced a significant challenge to prove any sizeable damages on
     the remaining §14(a) claim.

28

1  entering judgment n.o.v. for the individual defendants, and ordered a new trial with respect to the

2  corporate defendant.  In another case, the class won a jury verdict and a motion for j.n.o.v. was

3  denied, but on appeal the judgment was reversed and the case dismissed.  *Backman v. Polaroid*

4  *Corp.*, 910 F.2d 10 (1st Cir. 1990).  *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449

5  (11th Cir. 1997) (reversing on appeal $81 million jury verdict and dismissing securities action with

6  prejudice); *AUSA Life Ins. Co. v. Ernst & Young*, 39 Fed. Appx. 667 (2d Cir. 2002) (affirming

7  district court's dismissal after a full bench trial and earlier appeal and remand); *Winkler v. NRD*

8  *Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.) (granting defendants' motion for judgment as a matter of

9  law after jury verdict for plaintiffs), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000).

10  Therefore, careful consideration of the above risks supports approval of the Settlement as fair,

11  adequate, and reasonable.

12          **3.     Balancing the Certainty of an Immediate Recovery Against the**
               **Expense and Likely Duration of Protracted Litigation and**
13             **Trial Favors Settlement**

14          The immediacy and certainty of a recovery is a factor for the Court to balance in determining

15  whether the proposed settlement is fair, adequate, and reasonable.  *E.g.*, *Girsh*, 521 F.2d at 157.

16  Courts consistently have held that "[t]he expense and possible duration of the litigation should be

17  considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254,

18  267 (E.D.N.Y. 1984); *Officers for Justice*, 688 F.2d at 626; *Boyd*, 485 F. Supp. at 616-17; *Bullock v.*

19  *Adm'r of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979).  Therefore, the benefit of the present

20  Settlement must also be balanced against the expense of achieving a more favorable result at trial.

21  *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

22          Approval of the Settlement will mean a present recovery for eligible claimants.  If not for this

23  Settlement, the case would have continued through discovery, summary judgment, trial, and likely

24  appeal.  A trial would have occupied a number of attorneys for many weeks and would have required

25  substantial and costly expert testimony on both sides.  Moreover, a judgment favorable to the

26  Settlement Class, in light of the contested nature of virtually every aspect of this case, would

27  unquestionably be the subject of post-trial motions and further appeals, which could prolong the case

28  for several more years.  *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 745 (delay from appeals is a

NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF
ALLOCATION OF PROCEEDS AND MEMO IN SUPPORT THEREOF - C 07-05111-CW          - 10 -

1   factor to be considered). Therefore, delay, not just at the trial stage, but through post-trial motions

2   and the appellate process as well, could force Settlement Class Members to wait many more years

3   for any recovery, further reducing its value. Accordingly, settlement of this Litigation will ensure a

4   recovery, and eliminate the risk of no recovery at all. Therefore, it is in the best interest of the

5   Settlement Class.

6            As the Ninth Circuit has made clear, the very essence of a settlement agreement is

7   compromise, "'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*,

8   688 F.2d at 624 (citation omitted).

9            "Naturally, the agreement reached normally embodies a compromise; in exchange
             for the saving of cost and elimination of risk, the parties each give up something they
10           might have won had they proceeded with litigation. . . ."

11  *Id.* (citation omitted); *Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to undergo the

12  uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of

13  their demands). Accordingly, the fact that the Settlement Class potentially could have achieved a

14  greater recovery after trial does not preclude the Court from finding that the Settlement is within a

15  "range of reasonableness" that is appropriate for approval. *E.g., Warner Commc'ns*, 618 F. Supp. at

16  745.

17  **C.      The Recommendations of Experienced Counsel Heavily Favor
             Approval of the Settlement**
18
     Experienced counsel, negotiating at arm's length, have weighed the factors discussed above
19
    and endorse the Settlement. As courts have stated, the view of the attorneys actively conducting the
20
    litigation, while not conclusive, "is entitled to significant weight." *Fisher Bros. v. Cambridge-Lee*
21
    *Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced
22
    counsel involved in the case approved the settlement after hard-fought negotiations is entitled to
23
    considerable weight").
24
             This action has been litigated and settled by experienced and competent counsel on both
25
    sides of the case. Lead Counsel are well known for their experience and success in complex and
26
    class action litigation. That such qualified and well-informed counsel endorse the Settlement as
27

28

NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF
ALLOCATION OF PROCEEDS AND MEMO IN SUPPORT THEREOF - C 07-05111-CW          - 11 -

1  being fair, reasonable, and adequate to the Settlement Class heavily favors this Court's approval of

2  the Settlement.

3          **D.      Reaction of the Settlement Class Supports Approval of the Settlement**

4          Notices of the Settlement were sent to over 50,000 potential Settlement Class Members and a

5  summary notice was published in *Investor's Business Daily* on December 18, 2009.  The time period

6  for objecting to the Settlement will expire on February 4, 2010.  To date, no objections to the

7  Settlement have been filed.

8          Moreover, in the event objections are received, courts routinely approve settlements if they

9  otherwise meet the fairness requirements. *See, e.g.*, *Mfrs. Life*, 1998 U.S. Dist. LEXIS 23217, at *24

10  ("[A] minuscule number of objectors is another factor favoring approval."); *Boyd*, 485 F. Supp. at

11  624 (adequacy of settlement "persuasive" when 16% of class objected); *Stoetzner v. U.S. Steel*

12  *Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (fact only 10% of class objected "strongly favors

13  settlement"); *Nat'l Rural*, 221 F.R.D. at 529 (absence of large number of objections raises a strong

14  presumption settlement is fair to class).

