1   COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
2   SHAWN A. WILLIAMS (213113)
    CHRISTOPHER M. WOOD (254908)
3   100 Pine Street, Suite 2600
    San Francisco, CA  94111
4   Telephone: 415/288-4545
    415/288-4534 (fax)
5   shawnw@csgrr.com
    cwood@csgrr.com
6
    COUGHLIN STOIA GELLER
7      RUDMAN & ROBBINS LLP
    JOY ANN BULL
8   655 West Broadway, Suite 1900
    San Diego, CA  92101-3301
9   Telephone: 619/231-1058
    619/231-7423 (fax)
10  joyb@csgrr.com

11  LABATON SUCHAROW LLP
    CHRISTOPHER J. KELLER
12  JONATHAN GARDNER
    140 Broadway, 34th Floor
13  New York, NY  10005
    Telephone: 212/907-0700
14  212/818-0477 (fax)
    ckeller@labaton.com
15  jgardner@labaton.com

16  Co-Lead Counsel for Plaintiffs

17  [Additional counsel appear on signature page.]

18              UNITED STATES DISTRICT COURT

19            NORTHERN DISTRICT OF CALIFORNIA

20  CITY OF WESTLAND POLICE AND FIRE   )  No. C 07-05111-CW
    RETIREMENT SYSTEM and PLYMOUTH     )
21  COUNTY RETIREMENT SYSTEM, On       )  CLASS ACTION
    Behalf of Themselves and All Others Similarly )
22  Situated,                          )  LEAD COUNSEL'S NOTICE OF MOTION
                                       )  AND MOTION FOR AN AWARD OF
23                       Plaintiffs,   )  ATTORNEYS' FEES AND EXPENSES AND
                                       )  MEMORANDUM OF POINTS AND
24      vs.                            )  AUTHORITIES IN SUPPORT THEREOF
                                       )
25  SONIC SOLUTIONS, et al.,           )  DATE:      April 8, 2010
                                       )  TIME:      2:00 p.m.
26                       Defendants.   )  COURTROOM:  The Honorable
                                       )              Claudia Wilken
27  _____)

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION...........................2

III. AWARD OF ATTORNEYS' FEES .............................................................................3

    A. The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award .........................................................3

        1. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases .............................................................................................3

        2. A Fee of 25% of the Fund Created Is Reasonable ...................................6

    B. Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies a Fee Award of 25% in This Case .....................................................6

        1. The Result Achieved....................................................................................6

        2. The Risks of Litigation ...............................................................................7

        3. The Skill Required and the Quality of the Work ........................................8

        4. The Novelty and Difficulty of the Questions Presented .............................9

        5. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel ..........................................................................10

        6. A 25% Fee Award Is Below the Average Fee Awarded in Similar Complex Class Action Litigation.............................................................11

        7. The Customary Fee ...................................................................................14

        8. Reaction of the Settlement Class Supports Approval of the Attorneys' Fees Requested .......................................................................15

IV. THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK ....................................................................................................................15

V. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................17

VI. CONCLUSION.........................................................................................................18

LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES & EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW

- i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995) .................................................................... 17

*Arenson v. Bd. of Trade*,
    372 F. Supp. 1349 (N.D. Ill. 1974) .......................................................... 9

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .............. 6

*Blum v. Stenson*,
    465 U.S. 886 (1984) ................................................................... 3, 4, 14

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
    8 F.3d 722 (10th Cir. 1993) .................................................................... 17

*Brewer v. S. Union Co.*,
    607 F. Supp. 1511 (D. Colo. 1984) .......................................................... 17

*Broderick v. Mazur*,
    No. CV-98-1658-MRP(AJWx), slip op. (C.D. Cal. Apr. 27, 2004) ................... 12

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) .................................................................. 4

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .................................................................. 4

*Cent. R.R. & Banking Co. v. Pettus*,
    113 U.S. 116 (1885) .............................................................................. 3

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) .............................................................................. 10

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    741 F. Supp. 84 (S.D.N.Y. 1990) ............................................................ 18

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ..................................................................... 4

*Goldstein v. MCI WorldCom*,
    340 F.3d 238 (5th Cir. 2003) .................................................................. 9

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) .................................................................. 4

LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES &
EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW

- ii -

**Page**

*Gottlieb v. Wiles*,
    150 F.R.D. 174 (D. Colo. 1993), *rev'd and remanded on other grounds sub*
    *nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ......................................18

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ...........................................................................4

*Harris v. Intel Corp.*,
    No. C-00-1528-CW(EMC), slip op. (N.D. Cal. July 15, 2003)........................12

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ..............................................................................17

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)......................................................................................6, 15

*In re Aetna Inc. Sec. Litig.*,
    No. MDL 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) ...............16

*In re Alliance Gaming Corp. Sec. Litig.*,
    No. CV-S-04-0821-BES-PAL, slip op. (D. Nev. June 28, 2007) .....................13

*In re AMERCO Sec. Litig.*,
    No. 04-2182-PHX-RJB, slip op. (D. Ariz. Nov. 2, 2006) ...............................12

*In re Brocade Sec. Litig.*,
    No. C 05-02042 CRB, slip op. (N.D. Cal. Jan. 26, 2009).............................13

*In re Buspirone Antitrust Litig.*,
    No. MDL 1413 (JGK), 2003 U.S. Dist. LEXIS 26538
    (S.D.N.Y. Apr. 17, 2003)................................................................................16

*In re Cenco, Inc. Sec. Litig.*,
    519 F. Supp. 322 (N.D. Ill. 1981) ...................................................................17

*In re Charlotte Russe Holding, Inc. Sec. Litig.*,
    No. 04cv2528 BTM (WMc), slip op. (S.D. Cal. Aug. 30, 2006) .....................13

*In re Charter Commc'ns, Inc., Sec. Litig.*,
    No. MDL 1506, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005)........16

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...............................................................4, 14, 18

*In re CVS Corp. Sec. Litig.*,
    No. 01-11464 (JLT), slip op. (D. Mass. Sept. 7, 2005) ..................................16

1

2                                                                              **Page**

3  *In re DaimlerChrysler Sec. Litig.*,
        No. 00-993/00-984/01-004 (JJF), slip op. (D: Del. Feb. 5, 2004) ...............................16
4

5  *In re Dura Pharms., Inc. Sec. Litig.*,
        No. 99-CV-0151-JLS(WMC), slip op. (S.D. Cal. Dec. 4, 2009)........................12