15  **IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND**
    **        ADEQUATE AND SHOULD BE APPROVED BY THE COURT**
16
        Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of
17
    the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the
18
    settlement as a whole – the plan must be fair, reasonable, and adequate. *Class Plaintiffs v. Seattle*,
19
    955 F.2d 1268, 1284 (9th Cir. 1992).  An allocation formula need only have a reasonable basis,
20
    particularly if recommended by experienced class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-
21
    24 (D. Minn. 1993); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y.
22
    2001).
23
        District courts enjoy "broad supervisory powers over the administration of class-action
24
    settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v.*
25
    *Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669
26
    F.2d 228, 238 (5th Cir. 1982).  Numerous courts have approved distribution plans that allocate the
27
    settlement proceeds according to the relative strengths and weaknesses of the various claims. *See*
28

NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF
ALLOCATION OF PROCEEDS AND MEMO IN SUPPORT THEREOF - C 07-05111-CW          - 12 -

1   *Warner Commc'ns*, 618 F. Supp. at 745; *Weinberger*, 698 F.2d at 78. Thus, "if one set of claims had

2   a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh

3   'distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set' that was more

4   likely to succeed." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1411 (E.D.N.Y.

5   1985) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981)), *aff'd*

6   *in part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987). Moreover, there is no

7   requirement that a settlement must benefit all class members equally. *See Mego Fin.*, 213 F.3d at

8   461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan

9   where class members received different levels of compensation and finding that no subgroup was

10   treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving

11   settlement where some class members did not share in recovery).

12        The decisions cited above acknowledge that the goal of a distribution plan is fairness to the

13   class as a whole, taking into consideration the strength of claims based on available evidence. In

14   order to develop a fair distribution plan, Lead Counsel, in conjunction with a damages consultant,

15   drafted a Plan of Allocation that will result in a fair distribution of the available settlement proceeds.

16   Lead Counsel discussed their theories of liability and damages with their damages consultant, who

17   used this information along with available economic evidence to develop the plan currently before

18   the Court for approval. Lead Counsel maintain the Plan of Allocation will equitably apportion the

19   net settlement proceeds among all eligible Settlement Class Members using the principles set forth in

20   the case law cited above and should be approved.

21   **V.**     **CONCLUSION**

22        This Settlement is fair, given the presence of skilled counsel for all parties, the complexity of

23   the facts at issue, further substantial expense if this Litigation were to continue to trial, the risks

24   attendant to prevailing on summary judgment, trial, and subsequent appeals, the present benefit of

25   the Settlement to Settlement Class Members, and the arm's-length settlement negotiations.

26   Therefore, for the reasons discussed herein and in the Joint Declaration, Lead Plaintiffs respectfully

27   request this Court to approve the settlement of this Litigation and the Plan of Allocation as fair,

28   reasonable and adequate.

DATED: January 21, 2010

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
CHRISTOPHER M. WOOD
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone: 415/288-4545
415/288-4534 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOY ANN BULL

                        s/ Joy Ann Bull
_____
                        JOY ANN BULL

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

LABATON SUCHAROW LLP
CHRISTOPHER J. KELLER
JONATHAN GARDNER
140 Broadway, 34th Floor
New York, NY  10005
Telephone: 212/907-0700
212/818-0477 (fax)

Co-Lead Counsel for Plaintiffs

VANOVERBEKE MICHAUD
  & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone: 313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiffs

S:\Settlement\Sonic Solutions.set\BRIEF ALLOCATION.doc

1
<u>CERTIFICATE OF SERVICE</u>

2    I hereby certify that on January 21, 2010, I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4 addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5 mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6 participants indicated on the attached Manual Notice List.

7    I further certify that I caused this document to be forwarded to the following Designated

8 Internet Site at: http://securities.stanford.edu.

9    I certify under penalty of perjury under the laws of the United States of America that the

10 foregoing is true and correct. Executed on January 21, 2010.

11
                                  s/ Joy Ann Bull
12                                JOY ANN BULL

13
                                COUGHLIN STOIA GELLER
14                                 RUDMAN & ROBBINS LLP
                                655 West Broadway, Suite 1900
15                              San Diego, CA  92101-3301
                                Telephone:  619/231-1058
16                              619/231-7423 (fax)
                                E-mail:joyb@csgrr.com
17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 4:07-cv-05111-CW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Sara B. Brody**
  sbrody@sidley.com,tberninzoni@sidley.com,cecilia.chan@sidley.com,cthompson@sidley.com,tn

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Cecilia Y. Chan**
  cecilia.chan@sidley.com,dgiusti@sidley.com

- **Jonathan Gardner**
  jgardner@labaton.com

- **John K. Grant**
  johnkg@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.

- **Monica Patel**
  monica.patel@hellerehrman.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Carol Lynn Thompson**
  cthompson@sidley.com,eleiva@sidley.com

- **Shawn A. Williams**
  shawnw@csgrr.com,jdecena@csgrr.com,travisd@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.

- **Christopher Martin Wood**
  cwood@csgrr.com,aserros@csgrr.com,jdecena@csgrr.com,khuang@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine J Kowalewski
Lerach Coughlin et al LLP
655 W Broadway #1900
San Diego, CA 92101

Brian Penny
Labaton Sucharow LLP
140 Broadway
```

New York, NY 10005

**David C. Walton**
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101-3301