6  *In re Equity Funding Corp. Sec. Litig.*,
7        438 F. Supp. 1303 (C.D. Cal. 1977) ...............................................................9

8  *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
        No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627
9        (C.D. Cal. June 10, 2005) ......................................................................8, 12

10 *In re HI/FN, Inc. Sec. Litig.*,
11        No. C-99-4531-SI, slip op. (N.D. Cal. May 20, 2003) ..................................12

12 *In re Ikon Office Solutions, Inc. Sec. Litig.*,
        194 F.R.D. 166 (E.D. Pa. 2000)........................................................8, 9, 14
13

14 *In re Impax Labs., Inc. Sec. Litig.*,
        No. C-04-4802-JW, slip op. (N.D. Cal. May 12, 2009)..................................13

15 *In re King Res. Co. Sec. Litig.*,
16        420 F. Supp. 610 (D. Colo. 1976)..................................................6, 8, 9

17 *In re M.D.C. Holdings Sec. Litig.*,
        No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
18        (S.D. Cal. Aug. 30, 1990) ..............................................................14

19 *In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
        842 F. Supp. 733 (S.D.N.Y. 1994) ..........................................................18
20

21 *In re Media Vision Tech. Sec. Litig.*,
        913 F. Supp. 1362 (N.D. Cal. 1996) ....................................................17, 18
22

23 *In re Mego Fin. Corp. Sec. Litig.*,
        213 F.3d 454 (9th Cir. 2000) ..........................................................12, 15

24 *In re PETCO Corp. Sec. Litig.*,
        No. 05-CV-0823 H(RBB), slip op. (S.D. Cal. Sept. 2, 2008)..........................13
25

26 *In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
        No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)........................................10

27

28

LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES &          - iv -
EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW

**Page**

*In re Rite Aid Corp. Sec. Litig.*,
 269 F. Supp. 2d 603 (E.D. Pa. 2003), *vacated on other grounds*,
 396 F.3d 294 (3d Cir. 2005).............................................................16

*In re Rite Aid Corp. Sec. Litig.*,
 396 F.3d 294 (3d Cir. 2005)............................................................15

*In re RJR Nabisco, Inc. Sec. Litig.*,
 No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702
 (S.D.N.Y. Aug. 24, 1992)................................................................17

*In re SeraCare Life Sciences, Inc. Sec. Litig.*,
 No. 05-CV-2335-H(CAB), slip op. (S.D. Cal. Sept. 4, 2007)............13

*In re Seracare Life Sciences, Inc. Sec. Litig.*,
 No. 05-CV-2335-JLS(CAB), slip op. (S.D. Cal. July 17, 2009)........12

*In re Shell Oil Refinery*,
 155 F.R.D. 552 (E.D. La. 1993)......................................................17

*In re Sumitomo Copper Litig.*,
 74 F. Supp. 2d 393 (S.D.N.Y. 1999)..............................................16

*In re Sunterra Corp. Sec. Litig.*,
 No. 2:06-cv-00844-BES-RJJ, slip op. (D. Nev. Feb. 10, 2009) ........13

*In re Surebeam Corp. Sec. Litig.*,
 No. 03-CV-01721-JM(POR), slip op. (S.D. Cal. July 17, 2006)........13

*In re Synthroid Mktg. Litig.*,
 264 F.3d 712 (7th Cir. 2001) ..........................................................14

*In re Synthroid Mktg. Litig.*,
 325 F.3d 974 (7th Cir. 2003) ..........................................................14

*In re Terayon Commc'n Sys., Inc. Sec. Litig.*,
 No. C-00-1967-MHP, slip op. (N.D. Cal. Oct. 3, 2007)....................12

*In re THQ, Inc. Sec. Litig.*,
 No. CV-00-01783-JFW(Ex), slip op. (C.D. Cal. June 30, 2003)........12

*In re TUT Systems, Inc. Sec. Litig.*,
 No. C-01-2659-CW, slip op. (N.D. Cal. May 14, 2004) ....................13

*In re U.S. Aggregates, Inc. Sec. Litig.*,
 No. C-01-1688-CW, slip op. (N.D. Cal. April 6, 2006) ....................13

LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES &
EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW

- v -

**Page**

*In re Verisign, Inc. Sec. Litig.*,
    No. C-02-2270-JW(PVT), slip op. (N.D. Cal. Apr. 24, 2007) ..........................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ...................................................................................... *passim*

*In re Watchguard Sec. Litig.*,
    No. 2:05-cv-00678-JLR, slip op. (W.D. Wash. Aug. 6, 2007) .........................................13

*In re Wireless Facilities, Inc. Sec. Litig.*,
    No. 04cv1589 NLS, slip op. (S.D. Cal. Jan. 13, 2009) ........................................13

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................................16

*J.N. Futia Co. v. Phelps Dodge Indus., Inc.*,
    No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982) ....................9

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...............................................................................................9

*Keith v. Volpe*,
    501 F. Supp. 403 (C.D. Cal. 1980) ...................................................................................17

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986)................................................................................................5

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976).................................................................................................7

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ...........................................................................................15

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993) ...................................................................................17

*Mun. Auth. of Bloomsburg v. Pennsylvania*,
    527 F. Supp. 982 (M.D. Pa. 1981)....................................................................................17

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ....................................................................................3, 4, 6, 9

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
    No. 77 C 39, 1984 U.S. Dist. LEXIS 23595 (N.D. Ill. Sept. 14, 1984)...............................4

**Page**

*Powers v. Eichen,*
 229 F.3d 1249 (9th Cir. 2000) ........................................................................6

*Rabin v. Concord Assets Group,*
 No. 89 CIV 6130 (LBS), 1991 U.S. Dist. LEXIS 18273
 (S.D.N.Y. Dec. 19, 1991)...........................................................................16

*Roberts v. Texaco, Inc.,*
 979 F. Supp. 185 (S.D.N.Y. 1997) ..............................................................16

*Six Mexican Workers v. Ariz. Citrus Growers,*
 904 F.2d 1301 (9th Cir. 1990) .....................................................................4

*Swedish Hosp. Corp. v. Shalala,*
 1 F.3d 1261 (D.C. Cir. 1993) ......................................................................4

*Thornberry v. Delta Air Lines,*
 676 F.2d 1240 (9th Cir. 1982), *vacated and remanded on other grounds,*
 461 U.S. 952 (1983)....................................................................................18

*Torrisi v. Tucson Elec. Power Co.,*
 8 F.3d 1370 (9th Cir. 1993) .....................................................................4, 6

*Trustees v. Greenough,*
 105 U.S. 527 (1882)......................................................................................3

*Vincent v. Hughes Air W., Inc.,*
 557 F.2d 759 (9th Cir. 1977) ........................................................................3

*Vizcaino v. Microsoft Corp.,*
 142 F. Supp. 2d 1299 (W.D. Wash. 2001)...................................................9

*Vizcaino v. Microsoft Corp.,*
 290 F.3d 1043 (9th Cir. 2002) ........................................................... *passim*

*Weiss v. Mercedes-Benz of N. Am.,*
 899 F. Supp. 1297 (D.N.J. 1995) ...............................................................16

*Winkler v. NRD Mining, Ltd.,* 198 F.R.D. 355 (E.D.N.Y.),
 *aff'd sub nom. Winkler v. Wigley,* 242 F.3d 369 (2d Cir. 2000)........................11

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77z-1 .................................................................................... *passim*
    §78u-4(a)(6) ........................................................................................5

17 C.F.R.
    §240.10b-5 ..........................................................................................7


**SECONDARY AUTHORITIES**

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
    §1.09 ..................................................................................................15

Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM: Due
Process and the Lodestar Method: You Can't Get There from Here* (June 2000)
    74 Tul. L. Rev. 1809 ...........................................................................5

Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent
Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?*
(NERA Nov. 1996) ........................................................................................11

Elaine Buckberg, Todd Foster, and Stephanie Plancich, *Recent Trends in Securities
Class Action Litigation: 2003 Early Update* (NERA Feb. 2004) .....................7

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney:  The Implications of
Economic Theory for Private Enforcement of Law Through Class and Derivative
Actions* (May 1986)
    86 Colum. L. Rev. 669 .......................................................................6

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees* (Oct. 8, 1985)
    108 F.R.D. 237 .....................................................................................4

Richard Posner, *Economic Analysis of Law* (3d ed. 1986)
    §21.9 ..................................................................................................10

Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in
Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization
Ahead?* (NERA Apr. 2006) .............................................................................8

Stephanie Plancich, Ph.D., Svetlana Starykh, *2008 Trends in Securities Class Actions*
(NERA Dec. 2008) ...........................................................................................7

1

2                                                                                          **Page**

3   Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class
    Actions in Four Federal District Courts: Final Report to the Advisory Committee on
4   Civil Rules* (Federal Judicial Center 1996) ................................................................................11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2         PLEASE TAKE NOTICE that on April 8, 2010, at 2:00 p.m., in the Courtroom of the

3   Honorable Claudia Wilken, United States District Judge, at the United States Courthouse, 1301 Clay

4   Street, Oakland, California, Lead Counsel will and hereby do move for an award of attorneys' fees

5   and expenses. This motion is based upon the Memorandum of Points and Authorities in Support of

6   Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, the Joint Declaration of

7   Shawn A. Williams and Jonathan Gardner in Support of Final Approval of Class Action Settlement,

8   Plan of Allocation of Settlement Proceeds, and Award of Attorneys' Fees and Expenses ("Joint

9   Decl."), the Declaration of Joy Ann Bull Filed on Behalf of Coughlin Stoia Geller Rudman &

10  Robbins LLP in Support of Application for Award of Attorneys' Fees and Expenses, the Declaration

11  of Joy Ann Bull in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and

12  Expenses, and the Declaration of Jonathan Gardner Filed on Behalf of Labaton Sucharow LLP in

13  Support of Application for Award of Attorneys' Fees and Expenses, submitted herewith, the

14  Stipulation of Settlement dated as of October 12, 2009, and all other pleadings and matters of record.

15                    **MEMORANDUM OF POINTS AND AUTHORITIES**

16  **I.      INTRODUCTION**

17        Lead Counsel negotiated a settlement consisting of $5,000,000 in cash.[1] For their efforts in

18  achieving this result, Lead Counsel seek a benchmark fee of 25% of the Settlement Fund plus

19  payment of $186,767.89 in expenses.[2]

20        The Joint Declaration details the work performed over the past 2 years for the benefit of the

21  Settlement Class, including an extensive pre-filing investigation, locating and interviewing potential

22  witnesses, successfully opposing in part Defendants' motion to dismiss, and participating in

23  _____

24  [1]     All capitalized terms not defined herein shall have the same meanings set forth in the
25  Stipulation of Settlement dated as of October 12, 2009.

26  [2]     The amount awarded will compensate Lead Counsel and may also be used to compensate
    counsel who have advised or worked with the Lead Plaintiffs for the benefit of the Settlement Class
27  or contributed to the institution, prosecution, or resolution of the Litigation. The amount requested
    includes all such payments.

28

LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES &
EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW     - 1 -

1    prolonged settlement discussions.  Lead Counsel spent considerable time and resources to develop a

2    case that they believe would have ultimately survived the pleading requirements of the Private

3    Securities Litigation Reform Act of 1995 ("PSLRA") and convince Defendants that the Lead

4    Plaintiffs were prepared to pursue this matter to trial if necessary.  A comprehensive description of

5    the claims asserted by the Lead Plaintiffs, as well as the efforts expended by Lead Counsel, are set

6    forth in the Joint Declaration.

7         The 25% benchmark fee requested is more than fair and reasonable when considered under

8    the applicable standards and, as discussed below, is well within the normal range of awards made in

9    contingent fee matters of this type, particularly in view of the result achieved and the considerable

10   risks attendant in bringing and pursuing this Litigation.  This case involved complex issues,

11   including proof of scienter, loss causation, and damages.  The legal issues presented a significant

12   risk that Lead Plaintiffs would spend several more years at sizable cost and would not obtain a better

13   recovery (or any recovery at all) for the Settlement Class.

14         For the reasons set forth herein, and in the Joint Declaration, we respectfully submit that the

15   requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards

16   and, in light of the significant risks faced and the excellent result achieved, should be awarded by

17   this Court.

18   **II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION**

19         The Joint Declaration is an integral part of this submission.  The Court is respectfully

20   referred to it for a detailed description of the factual and procedural history of the Litigation, the

21   claims asserted, the extensive investigation and informal discovery undertaken, the settlement

22   negotiations, as well as the numerous risks and uncertainties presented in this Litigation.

23

24

25

26

27

28

LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES &
EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW     - 2 -

III.   **AWARD OF ATTORNEYS' FEES**

    A.   **The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award**

        1.   **A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases**

For their efforts in creating a common fund for the benefit of the Settlement Class, Lead Counsel seek a reasonable percentage of the fund recovered as attorneys' fees. The percentage method of awarding fees has become an accepted, if not the prevailing method, for awarding fees in common fund cases in this Circuit and throughout the United States.

It has long been recognized in equity that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). This rule, known as the common fund doctrine, is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).[3]

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class." In this Circuit, the district court has discretion to award fees in common fund cases

---

[3]   In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit explained the principle underlying fee awards in common fund cases:

> Since the Supreme Court's 1885 decision in [*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The amount of such a reward is that which is deemed "reasonable" under the circumstances.

*Id.* at 271 (citations omitted, emphasis in original).

1  based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method.

2  *WPPSS*, 19 F.3d at 1296.  In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Ariz. Citrus*

3  *Growers*, 904 F.2d 1301 (9th Cir. 1990), *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir.

4  1993), and *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), the Ninth Circuit expressly

5  approved the use of the percentage method in common fund cases.  Moreover, supporting authority

6  for the percentage method in other circuits is overwhelming.[4]

7           Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly

8  shifted to the percentage method in awarding fees in representative actions.  The rationale for

9  compensating counsel in common fund cases on a percentage basis is sound.  First, it is consistent

10  with the practice in the private marketplace where contingent fee attorneys are customarily

11  compensated by a percentage of the recovery.[5]  Second, it more closely aligns the lawyers' interest

12  in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in

13

14

---

15  [4]      Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys'

16  fees in common fund cases.  Two circuits have ruled that the ***percentage method is mandatory in***
   ***common fund cases***.  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I*

17  *Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  Other circuits and commentators
   have expressly approved the use of the percentage method. *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir.

18  1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing footnote 16 of
   *Blum* recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable in

19  common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Goldberger v.*
   *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); Report of the Third Circuit Task Force, *Court*

20  *Awarded Attorney Fees*, 108 F.R.D. 237, 254 (Oct. 8, 1985).

21  [5]      Courts are encouraged to look to the private marketplace in setting a percentage fee:

22           The judicial task might be simplified if the judge and the lawyers [spent] their
        efforts on finding out what the market in fact pays not for the individual hours but for

23        the ensemble of services rendered in a case of this character.  This was a contingent
        fee suit that yielded a recovery for the "clients" (the class members) of $45 million.

24        The class counsel are entitled to the fee they would have received had they handled a
        similar suit on a contingent fee basis, with a similar outcome, for a paying client.

25        Suppose a large investor had sued Continental for securities fraud, and won $45
        million.   What would its lawyers have gotten pursuant to their contingent fee

26        contract?

27  *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).  *See also Phemister v. Harcourt Brace*
   *Jovanovich, Inc.*, No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40-*41 (N.D. Ill. Sept. 14, 1984).

28

LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES &
EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW        - 4 -

the shortest amount of time.[6]  Indeed, one of the nation's leading scholars in the field of class actions

and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has

concluded that the percentage method of awarding fees is the only method of fee awards that is

consistent with class members' due process rights.  Professor Silver notes:

> ***The consensus that the contingent percentage approach creates a closer
> harmony of interests between class counsel and absent plaintiffs than the lodestar
> method is strikingly broad.***  It includes leading academics, researchers at the RAND
> Institute for Civil Justice, and many judges, including those who contributed to the
> Manual for Complex Litigation, the Report of the Federal Courts Study Committee,
> and the report of the Third Circuit Task Force.  Indeed, it is difficult to find anyone
> who contends otherwise.  No one writing in the field today is defending the lodestar
> on the ground that it minimizes conflicts between class counsel and absent claimants.
>
> ***In view of this, it is as clear as it possibly can be that judges should not
> apply the lodestar method in common fund class actions.***  The Due Process Clause
> requires them to minimize conflicts between absent claimants and their
> representatives.  The contingent percentage approach accomplishes this.

Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM: Due Process and the*

*Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (June 2000)

(emphasis added, footnotes omitted).[7]  This is particularly appropriate in PSLRA cases where

Congress recognized the propriety of the percentage method of fee awards.[8]

---

[6]     In *Kirchoff v. Flynn*, 786 F.2d 320, 325, 326 (7th Cir. 1986), the court stated:

> The contingent fee uses private incentives rather than careful monitoring to
> align the interests of lawyer and client.  The lawyer gains only to the extent his client
> gains. . . .  The unscrupulous lawyer paid by the hour may be willing to settle for a
> lower recovery coupled with a payment for more hours.  Contingent fees eliminate
> this incentive and also ensure a reasonable proportion between the recovery and the
> fees assessed to defendants. . . .
>
> At the same time as it automatically aligns interests of lawyer and client,
> rewards exceptional success, and penalizes failure, the contingent fee automatically
> handles compensation for the uncertainty of litigation.

[7]     Professor Coffee also argues that a percentage of the recovery is the only reasonable method of
awarding fees in common fund cases:

> If one wishes to economize on the judicial time that is today invested in monitoring
> class and derivative litigation, the highest priority should be given to those reforms
> that restrict collusion and are essentially self-policing.  The percentage of the
> recovery fee award formula is such a "deregulatory" reform because it relies on
> incentives rather than costly monitoring.  Ultimately, this "deregulatory" approach is
> the only alternative . . . .

### 2.   A Fee of 25% of the Fund Created Is Reasonable

In *Paul, Johnson*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. 886 F.2d at 272; *see also Torrisi*, 8 F.3d at 1376 (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same). The guiding principle in this Circuit is that a fee award be "'reasonable under the circumstances.'" *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted). In view of the result obtained, the contingent fee risk and the financial commitment of Lead Counsel, an award of 25% of the recovery obtained for the Settlement Class is appropriate.

### B.   Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies a Fee Award of 25% in This Case

Lead Counsel submit that, as the factors discussed below demonstrate, attorneys' fees of 25% of the fund recovered for the Settlement Class are reasonable under the circumstances of this case and should be approved.

### 1.   The Result Achieved

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

A Settlement Fund of $5 million has been obtained through the efforts of Lead Counsel without the necessity and risk of summary judgment, trial, and appeals. This Settlement represents

---

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-25 (May 1986).

[8]   "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6).

1   between 8% and 22% of Lead Plaintiffs' estimate of potential damages, even though actual provable

2   damages could have been a small fraction of these potential amounts had the case moved forward

3   through discovery, summary judgment, and trial. Lead Counsel's pursuit of Lead Plaintiffs' claims

4   has resulted in a substantial and certain recovery for the Settlement Class.

5        The notable nature of this Settlement is supported by a review of recoveries in other complex

6   class action settlements. In contrast to the present recovery, a study by National Economic Research

7   Associates ("NERA") states that in 2003, the median percentage of investor losses recovered in

8   shareholder class action settlements was 2.8%, up from 2.7% in 2002. *See* Elaine Buckberg, Todd

9   Foster, and Stephanie Plancich, *Recent Trends in Securities Class Action Litigation: 2003 Early*

10  *Update*, at 8 (NERA Feb. 2004), attached as Exhibit 1 to the Declaration of Joy Ann Bull in Support

11  of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Bull Decl."), submitted

12  herewith. A more recent study by NERA states that in 2008, the median ratio of settlement value to

13  investor losses was 2.7%. *See* Stephanie Plancich, Ph.D., Svetlana Starykh, *2008 Trends in*

14  *Securities Class Actions*, at 14 (NERA Dec. 2008), Bull Decl., Ex. 2. When measured against the

15  results in comparable cases, Lead Counsel achieved a very good recovery for Settlement Class

16  Members.

17       Given the above, there is no doubt that Lead Counsel achieved a superior recovery for

18  Settlement Class Members in this case and should be awarded the 25% benchmark fee requested to

19  compensate them for such a favorable result.

20                  **2.      The Risks of Litigation**

21       Numerous cases have recognized that risk is an important factor in determining a fair fee

22  award. *See, e.g.*, *WPPSS*, 19 F.3d at 1299-1301; *Lindy Bros. Builders v. Am. Radiator & Standard*

23  *Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). Uncertainty that an ultimate recovery would be

24  obtained is highly relevant in determining risk. *WPPSS*, 19 F.3d at 1300; *Lindy*, 540 F.2d at 117.

25  As the court aptly observed in *King Resources*:

26              The litigation also involved unique and substantial issues of law in the
            technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class action

27          questions, and difficult questions regarding computation of damages.

28                                      * * *

> In evaluating the services rendered in this case, appropriate consideration must be given to the risks assumed by plaintiffs' counsel in undertaking the litigation. The prospects of success were by no means certain at the outset, and indeed, the chances of success were highly speculative and problematical.

420 F. Supp. at 632, 636-37. *See also In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

As set forth in the Joint Declaration, substantial risks and uncertainties were present from the outset of this Litigation that made it far from certain that any recovery for the Settlement Class would be obtained. While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially. Courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). According to the April 2006 NERA study, dismissal rates have doubled since the PSLRA, accounting for 40.3% of dispositions. *See* Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?*, at 4 (NERA Apr. 2006), Bull Decl., Ex. 3.

When cases are dismissed, the result is large losses for the plaintiffs' firms involved. There is no question that, if not settled, Lead Counsel in this case faced the substantial risk of years of litigation with no guarantee of any compensation. Lead Counsel achieved a significant recovery for the Settlement Class in the face of very substantial risks. Under these circumstances, the requested fee is fully justified.

### 3. The Skill Required and the Quality of the Work

The successful prosecution of these complex claims required the participation of highly skilled and specialized attorneys. *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *38 ("The experience of counsel is also a factor in determining the appropriate fee award."). From the outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement

1    Class.  Lead Counsel demonstrated that, notwithstanding the barriers erected by the PSLRA, they

2    would work to develop sufficient evidence to support a convincing case.

3          Lead Counsel's thorough investigation uncovered evidence that they believe would have

4    ultimately defeated Defendants' motion to dismiss the amended complaint.  As a result, Lead

5    Counsel were able to negotiate a settlement they believe is fair under all the circumstances.  The skill

6    demonstrated by Lead Counsel supports the requested fee.  *See, e.g.*, *J.N. Futia Co. v. Phelps Dodge*

7    *Indus., Inc.*, No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982).

8          The quality of opposing counsel is also important in evaluating the quality of the work done

9    by plaintiffs' counsel.  *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337

10   (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354

11   (N.D. Ill. 1974).  Lead Plaintiffs were opposed in this Litigation by counsel from a law firm with a

12   nationwide reputation for vigorous advocacy of its clients' interests.

13                    **4.      The Novelty and Difficulty of the Questions Presented**

14         Courts have recognized that the novelty and difficulty of the issues in a case are significant

15   factors to be considered in making a fee award.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 142 F. Supp.

16   2d 1299, 1306 (W.D. Wash. 2001); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.

17   1974).  As the *Johnson* court stated:

18         Cases of first impression generally require more time and effort on the attorney's
           part.  Although this greater expenditure of time in research and preparation is an
19         investment by counsel in obtaining knowledge which can be used in similar later
           cases, he should not be penalized for undertaking a case which may "make new law."
20         Instead, he should be appropriately compensated for accepting the challenge.

21   488 F.2d at 718.

22         Courts have properly recognized that "securities actions have become more difficult from a

23   plaintiff's perspective in the wake of the PSLRA."  *Ikon*, 194 F.R.D. at 194; *see also Goldstein v.*

24   *MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud

25   class action complaint against Bernard Ebbers and WorldCom arising out of a massive securities

26   fraud that resulted in a $685 million write-off of accounts receivable, for which Ebbers was later

27   convicted).

28

In addition to being factually complex, this case also involved numerous complex questions of law under the PSLRA, in particular the application of *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) to the facts of this case. The application of *Dura* and subsequent cases that interpret it posed significant risks to Lead Plaintiffs' ability to prevail on the issue of loss causation.

### 5.   The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee. It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *Prudential*, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

Before plaintiffs' counsel commit to prosecute a securities class action on a contingent fee basis, an assessment of the strength of the case, the likelihood of a recovery, the probable size of damages, and the costs of litigating the case is weighed against the expectation of payment if successful. In this Circuit, plaintiffs' counsel expect to be paid a reasonable percentage of any recovery, usually in the range of 25% (absent a fee agreement with the client to seek a different

1   amount).   Our expectation about the likely fee, if successful, is part of the equation when

2   determining whether to pursue a case.

3       Moreover, there are numerous class actions in which plaintiffs' counsel took the risk,

4   expended thousands of hours, and yet received no remuneration whatsoever despite their diligence

5   and expertise.  Subsequent to the passage of the PSLRA, a high percentage of cases in this Circuit

6   have been dismissed at the pleading stage in response to defendants' arguments that the complaints

7   do not meet the PSLRA's pleading standards.

8       Indeed, because the fee in this matter was entirely contingent, the only certainty was that

9   there would be no fee without a successful result and that such result would only be realized after

10  significant amounts of time, effort, and expense had been expended.  Counsel for Lead Plaintiffs

11  have received no compensation for their efforts during the course of this Litigation.  Absent this

12  Settlement, there was a sizeable risk that at the end of the day, Settlement Class Members, as well as

13  their counsel, would obtain no recovery.  Counsel for Lead Plaintiffs have risked non-payment of

14  $186,767.89 in expenses and approximately $1 million in time worked on this matter, knowing that

15  if their efforts were not successful, no fee would be paid.  *See, e.g., Winkler v. NRD Mining, Ltd.,*

16  198 F.R.D. 355 (E.D.N.Y.) (granting defendants' motion for judgment as a matter of law after jury

17  verdict for plaintiffs), *aff'd sub nom. Winkler v. Wigley,* 242 F.3d 369 (2d Cir. 2000).

18          **6.      A 25% Fee Award Is Below the Average Fee Awarded in
                       Similar Complex Class Action Litigation**

19

20      A Federal Judiciary Center study released in 1996, which covered all class actions in four

21  selected federal district courts with a high number of class actions, including this District, found that

22  as to the size of attorneys' fees: "Median rates ranged from 27% to 30%."  Thomas E. Willging,

23  Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District*

24  *Courts: Final Report to the Advisory Committee on Civil Rules,* at 69 (Federal Judicial Center 1996),

25  Bull Decl., Ex. 4.  This finding is in line with an analysis of fee awards in class actions conducted in

26  1996 by National Economic Research Associates, an economics consulting firm.  Using data from

27  433 shareholder class actions, the study concludes: "Regardless of case size, fees average

28  approximately 32 percent of the settlement."  Denise N. Martin, Vinita M. Juneja, Todd S. Foster,

1    Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class*

2    *Actions?* at 12-13 (NERA Nov. 1996), Bull Decl., Ex. 5.  The benchmark fee requested is less than

3    the average paid in these shareholder class actions.

4            Further, the fee requested is supported by fee awards at or above the Ninth Circuit

5    benchmark in other class action cases:

6        • *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (upheld fee award of

7              33.3% of $1.725 million settlement);

8        • *Vizcaino*, 290 F.3d at 1047 (affirming 28% fee award);

9        • *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *61 (awarding one-third of $27.75

10             million settlement);

11       • *In re Terayon Commc'n Sys., Inc. Sec. Litig.*, No. C-00-1967-MHP, slip op. (N.D. Cal.

12             Oct. 3, 2007) (awarded 30% of recovery, plus expenses);

13       • *In re AMERCO Sec. Litig.*, No. 04-2182-PHX-RJB, slip op. (D. Ariz. Nov. 2, 2006)

14             (awarded 30% of recovery; plus expenses);

15       • *Broderick v. Mazur (PHP Healthcare)*, No. CV-98-1658-MRP(AJWx), slip op. (C.D.

16             Cal. Apr. 27, 2004) (fee equal to 30% of recovery, plus expenses);

17       • *In re THQ, Inc. Sec. Litig.*, No. CV-00-01783-JFW(Ex), slip op. (C.D. Cal. June 30,

18             2003) (fee equal to 30% of recovery, plus expenses);

19       • *Harris v. Intel Corp.*, No. C-00-1528-CW(EMC), slip op. (N.D. Cal. July 15, 2003) (fee

20             equal to 30% of recovery, plus expenses);

21       • *In re HI/FN, Inc. Sec. Litig.*, No. C-99-4531-SI, slip op. (N.D. Cal. May 20, 2003) (fee

22             equal to 30% of recovery, plus expenses);

23       • *In re Dura Pharms., Inc. Sec. Litig.*, No. 99-CV-0151-JLS(WMC), slip op. (S.D. Cal.

24             Dec. 4, 2009) (awarded fees of 25% of the fund recovered, plus expenses);

25       • *In re Seracare Life Sciences, Inc. Sec. Litig.*, No. 05-CV-2335-JLS(CAB), slip op. (S.D.

26             Cal. July 17, 2009) (awarded 25% of the recovery, plus expenses);

27

28

LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES &
EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW    - 12 -

1   • *In re Impax Labs., Inc. Sec. Litig.*, No. C-04-4802-JW, slip op. (N.D. Cal. May 12, 2009)
2       (awarded 25% of recovery, plus expenses);

3   • *In re Sunterra Corp. Sec. Litig.*, No. 2:06-cv-00844-BES-RJJ, slip op. (D. Nev. Feb. 10,
4       2009) (awarded 25% of the recovery, plus expenses);

5   • *In re Brocade Sec. Litig.*, No. C 05-02042 CRB, slip op. (N.D. Cal. Jan. 26, 2009)
6       (awarded 25% of the recovery, plus expenses);
7

8   • *In re Wireless Facilities, Inc. Sec. Litig.*, No. 04cv1589 NLS, slip op. (S.D. Cal. Jan. 13,
9       2009) (awarded 25% of the recovery, plus expenses);

10  • *In re PETCO Corp. Sec. Litig.*, No. 05-CV-0823 H(RBB), slip op. (S.D. Cal. Sept. 2,
11      2008) (awarded 25% of the recovery, plus expenses);

12  • *In re SeraCare Life Sciences, Inc. Sec. Litig.*, No. 05-CV-2335-H(CAB), slip op. (S.D.
13      Cal. Sept. 4, 2007) (awarding 25% of recovery, plus expenses);

14  • *In re Watchguard Sec. Litig.*, No. 2:05-cv-00678-JLR, slip op. (W.D. Wash. Aug. 6,
15      2007) (awarded 25% of recovery, plus expenses);

16  • *In re Alliance Gaming Corp. Sec. Litig.*, No. CV-S-04-0821-BES-PAL, slip op. (D. Nev.
17      June 28, 2007) (awarding 25% of the recovery, plus expenses);

18  • *In re Verisign, Inc. Sec. Litig.*, No. C-02-2270-JW(PVT), slip op. (N.D. Cal. Apr. 24,
19      2007) (awarding 25% of the recovery, plus expenses);

20  • *In re Charlotte Russe Holding, Inc. Sec. Litig.*, No. 04cv2528 BTM (WMc), slip op.
21      (S.D. Cal. Aug. 30, 2006) (awarded 25% of recovery, plus expenses);

22  • *In re Surebeam Corp. Sec. Litig.*, No. 03-CV-01721-JM(POR), slip op. (S.D. Cal. July
23      17, 2006) (awarded 25% of recovery, plus expenses);

24  • *In re U.S. Aggregates, Inc. Sec. Litig.*, No. C-01-1688-CW, slip op. (N.D. Cal. April 6,
25      2006) (awarding fee of 25% of recovery, plus expenses); and

26  • *In re TUT Systems, Inc. Sec. Litig.*, No. C-01-2659-CW, slip op. (N.D. Cal. May 14,
27      2004) (fee equal to 25% of recovery, plus expenses).

28  The fees paid in these comparable cases support the 25% fee award requested.

7.  **The Customary Fee**

Circuit courts and scholars have encouraged the "mimic the market" approach in setting fees in common fund class action cases. The Seventh Circuit has consistently taken this approach. *See Cont'l Ill.*, 962 F.2d at 568 ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services.").

Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable. *Vizcaino*, 290 F.3d at 1050 n.4. If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum*, 465 U.S. at 903* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (concurring); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Ikon*, 194 F.R.D. at 194 (same). Thus, the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is much higher than the percentage fee requested in this case.[9]

---

[9]   Professor Conte acknowledged the propriety of adequately compensating counsel based on the result obtained in common fund cases:

> [C]ourts have been careful to award a fully compensable reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation. These lawyers assume the risk of no compensation unless they successfully confer common fund benefits on the class, based on their reasonable expectation that they will share in the recovery in a fair proportion, in contrast to receiving a fee based initially on time-expended criteria that fail to give the *results obtained* factor primary consideration.

The customary fee in contingent litigation supports a benchmark fee award of 25% as fair and reasonable.

### 8.   Reaction of the Settlement Class Supports Approval of the Attorneys' Fees Requested

The Court-approved notice was sent to over 50,000 potential Settlement Class Members and the Court-approved summary notice was published in *Investor's Business Daily*. *See* paragraphs 3 through 11 to the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, and B) Publication of the Summary Notice, submitted herewith. To date, no objections to the requested amount of attorneys' fees and expenses have been received.[10]   The Third Circuit recently noted that a low level of objections is a "rare phenomenon." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). Moreover, as this Circuit has held, a small number of objections do not stand in the way of approval of a reasonable fee. *See Mego Fin.*, 213 F.3d at 459; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

## IV.   THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK

The first step in applying the lodestar cross-check is to determine the dollar value of the proposed percentage fee award. Here, counsel request a fee of $1,250,000. The next step requires the court to ascertain the lodestar figure by multiplying the number of hours worked by the hourly rate of counsel. The court then can determine an implied multiplier that may be assessed for reasonableness by taking into account the contingent nature and risks of the litigation, the results obtained, and the nature of and quality of the services rendered by plaintiffs' counsel. *See, e.g., Hensley*, 461 U.S. 424. Indeed, "'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'" *Vizcaino*, 290 F.3d at 1051 (citation omitted).

---

1 Alba Conte, *Attorney Fee Awards* §1.09, at 16 (2d ed. 1993) (emphasis in original).

[10]   The last day to file an objection is February 4, 2010. If any objections are received, Lead Counsel will address them in a reply brief.

1    The cumulative hours expended by Lead Counsel in this Litigation are 2,273.95 and the

2    resulting lodestar for the services performed is $1,014,591.50.[11] Thus, the requested fee represents a

3    modest multiplier of 1.23 of Lead Counsel's lodestar.

4    In other complex litigation, it is common for courts to enhance the lodestar by multipliers

5    between 3.0 and 4.5 and many courts have awarded higher multipliers. *See, e.g.*, *In re Sumitomo*

6    *Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("'In recent years multipliers of between 3

7    and 4.5 have been common' in federal securities cases.") (citation omitted); *Rabin v. Concord Assets*

8    *Group*, No. 89 CIV 6130 (LBS), 1991 U.S. Dist. LEXIS 18273, at *4 (S.D.N.Y. Dec. 19, 1991)

9    (multipliers between 3 and 4.5 have been common in recent years); *Vizcaino*, 290 F.3d at 1051

10   (finding multipliers ranged as high as 19.6, though most run from 1.0 to 4.0); *In re Xcel Energy, Inc.*,

11   364 F. Supp. 2d 980, 998-99 (D. Minn. 2005) (awarding 25% of $80 million settlement fund,

12   representing 4.7 multiplier); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. MDL 1506, 2005 U.S.

13   Dist. LEXIS 14772, at *56 (E.D. Mo. June 30, 2005) (awarding 20% of $146 million settlement

14   fund, representing 5.6 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 611 (E.D.

15   Pa. 2003) (awarding fee equal to multiplier of 4.07 and recognizing that "'multipliers in this range

16   are fairly common'") (citation omitted), *vacated on other grounds*, 396 F.3d 294 (3d Cir. 2005); *In*

17   *re Aetna Inc. Sec. Litig.*, No. MDL 1219, 2001 U.S. Dist. LEXIS 68, at *59 (E.D. Pa. Jan. 4, 2001)

18   (awarding 30% of $82.5 million settlement fund, representing 3.6 multiplier); *In re DaimlerChrysler*

19   *Sec. Litig.*, No. 00-993/00-984/01-004 (JJF), slip op. (D. Del. Feb. 5, 2004) (awarding 22.5% of

20   $300 million settlement fund, representing 3.2508 multiplier); *In re CVS Corp. Sec. Litig.*, No. 01-

21   11464 (JLT), slip op. (D. Mass. Sept. 7, 2005) (awarding 25% of $110 million settlement fund,

22   representing 3.27 multiplier); *In re Buspirone Antitrust Litig.*, No. MDL 1413 (JGK), 2003 U.S.

23   Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 17, 2003) (awarding multiplier of 8.46); *Roberts v.*

24   *Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (awarding multiplier of 5.5); *Weiss v.*

25   *Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee equal to multiplier

26   _____

27   [11]   *See* the declarations of Lead Counsel, filed herewith.

28

of 9.3); *In re RJR Nabisco, Inc. Sec. Litig.*, No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) (awarding fee equal to multiplier of 6.0).  *See also In re Shell Oil Refinery*, 155 F.R.D. 552, 573-74 (E.D. La. 1993) (multiplier of 3.25); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *Brewer v. S. Union Co.*, 607 F. Supp. 1511 (D. Colo. 1984) (multipliers of 3 and 3.5); *Mun. Auth. of Bloomsburg v. Pennsylvania*, 527 F. Supp. 982, 999-1000 (M.D. Pa. 1981) (4.5 multiplier); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 326-28 (N.D. Ill. 1981) (4 multiplier).  Consequently, the attorneys' fees sought are plainly reasonable using a lodestar cross-check.

**V.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

Lead Counsel have incurred expenses in an aggregate amount of $186,767.89 in prosecuting the Litigation.  These expenses are set forth in Lead Counsel's declarations submitted to the Court herewith.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted).  *See also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).  Therefore, it is proper to reimburse reasonable expenses even though they are greater than taxable costs. *Id.  See also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted).  The categories of expenses for which counsel seek reimbursement are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund.

1   Expenses include the costs of computerized research.   These are the charges for

2   computerized factual and legal research services such as LEXIS/Nexis and Westlaw.   It is standard

3   practice for attorneys to use LEXIS/Nexis and Westlaw to assist them in researching legal and

4   factual issues and reimbursement is proper. *See Media Vision*, 913 F. Supp. at 1371. Indeed, courts

5   recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class

6   money. *See Cont'l Ill.*, 962 F.2d at 570. In approving expenses for computerized research, the court

7   in *Gottlieb v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds sub*

8   *nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), underscored the time-saving attributes of

9   computerized research as a reason reimbursement should be encouraged. The court also noted that

10   fee-paying clients reimburse counsel for computerized legal and factual research. *Id.*

11   In addition, certain counsel were required to travel in connection with this case.   The

12   expenses in this category are reasonable in amount, and are properly charged against the fund

13   created. *See Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated and*

14   *remanded on other grounds*, 461 U.S. 952 (1983); *In re McDonnell Douglas Equip. Leasing Sec.*

15   *Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith,*

16   *Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

17   Photocopying costs are also customarily reimbursed in common fund cases. *See McDonnell*

18   *Douglas*, 842 F. Supp. at 746. Duplication of documents and pleadings was necessary for the

19   effective prosecution of this case.

20   **VI.   CONCLUSION**

21   From the beginning, Lead Plaintiffs were faced with determined adversaries represented by

22   experienced counsel. Without any assurance of success, Lead Plaintiffs and their counsel pursued

23   this Litigation to a successful conclusion. Accordingly, we submit that for the reasons set forth

24   above and in the Joint Declaration, the Court should award Lead Counsel attorneys' fees of 25% of

25   the Settlement Fund and reimbursement of $186,767.89 in expenses.

26

27

28

LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES &
EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW      - 18 -

1   DATED: January 21, 2010                    Respectfully submitted,

2                                              COUGHLIN STOIA GELLER
                                                 RUDMAN & ROBBINS LLP
3                                              SHAWN A. WILLIAMS
                                               CHRISTOPHER M. WOOD
4                                              100 Pine Street, 26th Floor
                                               San Francisco, CA  94111
5                                              Telephone: 415/288-4545
                                               415/288-4534 (fax)
6
                                               COUGHLIN STOIA GELLER
7                                                RUDMAN & ROBBINS LLP
                                               JOY ANN BULL
8

9

10                                                      s/ Joy Ann Bull
                                                       JOY ANN BULL
11
                                               655 West Broadway, Suite 1900
12                                             San Diego, CA  92101-3301
                                               Telephone: 619/231-1058
13                                             619/231-7423 (fax)

14                                             LABATON SUCHAROW LLP
                                               CHRISTOPHER J. KELLER
15                                             JONATHAN GARDNER
                                               140 Broadway, 34th Floor
16                                             New York, NY  10005
                                               Telephone: 212/907-0700
17                                             212/818-0477 (fax)

18                                             Co-Lead Counsel for Plaintiffs

19                                             VANOVERBEKE MICHAUD
                                                 & TIMMONY, P.C.
20                                             MICHAEL J. VANOVERBEKE
                                               THOMAS C. MICHAUD
21                                             79 Alfred Street
                                               Detroit, MI  48201
22                                             Telephone: 313/578-1200
                                               313/578-1201 (fax)
23
                                               Additional Counsel for Plaintiffs
24
    S:\Settlement\Sonic Solutions.set\MOTION FOR AWARD OF FEES AND EXPENSES.doc
25

26

27

28

    LEAD COUNSEL'S NOTICE OF MOTION & MOTION FOR AWARD OF ATTYS' FEES &
    EXPENSES & MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - C 07-05111-CW    - 19 -

1                              <u>CERTIFICATE OF SERVICE</u>

2         I hereby certify that on January 21, 2010, I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4 addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5 mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6 participants indicated on the attached Manual Notice List.

7         I further certify that I caused this document to be forwarded to the following Designated

8 Internet Site at:  http://securities.stanford.edu.

9         I certify under penalty of perjury under the laws of the United States of America that the

10 foregoing is true and correct.  Executed on January 21, 2010.

11

12                                     <u>s/ Joy Ann Bull</u>
                                    JOY ANN BULL

13

14                                     COUGHLIN STOIA GELLER
                                       RUDMAN & ROBBINS LLP

15                                     655 West Broadway, Suite 1900
                                    San Diego, CA  92101-3301

16                                     Telephone:  619/231-1058
                                    619/231-7423 (fax)

17                                     E-mail:joyb@csgrr.com

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 4:07-cv-05111-CW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Sara B. Brody**
  sbrody@sidley.com,tberninzoni@sidley.com,cecilia.chan@sidley.com,cthompson@sidley.com,tn

- **Joy Ann Bull**
  JOYB@csgrr.com

- **Cecilia Y. Chan**
  cecilia.chan@sidley.com,dgiusti@sidley.com

- **Jonathan Gardner**
  jgardner@labaton.com

- **John K. Grant**
  johnkg@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.c

- **Monica Patel**
  monica.patel@hellerehrman.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Carol Lynn Thompson**
  cthompson@sidley.com,eleiva@sidley.com

- **Shawn A. Williams**
  shawnw@csgrr.com,jdecena@csgrr.com,travisd@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.c

- **Christopher Martin Wood**
  cwood@csgrr.com,aserros@csgrr.com,jdecena@csgrr.com,khuang@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine J Kowalewski
Lerach Coughlin et al LLP
655 W Broadway #1900
San Diego, CA 92101

Brian Penny
Labaton Sucharow LLP
140 Broadway
```

New York, NY 10005

**David C. Walton**
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101-3301